Each of Borrower and Guarantor consent on behalf of itself to the disclosure, by Administrative Agent or any of the Lenders or any of their respective affiliates or agents, to United States regulators of such information about Borrower, Guarantor or any other Person that owns any membership or other equity interest in, or ownership of any similar interests or securities of, such Debtor that any of Administrative Agent or any of such Lenders reasonably deems necessary or appropriate to comply with applicable Anti-Terrorism Laws and Anti-Money Laundering Laws, and such Debtor shall be notified in advance, if practicable (but in any case promptly), of any non-routine disclosure.

Investment Banker.

On or prior to July 28, 2009, Borrower shall retain (on terms reasonably acceptable to the Supermajority Lenders), subject to such retention being approved by the Bankruptcy Court, an investment banking firm reasonably acceptable to Supermajority Lenders to serve as the investment banker and consultant to Borrower with respect to the Chapter 11 Case and the ProtoStar I Sale and to conduct the ProtoStar I Sale (the "**ProtoStar I Investment Banker**").

Information.

Borrower shall provide to the Lenders' legal and financial advisors all materials and presentations prepared by or for Borrower or third parties employed by Borrower in contemplation of the ProtoStar I Sale or the ProtoStar II Sale, a list of the parties contacted by Borrower or who contacted Borrower with respect to the same, a list of all materials and documents exchanged with any third parties concerning the ProtoStar I Sale or the ProtoStar II Sale and a list of all non-disclosure agreements entered into with third parties regarding the ProtoStar I Sale and the ProtoStar II Sale.

The Debtors shall (i) cooperate with and provide, within two (2) Business Days of any request, all information reasonably requested by the Supermajority Lenders' and/or their respective legal and financial advisors with respect to the Debtors and the ProtoStar I Assets, including without limitation, (x) the operations, business affairs or financial condition of the Debtors, (y) the compliance with the terms of any Material Contract (including, but not limited to, this Agreement, the ProtoStar II DIP Facility, the ProtoStar II Pre-Petition Facility and the Pre-Petition Facilities) and (z) information and updates regarding the achievement or progress towards the Milestones (as requested through Administrative Agent); and (ii) meet in-person or telephonically (at the option of Borrower), along with the ProtoStar I Investment Banker, with any available Lenders and/or their financial advisors on a weekly basis.

Borrower shall provide notice to the respective financial advisors and counsel to the Lenders within two (2) Business Days of any of the following: (i) changes to any customer contracts; (ii) significant change to any labor agreement; (iii) change in management; and (iv) any event that has or could reasonably be expected to result in a Material Adverse Effect with respect to Borrower or its Subsidiaries.

ProtoStar I Sale.

Borrower and Guarantor shall or shall direct the ProtoStar I Investment Banker to contact prospective buyers, distribute initial marketing materials, negotiate non-disclosure agreements with prospective buyers, distribute a confidential information memorandum to prospective buyers, prepare management presentations, establish and maintain an online data room for a prospective asset sale and prepare a purchase and sale agreement(s) for all or substantially all of the ProtoStar I Assets and/or each ProtoStar I Asset, permit all appropriate third parties who have expressed an interest and signed non-disclosure agreements acceptable to Borrower to conduct due diligence (at all times in compliance with the International Traffic in Arms Regulations, the "**ITAR**") with respect to the ProtoStar I Assets (including providing such parties with reasonable access to management and key employees of the Debtors), evaluate preliminary proposals for the purchase of the ProtoStar I Assets, negotiate with third parties for the sale of the ProtoStar I Assets, finalize negotiation of letter(s) of intent for the ProtoStar I Assets, in each case, in accordance with the ProtoStar I Sale Procedures Motion.

As part of any ProtoStar I Sale, the Debtors shall request or shall direct the ProtoStar I Investment Banker to request that buyers review (x) the price to be paid or consideration received for the ProtoStar I Satellite or the Capital Stock of ProtoStar I will be evaluated and reviewed separately and on a stand-alone basis irrespective of any offers for the sale of the ProtoStar II Satellite or of the Capital Stock of ProtoStar II and (y) the price to be paid or consideration received for the ProtoStar II Satellite or the Capital Stock of ProtoStar II will be evaluated and reviewed separately and on a stand-alone basis irrespective of any offers for the sale of the ProtoStar I Satellite or the Capital Stock of ProtoStar I. The Debtors shall request or shall direct the ProtoStar I Investment Banker to request that bids made jointly for any combination of the ProtoStar II Satellite/Capital Stock of ProtoStar II and ProtoStar I Satellite/Capital Stock of ProtoStar II must contain individual breakdowns of the price of each assets being sold, and the sale of each will be evaluated independently of the other. Under no circumstances may Borrower or Guarantor accept a lower price for the ProtoStar I Satellite or of the Capital Stock of ProtoStar I in order to facilitate a sale of the ProtoStar II Satellite or the Capital Stock of ProtoStar II. As part of any Sales process, the Debtors will share each and every bid received in connection with the ProtoStar I Sale as soon as possible (but in any case, within 24 hours) with the Administrative Agent, each of the Lenders and the Lenders' Professionals prior to accepting or rejecting such bid for further consideration and in no instance will a bid be accepted without the consent of the Supermajority Lenders.

Milestones.

Borrower and Guarantor shall comply with the following and produce and deliver the following documents (with a level of completeness, clarity and detail that is satisfactory to Required Lenders) on or prior to the date indicated for each such material action or document below (each a "**Milestone**" and collectively, the "**Milestones**"):

On or prior to the fifth (5th) day of the Chapter 11 Cases, Borrower shall file with the Bankruptcy Court motions, in form and substance reasonably acceptable to counsel for the Lenders, on shortened notice, seeking (i) authority to conduct the ProtoStar I Sale and approval

of sale procedures in connection therewith (the "**ProtoStar I Sale Procedures Motion**") and (ii) approval of this Agreement and the Loan Documents and the ProtoStar II DIP Facility.

On or prior to the fifth (5th) day of the Chapter 11 Cases, the Bankruptcy Court shall have entered the Interim Order and the ProtoStar II Interim Order in form and substance acceptable to counsel to the Lenders.

On or prior to the twenty-fifth (25th) day of the Chapter 11 Case, the Bankruptcy Court shall have entered an order, in form and substance acceptable to counsel for the Lenders, approving the ProtoStar I Sale Procedures Motion.

On or prior to the thirtieth (30th) day of the Chapter 11 Cases, the Bankruptcy Court shall have entered the Final Order and the ProtoStar II Final Order in form and substance acceptable to counsel to the Lenders.

On or prior to the fiftieth 50th day of the Chapter 11 Cases, Borrower shall file a motion seeking approval of a disclosure statement (the "**Disclosure Statement**") for the Reorganization Plan and procedures for soliciting votes with respect to the Reorganization Plan (the "**Solicitation Motion**").

On or prior to the sixtieth (60th) day of the Chapter 11 Cases, Borrower and ProtoStar I shall have conducted an auction for the ProtoStar I Sale.

On or prior to the sixty-fifth (65th) day of the Chapter 11 Cases, (A) the Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to counsel for the Lenders, approving the ProtoStar I Sale to the person or entity selected as the highest and best bidder at the auction and approved the asset purchase agreement in connection therewith, which shall be in form and substance reasonably acceptable to Supermajority Lenders and (B) the Debtors shall have filed an amendment to the Disclosure Statement as necessary to comply with Section 1125 of the Bankruptcy Code with respect to the results of the auction.

On or prior to the eightieth (80th) day of the Chapter 11 Cases, the Bankruptcy Court shall have entered an order approving the Solicitation Motion.

On or prior to the ninetieth (90th) day of the Chapter 11 Cases, all conditions to closing the ProtoStar I Sale shall have been satisfied or waived (other than regulatory approvals), subject to an automatic extension to the one hundred twentieth (120th) day of the Chapter 11 Cases, if all conditions to the ProtoStar I Sale (other than the receipt of ITAR approval and payment of the purchase price) shall have been satisfied or waived.

On or prior to the one hundred twentieth 120th day of the Chapter 11 Cases, the Bankruptcy Court shall enter an order confirming the Reorganization Plan.

Post-Closing Items.

Borrower and Guarantor shall take all necessary actions to satisfy the requirements set forth on Schedule 5.19 within the applicable period set forth on Schedule 5.19 (or such longer period as may be consented to by Supermajority Lenders in their sole discretion).

68.

[Intentionally Blank]

69.

NEGATIVE COVENANTS

Each Debtor agrees that until the termination of all of the Term Loan Commitments and payment in full of the Obligations:

Incurrence of Indebtedness.

Borrower and Guarantor shall not directly or indirectly, create, incur, issue, assume, guarantee or otherwise become directly or indirectly liable, contingently or otherwise, with respect to any Indebtedness, except (collectively, "**Permitted Debt**"):

the Obligations

the ProtoStar II DIP Facility;

the Pre-Petition Facilities;

the ProtoStar II Pre-Petition Facility;

any Indebtedness contemplated by the ProtoStar I Budget;

other Indebtedness outstanding on the Closing Date and set forth on Schedule 7.1; and

as otherwise consented to by Supermajority Lenders.

Asset Sales; Events of Loss.

Borrower and Guarantor shall not (i) consolidate or merge with or into another Person (whether or not a Debtor is the surviving corporation or company); (ii) consummate an Asset Sale in one or more related transactions, or enter into any contract, term sheet, letter of intent or similar agreement with respect to an Asset Sale; or (iii) lease all or substantially all of the properties and assets of such Debtor, in one or more related transactions, to any other Person except:

the ProtoStar I Sale, so long as (x) unless otherwise waived by Supermajority Lenders, 100% of the proceeds thereof are in the form of cash and (y) the Net Asset Sale Proceeds of such sale are promptly applied to repay the Obligations pursuant to Section 2.7(a);

the sale of the assets consisting of the ProtoStar I Junior Collateral made in accordance with the ProtoStar II DIP Facility, so long as the Net Asset Sale Proceeds of such sale are promptly applied to repay the Obligations pursuant to Section 2.3(b)(i);

any Asset Sales contemplated by the ProtoStar I Budget; and

as may otherwise be agreed to by the Supermajority Lenders.

In the event that any Debtor receives proceeds of any insurance in respect of an Event of Loss, then, Borrower shall promptly repay the Obligations in accordance with Section 2.3(b)(ii).

[Reserved].

Restricted Payments.

Borrower and Guarantor shall not, directly or indirectly: (i) issue any new Equity Interests or, declare or pay any dividend or make any other payment or distribution on account of such Debtor's Equity Interests or to the direct or indirect holders of such Debtor's Equity Interests in their capacity as such; (ii) purchase, redeem or otherwise acquire or retire for value any Equity Interests of any Debtor or any direct or indirect parent of Borrower; (iii) make any payment on or with respect to, or purchase, redeem, defease or otherwise acquire or retire for value any Indebtedness of any Debtor that is contractually subordinated to the prior payment in full in cash of all Obligations or any Guarantee thereof; or (iv) make any Investment (all such payments and other actions set forth in clauses (i) through (iv) above being collectively referred to as "**Restricted Payments**") except:

Investments consisting of the Capital Stock of each Subsidiary owned by Borrower;

any Investment in Cash Equivalents;

any Investments received in compromise or resolution of litigation, arbitration or other disputes;

Investments made by Borrower to Guarantor of the proceeds from the Designated Account in order to permit Guarantor to make any payments pursuant to the ProtoStar I Budget;

any dividends by Guarantor to Borrower of the proceeds from any Asset Sale (including the ProtoStar I Sale); provided, that such proceeds are used to immediately repay the Obligations in accordance with Section 2.4(b)(i);

any Restricted Payments contemplated by the ProtoStar I Budget; and

as may be otherwise agreed to by Supermajority Lenders.

Dividend and Other Payment Restrictions.

Borrower and Guarantor shall not, and Borrower shall not permit any of its Subsidiaries to, directly or indirectly, create or permit to exist or become effective any consensual encumbrance or restriction on the ability of any Debtor to: (a) pay dividends or make any other distributions on its Capital Stock to Borrower or with respect to any other interest or participation in, or measured by, its profits, or pay any indebtedness owed to Borrower; (b) make loans or advances to Borrower; or (c) sell, lease or transfer any of its properties or assets to Borrower; except for such encumbrances or restrictions existing under or by reasons of (i) this Agreement and the other Loan Documents (including any Asset Sale permitted hereunder); (ii) the ProtoStar II DIP Facility and the Guarantees thereof, provided, that the encumbrances and restrictions contained therein are no more restrictive than those contained in this Agreement and the other Loan Documents; (iii) applicable law, rule, regulation or order; (iv) customary non-assignment provisions in contracts and licenses entered into in the ordinary course of business; (v) the Pre-Petition Facilities and the ProtoStar II Pre-Petition Facility; and (vi) restrictions on cash or other deposits or net worth imposed by customers under contracts entered into in the ordinary course of business.

Transactions with Affiliates.

Borrower and Guarantor shall not (a) make any payment to, or sell, lease, transfer or otherwise dispose of any of its properties or assets to, or for the benefit of, any Affiliate of Borrower or (b) purchase any property or assets from, or enter into or make or amend any contract, agreement, understanding, loan, advance, transaction or guarantee with, or for the benefit of, any Affiliate of Borrower (each of (a) and (b), "**Affiliate Transactions**"); provided however, that (x) any employment agreement, employee benefit plan, officer or director indemnification agreement or any similar arrangement entered into by the Debtors in the ordinary course of business and payments made pursuant thereto; and (y) Restricted Payments that do not violate Section 7.4 of this Agreement, in each case shall not be deemed Affiliate Transactions.

Liens.

Borrower and Guarantor shall not directly or indirectly create, incur, assume or suffer to exist any Lien of any kind on any asset now owned or hereafter acquired by Borrower and Guarantor, except (collectively, "**Permitted Liens**"):

Liens on the Collateral granted in favor of Administrative Agent on behalf of the Lenders pursuant to the Orders and the Security Documents;

Liens on the Collateral granted in favor of the ProtoStar II DIP Agent on behalf of the ProtoStar II Lenders pursuant to the ProtoStar II Orders and the "Security Documents" (as such term is defined in the ProtoStar II DIP Facility);

Liens on the Collateral granted in favor of the Pre-Petition Agents and the Pre-Petition Lenders in connection with any adequate protection as set forth in Section 2.15;

Liens in favor of the Pre-Petition Agents on behalf of the Pre-Petition Lenders securing Indebtedness and other obligations under the Pre-Petition Facilities;

Liens on the assets of Borrower in favor of the ProtoStar II Pre-Petition Facility Agent on behalf of the ProtoStar II Pre-Petition Lenders securing Indebtedness and other obligations under the ProtoStar II Pre-Petition Facility, including any adequate protection granted to the ProtoStar II Pre-Petition Facility Agent and the ProtoStar II Pre-Petition Lenders pursuant to the ProtoStar II Orders;

Liens in favor of Borrower or any Guarantor (which, to the extent covering Collateral, shall be expressly subordinated to the Liens of Administrative Agent);

Liens to secure the performance of statutory obligations, surety or appeal bonds, performance bonds or other obligations of a like nature incurred in the ordinary course of business;

Liens for taxes, assessments or governmental charges or claims that are not yet delinquent or that are being contested in good faith by appropriate proceedings promptly instituted and diligently concluded; provided, that any reserve or other appropriate provision as is required in conformity with GAAP has been made therefor;

Liens imposed by law, such as carriers', warehousemen's, landlord's and mechanics' Liens, in each case, incurred in the ordinary course of business;

survey exceptions, easements or reservations of, or rights of others for, licenses, rights-of-way, sewers, electric lines, telegraph and telephone lines and other similar purposes, or zoning or other restrictions as to the use of real property that were not incurred in connection with Indebtedness and that do not in the aggregate materially adversely affect the value of said properties or materially impair their use in the operation of the business of such Person; and

Liens set forth on Schedule 7.7.

Line of Business.

Borrower and Guarantor shall not, and Borrower shall not permit any of its Subsidiaries to, engage in any business other than Permitted Businesses.

Stay, Extension and Usury Laws.

Each of Borrower and Guarantor covenants (to the extent that it may lawfully do so) that it shall not, and Borrower shall not permit any of its Subsidiaries to, at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay, extension or usury law wherever enacted, now or at any time hereafter in force, that may affect

the covenants or the performance of this Agreement; and each of Borrower and Guarantor (to the extent that it may lawfully do so) hereby expressly waives, and Borrower shall cause its Subsidiaries to waive, all benefit or advantage of any such law, and covenants that it shall not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Lender Group or any member thereof, but shall suffer and permit the execution of every such power as though no such law has been enacted.

Margin Stock.

Borrower and Guarantor shall not, and Borrower shall not permit any of its Subsidiaries to, use any of the proceeds of the Term Loans to purchase or carry margin stock (as defined in Regulation U of the Board of Governors of the Federal Reserve System).

Material Contracts.

Borrower and Guarantor shall not

Enter into any Material Contract with any third party to supply any services with respect to ProtoStar I without the prior written consent of Supermajority Lenders.

(i) Change, amend, supplement or otherwise modify in any material respect the material terms of any Material Contract to which it is a party, (ii) waive, in whole or in part, the payment or performance by any other party to any such Material Contract of any material obligation of such party, or (iii) terminate, or cause or permit the termination of, any such Material Contract (except termination by its expiration pursuant to the terms thereof).

Creation of Subsidiaries.

Borrower and Guarantor shall not, and Borrower shall not permit any of its Subsidiaries to, form or cause to be formed any other Subsidiary.

Bankruptcy Matters.

Borrower and Guarantor shall not incur, create, assume suffer to exist or permit any other Superpriority Claim or Lien on any Collateral which is *pari passu* with, or senior to, the priority claims of Administrative Agent and the Lenders in respect of the Obligations, except as provided in Section 2.15 and as set forth in the Orders.

Borrower and Guarantor shall not at any time, seek, consent to, or suffer to exist, any reversal, modification, amendment, stay, vacation or appeal of any of the Orders, except for modifications and amendments agreed to by Administrative Agent and the Lenders.

Prior to the date on which the Obligations have been paid in full, Borrower and Guarantor shall not pay or voluntarily incur (other than as may arise under Section 503(b)(9) of the Bankruptcy Code) any administrative expense claims except (i) as set forth in Section 2.15 and the Orders, (ii) the Obligations and (iii) other administrative expense claims incurred in the

ordinary course of business of the Guarantor and Borrower or the Chapter 11 Cases, in each case that is a disbursement made pursuant to the ProtoStar I Budget.

Except with the consent of the Lenders, Borrower and Guarantor shall not (i) make any payment or transfer any property on account of claims asserted by any venders of Borrower or Guarantor for reclamation in accordance with Section 2-702 of the Code and Section 546(c) of the Bankruptcy Code or (ii) enter into agreements or file any motion seeking a Bankruptcy Court order for the return of property of Borrower or Guarantor to any vendor under Section 546(g) of the Bankruptcy Code in the aggregate for clauses (i) and (ii) in excess $50,000.

Management Fees; Employment Contracts.

Neither Borrower nor any Subsidiary, shall pay any management, consulting or similar fees to or any salary expense for executives, directors, officers or shareholders of Borrower or Guarantor by direct payment or otherwise and shall not enter into any employment or consulting agreements with current management, shareholders or directors of Borrower or its Affiliates (a) that are not contemplated by the ProtoStar I Budget or (b) without the prior written consent of Required Lenders.

Orbital Location.

Borrower and Guarantor shall not move the ProtoStar I Satellite from its current orbital location at 98.35 degrees E.L. without the prior written consent of Supermajority Lenders.

Cancellation of Indebtedness.

Borrower and Guarantor shall not without the express prior written consent of Supermajority Lenders or pursuant to an order of the Bankruptcy Court after notice and hearing, make any payment or transfer with respect to any Lien or Indebtedness incurred or arising prior to the filing of the Chapter 11 Cases that is subject to the automatic stay provisions of the Bankruptcy Code whether by way of "adequate protection" under the Bankruptcy Code or otherwise, except pursuant to a confirmed Reorganization Plan and except as specifically permitted hereunder.

70.

Term

Termination.

Except to the extent specific provisions of this Agreement terminate at an earlier date pursuant to the terms hereof, notwithstanding anything herein to the contrary, this Agreement shall remain in effect until the Term Loans and all other Obligations (other than Obligations that expressly survive the termination of this Agreement pursuant to <u>Section 8.2</u>) have been paid in full in cash and the Facility Maturity Date shall have occurred.

Upon payment in full in cash and performance of all of the Obligations (other than contingent indemnification Obligations that have not yet arisen and other Obligations which expressly survive this Agreement and the other Loan Documents pursuant to the terms hereof and thereof), and so long as no suits, actions, proceedings, or claims are pending or threatened against any Indemnified Person asserting any damages, losses or liabilities that are Indemnified Liabilities, Administrative Agent shall deliver to Borrower termination statements, mortgage releases and other documents necessary or appropriate to evidence the termination of the Liens securing payment of the Obligations.

Survival of Obligations Upon Termination of Financing Arrangements.

Except as otherwise expressly provided for in the Loan Documents, no termination or cancellation (regardless of cause or procedure) of any financing arrangement under this Agreement shall in any way affect or impair the obligations, duties and liabilities of the Debtors or the rights of Administrative Agent and the Lenders relating to any unpaid portion of the Term Loans or any other Obligations, due or not due, liquidated, contingent or unliquidated or any transaction or event occurring prior to such termination, or any transaction or event, the performance of which is required after the Facility Maturity Date. Except as otherwise expressly provided in this Agreement and the other Loan Documents, all undertakings, agreements, covenants, warranties and representations of or binding upon the Debtors, and all rights of Administrative Agent and the Lenders, all as contained in the Loan Documents, shall not terminate or expire, but rather shall survive any such termination or cancellation and shall continue in full force and effect until the Facility Termination Date; provided, however, that in all events the provisions of Section 2.9, Section 2.10, any other indemnities and reimbursement obligations contained in this Agreement and the other Loan Documents and, with respect to each of the foregoing, the provisions of ARTICLE XII, shall survive the Facility Maturity Date.

71.

EVENTS OF DEFAULT; RIGHTS AND REMEDIES

Events of Default.

The occurrence of any one or more of the following events (regardless of the reason therefor) shall constitute an event of default (each such event, an "Event of Default") hereunder:

Borrower fails to pay when due and payable, or when declared due and payable, (i) all or any portion of the Obligations consisting of interest, fees, or charges due the Lender Group, reimbursement of expenses owing hereunder or under the other Loan Documents, or other amounts (other than any portion thereof constituting principal) constituting Obligations (including any portion thereof that accrues after the commencement of an Insolvency Proceeding) and such failure shall continue for a period of three (3) Business Days, or (ii) all or any portion of the principal of the Obligations;

Borrower or Guarantor fails or neglects to perform, keep or observe any of the covenants, provisions or other agreements of Sections 5.1, 5.2, 5.4, 5.7, 5.8, 5.11 through (and including) 5.17, 5.19 or ARTICLE VII, respectively, that Borrower or Guarantor is obligated by such sections or articles to perform, keep or observe;

Borrower or Guarantor fails or neglects to perform, keep or observe any other covenants, provisions or other agreements of this Agreement or any of the other Loan Documents (other than any provision embodied in or covered by any other clause of this Section 9.1) which Borrower or Guarantor is obligated to perform, keep or observe, and the same shall continue unremedied for a period of five (5) Business Days after the earlier of (i) the date on which such event shall first become known to any officer of any such Person or (ii) written notice thereof is given to Borrower by Administrative Agent;

Any warranty, representation, or statement, made herein or in any other Loan Document or delivered to Administrative Agent or any Lender by or on behalf of Borrower or Guarantor in connection with this Agreement or any other Loan Document proves to be untrue in any material respect as of the date of issuance or making or deemed making thereof;

Except for any defaults occasioned by the filing of the Chapter 11 Cases and defaults resulting from the Obligations with respect to which the Bankruptcy Code prohibits any Debtor from complying or permits any Debtor not to comply, any Debtor shall default under any mortgage, indenture or instrument under which there may be issued or by which there may be secured or evidenced any Indebtedness in an aggregate principal amount in excess of $250,000 for money borrowed by Borrower or any of its Subsidiaries (or the payment of which is Guaranteed by Borrower, Guarantor or any of their Subsidiaries) entered into (i) pre-petition which is affirmed after the Petition Date or (ii) post-petition, and, in each case, such default (A) is caused by a failure to pay principal of, or interest or premium, if any, on, such Indebtedness prior to the expiration of the grace period provided in such Indebtedness on the date of such default (a "**Payment Default**"); or (B) results in the acceleration of, or permits the holder or holders of such Indebtedness to cause, with the giving of notice, if required, to cause the acceleration of, such Indebtedness prior to its express maturity;

If any material portion of the assets of any Debtor is attached, seized, subjected to a writ or distress warrant, or is levied upon, or comes into the possession of any receiver, trustee, custodian or assignee for the benefit of creditors and such condition is not discharged or stayed before the earlier of thirty (30) days after the date it first arises or five (5) days prior to the date on which such property or asset is subject to forfeiture by such Debtor;

If any Debtor is enjoined, restrained, or in any way prevented by court order from continuing to conduct all or any material part of the business affairs of such Debtor;

One or more judgments or decrees shall be entered after the Petition Date against any Debtor involving in the aggregate a liability of $250,000 or more and all such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal within 30 days from the entry thereof;

Any revocation, cancellation or relinquishment of any of Borrower's or Guarantor's regulatory authorizations, which action is not subject to further appeal, in each case, that could reasonably be expected to have a Material Adverse Effect;

Except as permitted by this Agreement or by the terms of any Loan Document,

any Loan Document ceases for any reason to be fully enforceable, or any Debtor which is party to any Loan Documents so asserts;

any Lien on the Collateral purported to be granted to Administrative Agent and Lenders under any Loan Document or the Orders ceases for any reason to be valid and enforceable and of the same effect and priority purported to be created thereby; or

any Debtor or any Person acting on behalf of any of them, denies or disaffirms, in writing, any obligation of Borrower, Guarantor set forth in or arising under any Loan Document;

Except as permitted by this Agreement, this Agreement or any other Loan Document is held in any judicial proceeding to be unenforceable or invalid or ceases for any reason to be in full force and effect, or any Guarantor, or any Person acting on behalf of any Guarantor, denies or disaffirms its obligations under its Guarantee;

(x) Any Change of Control occurs or (y) Philip Father shall cease to be on the boards of directors and the chief executive officer of Borrower and each of its direct or indirect Subsidiaries or any of the individuals named on Schedule 9.1(l) cease to be employed by Borrower or its Subsidiaries, either voluntarily, by termination or otherwise unless waived by Supermajority Lenders (however, in the event that the Capital Stock of ProtoStar II have been sold to a third party as contemplated by the ProtoStar II Budget, employees solely of ProtoStar II shall be excluded from this Section 9.1(l));

Any event or condition occurs which results in a Material Adverse Effect, and with respect to any such Material Adverse Effect, event or condition, which by its nature can be cured, modified or remedied such that such Material Adverse Effect shall no longer exist, such Material Adverse Effect shall continue or exist for a period of thirty (30) days from its occurrence;

Any ERISA Event shall occur that could reasonably be expected to have a Material Adverse Effect;

The occurrence of any of the following in any of the Chapter 11 Cases:

the failure to satisfy any Milestone set forth in Section 5.18 in the times set forth therein, subject to an extension of three (3) Business Days to the extent necessary in order to accommodate the Bankruptcy Court's calendar;

the entry of an order regarding the dismissal of any of the Chapter 11 Cases, or the conversion of any of the Chapter 11 Cases from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code,

the entry of an order by the Bankruptcy Court appointing an interim or permanent trustee in any of the Chapter 11 Cases or appointing a receiver or an examiner in any of the Chapter 11 Cases with expanded powers to operate or manage the financial affairs, the business or reorganization of any of the Debtors (powers beyond those set forth under Sections 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code;

the entry of an order of competent jurisdiction granting relief from or modifying the automatic stay applicable under Section 362 of the Bankruptcy Code to permit one or more creditors to execute upon, enforce or foreclose on any Collateral with a value in excess of $250,000;

(x) the entry of an order of competent jurisdiction (1) reversing, staying, vacating or rescinding either the Interim Order or the Final Order, or either of such Interim Order or Final Order otherwise ceases to be in full force and effect (except in the case of the replacement of the Interim Order with the entry of the Final Order) or (2) amending, supplementing or otherwise modifying the Interim Order or the Final Order without the prior written consent of all of the Lenders; or (y) the filing of a motion for reconsideration (1) in respect of the Term Loans and Term Loan Commitments, without Administrative Agent's and the Lenders' consent, or (2) in respect of the grant of adequate protection pursuant to the Orders, without the consent of the Pre-Petition Lenders and the Pre-Petition Agents;

the entry of an order in any of the Chapter 11 Cases confirming a Reorganization Plan or plan of liquidation that does not contain a provision for payment in full in cash of the Obligations or, over the objection of the Pre-Petition Lenders, the Debtors' obligations under the Pre-Petition Facilities, on or before the effective date of such Reorganization Plan or liquidation or the entry of an order which dismisses any of the Chapter 11 Cases and which order does not provide for payment in full in cash of the Obligations or, over the objection of the Lenders, the Debtors' obligations under the Pre-Petition Facilities, or any of the Debtors seek, support or fail to contest in good faith the filing or confirmation of such a plan or the entry of such an order;

an application for any of the orders described in clauses (ii) through (vi) above shall be made by a Debtor;

an application for any of the orders described in clauses (ii) through (vi) above shall be made by a Person other than the Debtors and such application is not contested by the Debtors in good faith and the relief requested is granted in an order that is not stayed pending appeal;

the payment of, or application for authority to pay, any post-petition judgments without the prior written consent of Administrative Agent or pursuant to an order of the Bankruptcy Court after notice and hearing unless otherwise permitted under this Agreement;

the payment of, or application for authority to pay, any pre-petition claim without the prior written consent of Administrative Agent or pursuant to an order of the Bankruptcy Court after notice and hearing unless otherwise permitted under this Agreement;

the submission by the Debtors of any motion or other pleading attacking the validity or enforceability of the Loan Documents or any other documents executed in connection with this Agreement or the Orders, or of any order granting the Pre-Petition Lenders adequate protection of their security interests;

any Debtor shall attempt to invalidate, reduce or otherwise impair (A) the Liens or security interests of Administrative Agent and Lenders or (B) the claims or rights of Administrative Agent and Lenders against Debtors;

any default under any cash collateral order shall occur that shall result in a termination of the right to use cash collateral thereunder;

the entry of an order of competent jurisdiction in any of the Chapter 11 Cases substantively consolidating the Debtors;

the entry of an order of competent jurisdiction in any of the Chapter 11 Cases granting any other super priority administrative expense claim or Lien on any Collateral which Lien is *pari passu* or senior to that granted to Administrative Agent, on behalf of itself and the Lenders (except provided in Section 2.15 and as set forth in the Orders);

the making of payments or the incurrence of expenses (individually, or in the aggregate) on any line item in excess of 10% of the weekly budgeted amount listed in the ProtoStar I Budget for the relevant week without the consent of Supermajority Lenders; provided however, the Debtors shall be deemed to be in compliance with the ProtoStar I Budget if the only budgeted line item or items that is not otherwise in compliance therewith is/are the Lenders' Professionals; provided further however, that for any line item expense, the Debtors shall be deemed to be in compliance thereof to the extent the expenditure or incurrence is not in excess of (i) the amount of such line item for the relevant week set forth in the ProtoStar I Budget plus (ii) the aggregate of all amounts budgeted for such line item for the prior three week period but only to the extent such budgeted amounts have not been paid or used by the Debtors; provided further however, that in the event that management determines that it is necessary to take any action or make any payment in an emergent situation and obtaining the consent of the Supermajority Lenders with respect to such action or payment is not practicable under the circumstances then management shall be authorized to seek authorization to take such action or make such payment from the financial advisor or technical consultant for the Supermajority Lenders, each of whom shall be authorized to consent to any such emergency action or payment on behalf of the Supermajority Lenders;

the entry of any motion or other pleading by any Debtor seeking an extension of such Debtor's exclusive period to file a plan of reorganization without the prior written consent of the Required Lenders;

any Debtor shall attempt to invalidate, reduce or otherwise impair, or to challenge the amount, priority or perfection of, the claims and obligations, or the Liens or security interests, securing the claims and obligations under the Pre-Petition Facilities or to pursue any causes of action of any kind against the Pre-Petition Agents or the Pre-Petition Lenders solely in their respective capacities as Pre-Petition Agents or Pre-Petition Lenders;

any "Event of Default" (as defined in the ProtoStar II DIP Facility) shall have occurred;

the entry of any order of competent jurisdiction, without the consent of the ProtoStar II DIP Facility Lenders and the ProtoStar II DIP Agent, reversing, amending, supplementing, staying or vacating the ProtoStar II Final Order;

the filing of a motion, pleading or proceeding by any Debtor that could reasonably be expected to result in a material impairment of the rights or interests of the Lenders or a determination by a court with respect to a motion, pleading or proceeding brought by another party that results in a material impairment;

any Debtor shall file a motion or other pleading seeking the dismissal of any of the Chapter 11 Cases under Section 1112 of the Bankruptcy Code or otherwise;

(a) any Debtor shall assert any claims against the Lenders pursuant to section 506(c) of the Bankruptcy Code or any other action is commenced by any Debtor that is adverse to the Lenders or the Lenders' respective rights and remedies under this Agreement or any Bankruptcy Court order, or (b) any person shall prevail in the assertion of any claim against the Lenders pursuant to section 506(c) of the Bankruptcy Code;

on or prior to the Final Maturity Date, the ProtoStar II DIP Facility is terminated or ceases to be in effect for any reason unrelated to a sale of the ProtoStar II Satellite or the Capital Stock of ProtoStar II.

the Debtors reject the Lenders' credit bid for the ProtoStar I Satellite that constitutes the highest and best offer for the ProtoStar I Satellite and/or accepts any bid for the ProtoStar I Satellite that is not acceptable to Required Lenders; or

the amendment or modification to the ProtoStar II Budget in a manner that is materially adverse to the Lenders; or

Any Bermuda Law Event occurs.

Upon becoming aware of any Default or Event of Default, Borrower is required to deliver to Administrative Agent a statement specifying such Default or Event of Default.

Remedies.

Upon the occurrence, and during the continuation, of an Event of Default, the Required Lenders (at their election but without notice of their election and without demand) may

authorize and instruct Administrative Agent to do any one or more of the following on behalf of the Lender Group (and Administrative Agent, acting upon the instructions of the Required Lenders, shall do the same on behalf of the Lender Group), all of which are authorized by Borrower:

Declare all or any portion of the Obligations, whether evidenced by this Agreement, by any of the other Loan Documents, or otherwise, immediately due and payable, without presentment, demand, protest, or notice of any kind, all of which are expressly waived by Borrower;

Cease advancing money or extending credit to or for the benefit of Borrower under this Agreement, under any of the Loan Documents, or under any other agreement between Borrower and the Lender Group;

Terminate this Agreement and any of the other Loan Documents as to any future liability or obligation of the Lender Group (including terminating the Term Loan Commitments), but without affecting any of Administrative Agent's and Lenders' Liens in the Collateral and without affecting the Obligations;

Set-off amounts in any account maintained with Administrative Agent or otherwise enforce rights against any other collateral in the possession of Administrative Agent or any Lender and apply such amounts to the obligations of the Debtors hereunder and in the other Loan Documents; and

The Lender Group shall have all other rights and remedies available at law or in equity or pursuant to any other Loan Document;

provided that with respect to clause (d) above and the enforcement of Liens or other remedies with respect to clause (e) above, Administrative Agent shall provide the Debtors (or their counsel), the Committee in the Chapter 11 Cases (or its counsel) and the United States Trustee for the District of Delaware, with five (5) days' prior written notice prior to taking the action contemplated thereby.

Waivers By Borrower.

Except as otherwise expressly provided for in this Agreement, any other Loan Document or by applicable law, each Debtor irrevocably waives (a) presentment, demand and protest and notice of presentment, dishonor, notice of intent to accelerate, notice of acceleration, protest, default, nonpayment, maturity, release, compromise, settlement, extension or renewal of any or all commercial paper, accounts, contract rights, documents, instruments, chattel paper and guaranties at any time held by Administrative Agent or any Lender on which such Debtor may in any way be liable, and hereby ratifies and confirms whatever Administrative Agent may do in this regard, (b) all rights to notice and a hearing prior to Administrative Agent's taking possession or control of, or to Administrative Agent's replevy, attachment or levy upon, the Collateral or any bond or security which might be required by any court prior to allowing Administrative Agent to exercise any of its remedies, (c) the benefit of all valuation, appraisal, marshaling and exemption laws and (d) any right to seek relief under the Bankruptcy Code,

*DIP Credit Agreement*

including, without limitation, under § 105, to the extent such relief would restrict or impair the rights and remedies of Administrative Agent or the Lenders set forth in the Interim Order, the Final Order, this Agreement or any other Loan Document; provided that in the event that any party requests a hearing seeking to prevent Administrative Agent or the Lenders from exercising any of their rights and remedies that arise after an Event of Default, the sole issue before the Bankruptcy Court at such hearing shall be whether an Event of Default has occurred and has not been cured, and no other issue or argument shall be relevant to any opposition to the enforcement of Administrative Agent's and Lenders' rights.

Event of Default not Affected by Automatic Stay.

If an actual Event of Default under this ARTICLE IX is prevented from occurring by reason of the automatic stay in any bankruptcy or by reason of any provision in the Bankruptcy Code or similar law which prevents or tolls the giving of default notice, the lapse of time in which to cure, or the declaration or maturation of an Event of Default, then, nonetheless, an Event of Default shall be deemed to occur for purposes of this ARTICLE IX if the applicable underlying condition or event shall have occurred (and in any case where notice and opportunity to cure otherwise would be required under ARTICLE IX but is prevented as aforesaid, thirty (30) days shall have passed after the first occurrence of the underlying condition or event).

72.

## ASSIGNMENTS AND PARTICIPATIONS

Lender Assignments and Participations.

Any Lender may assign and delegate to one or more assignees (each an "**Assignee**") that are Eligible Transferees all, or any ratable part of all, of the Obligations, the Term Loan Commitments and the other rights and obligations of such Lender hereunder and under the other Loan Documents, in a minimum amount of $500,000 and additional increments of $100,000 in excess of such minimum amount, unless waived by Administrative Agent (except such minimum amount shall not apply to (x) an assignment or delegation by any Lender to any other Lender or an Affiliate of any Lender or any Related Fund or (y) a group of new Lenders, each of whom is an Affiliate or Related Fund of each other to the extent that the aggregate amount to be assigned to all such new Lenders is at least $500,000); provided, however, that Borrower and Administrative Agent may continue to deal solely and directly with such Lender in connection with the interest so assigned to an Assignee until (i) written notice of such assignment, together with payment instructions, addresses, and related information with respect to the Assignee, have been given to Administrative Agent by such Lender and the Assignee, (ii) such Lender and its Assignee have delivered to Administrative Agent an Assignment and Acceptance, and (iii) unless waived by Administrative Agent, the assigning Lender or Assignee has paid to Administrative Agent for Administrative Agent's separate account a processing fee in the amount of $3,500. Anything contained herein to the contrary notwithstanding, the payment of any fees shall not be required, and the Assignee need not be an Eligible Transferee if (a) such assignment is in connection with any merger, consolidation, sale, transfer, or other disposition of all or any substantial portion of the business or loan portfolio of the assigning Lender or (b) such

assignment is to an Assignee which is already a Lender or is an Affiliate or a Related Fund of a Lender.

From and after the date that Administrative Agent notifies the assigning Lender (with a copy to Borrower) that it has received an executed Assignment and Acceptance and payment of the above-referenced processing fee (if required) and has recorded the information contained in such Assignment and Acceptance in the Register, (i) the Assignee thereunder shall be a party hereto and, to the extent that rights and obligations hereunder have been assigned to it pursuant to such Assignment and Acceptance, shall have the rights and obligations of a Lender under the Loan Documents, and (ii) the assigning Lender shall, to the extent that rights and obligations hereunder and under the other Loan Documents have been assigned by it pursuant to such Assignment and Acceptance, relinquish its rights (except with respect to Section 2.8 hereof) and be released from any future obligations under this Agreement (and in the case of an Assignment and Acceptance covering all or the remaining portion of an assigning Lender's rights and obligations under this Agreement and the other Loan Documents, such Lender shall cease to be a party hereto and thereto); provided, however, that nothing contained herein shall release any assigning Lender from such assigning Lender's obligations that survive the termination of this Agreement, including such assigning Lender's obligations under ARTICLE XI and Section 12.10 of this Agreement. Notwithstanding anything to the contrary contained in this Section 10.1, a Lender may assign any or all of its rights hereunder to an Affiliate of such Lender or a Related Fund by the execution of an Assignment and Acceptance by such assigning Lender and its Affiliate or Related Fund but without written notice of such assignment to Borrower or Administrative Agent or delivery of such executed Assignment and Acceptance to Administrative Agent or Borrower, and without the payment of the above-referenced processing fee; provided, however, that (x) Borrower and Administrative Agent may continue to deal solely and directly with the assigning Lender until such Assignment and Acceptance has been delivered to Administrative Agent, and (y) the failure of such assigning Lender to deliver such notice or to deliver the Assignment and Acceptance to Administrative Agent or any other Person shall not affect the legality, validity, or binding effect of such assignment.

By executing and delivering an Assignment and Acceptance, the assigning Lender thereunder and the Assignee thereunder confirm to and agree with each other and the other parties hereto as follows: (i) other than as provided in such Assignment and Acceptance, such assigning Lender makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with this Agreement or the execution, legality, validity, enforceability, genuineness, sufficiency or value of this Agreement or any other Loan Document furnished pursuant hereto, (ii) such assigning Lender makes no representation or warranty and assumes no responsibility with respect to the financial condition of any Debtor or the performance or observance by any Debtor of any of its obligations under this Agreement or any other Loan Document furnished pursuant hereto, (iii) such Assignee confirms that it has received a copy of this Agreement, together with such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into such Assignment and Acceptance, (iv) such Assignee will, independently and without reliance upon Administrative Agent, such assigning Lender or any other Lender, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Agreement, (v) such

Assignee appoints and authorizes Administrative Agent to take such actions and to exercise such powers under this Agreement as are delegated to Administrative Agent, by the terms hereof, together with such powers as are reasonably incidental thereto, and (vi) such Assignee agrees that it will perform all of the obligations which by the terms of this Agreement are required to be performed by it as a Lender.

Immediately upon Administrative Agent's receipt of any required processing fee payment and the fully executed Assignment and Acceptance (or the assigning Lender's receipt of a fully executed Assignment and Acceptance, in the case of an assignment from a Lender to one or more of its Affiliates or Related Funds, as to which the assigning Lender has not delivered an Assignment and Acceptance to Administrative Agent or Borrower and in which case the payment of a processing fee is not required), this Agreement shall be deemed to be amended to the extent, but only to the extent, necessary to reflect the addition of the Assignee and the resulting adjustment of the Term Loan Commitments arising therefrom. The Term Loan Commitment allocated to each Assignee shall reduce such Term Loan Commitments of the assigning Lender *pro tanto*.

Any Lender may at any time sell to one or more commercial banks, financial institutions, or other Persons (other than Borrower or any of its Affiliates) (a "**Participant**") participating interests in all or any portion of its Obligations, Term Loan Commitment, and the other rights and interests of that Lender (the "**Originating Lender**") hereunder and under the other Loan Documents; provided, however, that (i) the Originating Lender shall remain a "Lender" for all purposes of this Agreement and the other Loan Documents and the Participant receiving the participating interest in the Obligations, the Term Loan Commitment, and the other rights and interests of the Originating Lender hereunder shall not constitute a "Lender" hereunder or under the other Loan Documents and the Originating Lender's obligations under this Agreement shall remain unchanged, (ii) the Originating Lender shall remain solely responsible for the performance of such obligations, (iii) Borrower, Administrative Agent, and the Lenders shall continue to deal solely and directly with the Originating Lender in connection with the Originating Lender's rights and obligations under this Agreement and the other Loan Documents, (iv) no Lender shall transfer or grant any participating interest under which the Participant has the right to approve any amendment to, or any consent or waiver with respect to, this Agreement or any other Loan Document, except to the extent such amendment to, or consent or waiver with respect to this Agreement or of any other Loan Document would (A) extend the final maturity date of the Obligations hereunder in which such Participant is participating, (B) reduce the interest rate applicable to the Obligations hereunder in which such Participant is participating, (C) release all or substantially all of the Collateral or guaranties (except to the extent expressly provided herein or in any of the Loan Documents) supporting the Obligations hereunder in which such Participant is participating, (D) postpone the payment of, or reduce the amount of, the interest or fees payable to such Participant through such Lender, or (E) change the amount or due dates of scheduled principal repayments or prepayments or premiums, and (v) all amounts payable by Borrower hereunder shall be determined as if such Lender had not sold such participation, except that, if amounts outstanding under this Agreement are due and unpaid, or shall have been declared or shall have become due and payable upon the occurrence of an Event of Default, each Participant shall be deemed to have the right of set off, to the extent it is lawfully entitled to do so and to the extent a Lender is entitled to do so pursuant to Section 11.12,

in respect of its participating interest in amounts owing under this Agreement to the same extent as if the amount of its participating interest were owing directly to it as a Lender under this Agreement. The rights of any Participant only shall be derivative through the Originating Lender with whom such Participant participates and no Participant shall have any rights under this Agreement or the other Loan Documents or any direct rights as to the other Lenders, Administrative Agent, Borrower, the Collections of Borrower or any other Debtor, the Collateral, or otherwise in respect of the Obligations. No Participant shall have the right to participate directly in the making of decisions by the Lenders among themselves.

In connection with any such assignment or participation or proposed assignment or participation, a Lender may, subject to the provisions of <u>Section 12.10</u>, disclose all documents and information which it now or hereafter may have relating to Borrower, Guarantor and their respective Subsidiaries and their respective businesses.

Any other provision in this Agreement notwithstanding, any Lender may at any time create a security interest in, or pledge, all or any portion of its rights under and interest in this Agreement, including, without limitation, in favor of any Federal Reserve Bank in accordance with Regulation A of the Federal Reserve Bank or United States Treasury Regulation 31 CFR § 203.24, and such Federal Reserve Bank or other pledgee may enforce such pledge or security interest in any manner permitted under applicable law.

Register.

Administrative Agent (acting solely for this purpose as a non-fiduciary agent of Borrower) shall maintain, or cause to be maintained, a register (the "**Register**") on which it enters the name of a Lender as the registered owner of the Term Loans held by such Lender. Other than in connection with an assignment by a Lender of all or any portion of its Term Loans to an Affiliate of such Lender or a Related Fund of such Lender (i) a Term Loan (and the Note, if any, evidencing the same) may be assigned or sold in whole or in part only by registration of such assignment or sale on the Register (and each Note shall expressly so provide) and (ii) any assignment or sale of all or part of such Term Loan (and the Note, if any, evidencing the same) may be effected only by registration of such assignment or sale on the Register, together with the surrender of the Note, if any, evidencing the same duly endorsed by (or accompanied by a written instrument of assignment or sale duly executed by) the holder of such Note, whereupon, at the request of the designated assignee(s) or transferee(s), one or more new Notes in the same aggregate principal amount shall be issued to the designated assignee(s) or transferee(s). Upon its receipt of and, if required, consent to, a duly completed Assignment and Acceptance executed by an assigning Lender and an Assignee, Administrative Agent shall accept such Assignment and Acceptance and record the information contained therein in the Register. The Register, including, without limitation, all information contained therein, shall be available for inspection by any Lender upon reasonable prior notice. Prior to the registration of assignment or sale of any Term Loan (and the Note, if any evidencing the same), Borrower shall treat the Person in whose name such Term Loan (and the Note, if any, evidencing the same) is registered as the owner thereof for the purpose of receiving all payments thereon and for all other purposes, notwithstanding notice to the contrary. In the case of any assignment by a Lender of all or any portion of its Term Loans to an Affiliate of such Lender or a Related Fund of such Lender, and

which assignment is not recorded in the Register, the assigning Lender, acting solely for the purpose as a non-fiduciary agent of Borrower, shall maintain a register comparable to the Register.

In the event that a Lender sells participations in any Term Loan, such Lender, on behalf of Borrower, shall maintain a register on which it enters the name of all participants in the Term Loans held by it (the "**Participant Register**"). A Term Loan (and the Note, if any, evidencing the same) may be participated in whole or in part only by registration of such participation on the Participant Register (and each Note shall expressly so provide). Any participation of such Term Loan (and the Note, if any, evidencing the same) may be effected only by the registration of such participation on the Participant Register.

Administrative Agent shall make an updated, complete and accurate copy of the Register (and the Participation Register in the extent it has one) available for review by Borrower from time to time as Borrower may reasonably request.

73.

## AGENTS; THE LENDER GROUP

Appointment and Authorization of Administrative Agent.

Each Lender hereby designates and appoints Wells Fargo as its representative under this Agreement and the other Loan Documents and each Lender hereby irrevocably authorizes Administrative Agent to execute and deliver each of the other Loan Documents on its behalf and to take such other action on its behalf under the provisions of this Agreement and each other Loan Document and to exercise such powers and perform such duties as are expressly delegated to Administrative Agent by the terms of this Agreement or any other Loan Document, together with such powers as are reasonably incidental thereto. Administrative Agent agrees to act as such on the express conditions contained in this ARTICLE XI. The provisions of this ARTICLE XI are solely for the benefit of Administrative Agent, and the Lenders, and Borrower, Guarantor and their respective Subsidiaries shall have no rights as a third party beneficiary of any of the provisions contained herein. Any provision to the contrary contained elsewhere in this Agreement or in any other Loan Document notwithstanding, Administrative Agent shall not have any duties or responsibilities, except those expressly set forth herein, nor shall Administrative Agent have or be deemed to have any fiduciary relationship with any Lender, and no implied covenants, functions, responsibilities, duties, obligations or liabilities shall be read into this Agreement or any other Loan Document or otherwise exist against Administrative Agent; it being expressly understood and agreed that the use of the term "Administrative Agent" is for convenience only, that Wells Fargo is merely the representative of the Lenders, and only has the contractual duties set forth herein. Except as expressly otherwise provided in this Agreement, Administrative Agent shall have and may use its sole discretion with respect to exercising or refraining from exercising any discretionary rights or taking or refraining from taking any actions that Administrative Agent expressly is entitled to take or assert under or pursuant to this Agreement and the other Loan Documents. Without limiting the generality of the foregoing, or of any other provision of the Loan Documents that provides rights or powers to Administrative

Agent, Lenders agree that Administrative Agent shall have the right to exercise, for the benefit of the Lender Group, the following powers as long as this Agreement remains in effect: (a) maintain, in accordance with its customary business practices, ledgers and records reflecting the status of the Obligations, the Collateral, the Collections of Borrower and the other Debtors, and related matters, (b) execute or file any and all financing or similar statements or notices, amendments, renewals, supplements, documents, instruments, proofs of claim, notices and other written agreements with respect to the Loan Documents, (c) make Term Loans, for itself or on behalf of Lenders as provided in the Loan Documents, (d) exclusively receive, apply, and distribute the Collections of Borrower and the other Debtors as provided in the Loan Documents, (e) open and maintain such bank accounts and cash management arrangements as Administrative Agent deems necessary and appropriate in accordance with the Loan Documents for the foregoing purposes with respect to the Collateral and the Collections of Borrower and the other Debtors, (f) perform, exercise, and enforce any and all other rights and remedies of the Lender Group with respect to any Debtor, the Obligations, the Collateral, the Collections of Borrower and the other Debtors, or otherwise related to any of same as provided in the Loan Documents, and (g) incur and pay such Lender Group Expenses as Administrative Agent may deem necessary or appropriate for the performance and fulfillment of its functions and powers pursuant to the Loan Documents.

Delegation of Duties.

Administrative Agent may execute any of its duties under this Agreement or any other Loan Document by or through agents, employees or attorneys in fact and shall be entitled to advice of counsel concerning all matters pertaining to such duties. Administrative Agent shall not be responsible for the negligence or misconduct of any agent or attorney in fact that it selects as long as such selection was made without gross negligence or willful misconduct.

Liability of Agent-Related Persons.

None of the Agent-Related Persons shall (a) be liable for any action taken or omitted to be taken by any of them under or in connection with this Agreement or any other Loan Document or the transactions contemplated hereby (except for its own gross negligence or willful misconduct), or (b) be responsible in any manner to any of the Lenders for any recital, statement, representation or warranty made by any Debtor or any Subsidiary or Affiliate of any Debtor, or any officer, director, agent or representative thereof, contained in this Agreement or in any other Loan Document, or in any certificate, report, statement or other document referred to or provided for in, or received by Administrative Agent under or in connection with, this Agreement or any other Loan Document, or the validity, effectiveness, genuineness, enforceability or sufficiency of this Agreement or any other Loan Document, or for any failure of any Debtor or any other party to any Loan Document to perform its obligations hereunder or thereunder. No Agent-Related Person shall be under any obligation to any Lender to ascertain or to inquire as to the observance or performance of any of the agreements contained in, or conditions of, this Agreement or any other Loan Document, or to inspect the books and records or properties of any Debtor or the books or records or properties of any Debtor's Subsidiaries or Affiliates.

Reliance by Administrative Agent.

Each Agent shall be entitled to rely, and shall be fully protected in relying, upon any writing, resolution, notice, consent, certificate, affidavit, letter, telegram, telefacsimile or other electronic method of transmission, telex or telephone message, statement or other document or conversation believed by it to be genuine and correct and to have been signed, sent, or made by the proper Person or Persons, and upon advice and statements of legal counsel (including counsel to Borrower or any other Debtor or counsel to any Lender), independent accountants and other experts selected by Administrative Agent. Each Agent shall be fully justified in failing or refusing to take any action under this Agreement or any other Loan Document unless Administrative Agent shall first receive such advice or concurrence of the Lenders as it deems appropriate and until such instructions are received, Administrative Agent shall act, or refrain from acting, as it deems advisable. If Administrative Agent so requests, it shall first be indemnified to its reasonable satisfaction by the Lenders against any and all liability and expense that may be incurred by it by reason of taking or continuing to take any such action. Administrative Agent shall in all cases be fully protected in acting, or in refraining from acting, under this Agreement or any other Loan Document in accordance with a request or consent of the requisite Lenders and such request and any action taken or failure to act pursuant thereto shall be binding upon all of the Lenders.

Notice of Default or Event of Default.

No Agent shall be deemed to have knowledge or notice of the occurrence of any Default or Event of Default, except with respect to defaults in the payment of principal, interest, fees, and expenses required to be paid to Administrative Agent for the account of the Lenders and, except with respect to Events of Default of which Administrative Agent has actual knowledge, unless Administrative Agent shall have received written notice from a Lender or an Debtor referring to this Agreement, describing such Default or Event of Default, and stating that such notice is a "notice of default." Administrative Agent promptly will notify the Lenders of its receipt of any such notice or of any Event of Default of which Administrative Agent has actual knowledge. If any Lender obtains actual knowledge of any Event of Default, such Lender promptly shall notify the other Lenders and Administrative Agent of such Event of Default. Each Lender shall be solely responsible for giving any notices to its Participants, if any. Subject to Section 11.4, Administrative Agent shall take such action with respect to such Default or Event of Default as may be requested by the Required Lenders in accordance with Section 9.2; provided, however, that unless and until Administrative Agent has received any such request, Administrative Agent may (but shall not be obligated to) take such action, or refrain from taking such action, with respect to such Default or Event of Default as it shall deem advisable. Administrative Agent promptly will notify the Indenture Trustee of its receipt of any notice of Event of Default or of any Event of Default of which Administrative Agent has actual knowledge. In addition, Administrative Agent shall provide the Indenture Trustee with a notice of any actions taken with respect to such Event of Default. All notices made to the Indenture Trustee shall be made to the addresses set forth Section 12.02 of the Indenture.

Credit Decision.

Each Lender acknowledges that none of the Agent-Related Persons has made any representation or warranty to it, and that no act by Administrative Agent hereinafter taken, including any review of the affairs of any Debtor and its Subsidiaries or Affiliates, shall be deemed to constitute any representation or warranty by any Agent-Related Person to any Lender. Each Lender represents to Administrative Agent that it has, independently and without reliance upon any Agent-Related Person and based on such documents and information as it has deemed appropriate, made its own appraisal of and investigation into the business, prospects, operations, property, financial and other condition and creditworthiness of Borrower and any other Person party to a Loan Document, and all applicable bank regulatory laws relating to the transactions contemplated hereby, and made its own decision to enter into this Agreement and to extend credit to Borrower. Each Lender also represents that it will, independently and without reliance upon any Agent-Related Person and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit analysis, appraisals and decisions in taking or not taking action under this Agreement and the other Loan Documents, and to make such investigations as it deems necessary to inform itself as to the business, prospects, operations, property, financial and other condition and creditworthiness of Borrower and any other Person party to a Loan Document. Except for notices, reports, and other documents expressly herein required to be furnished to the Lenders by Administrative Agent, Administrative Agent shall not have any duty or responsibility to provide any Lender with any credit or other information concerning the business, prospects, operations, property, financial and other condition or creditworthiness of Borrower and any other Person party to a Loan Document that may come into the possession of any of the Agent-Related Persons.

Costs and Expenses; Indemnification.

Administrative Agent may incur and pay Lender Group Expenses to the extent Administrative Agent reasonably deems necessary or appropriate for the performance and fulfillment of its functions, powers, and obligations pursuant to the Loan Documents, including court costs, attorneys fees and expenses, fees and expenses of financial accountants, advisors, consultants, and appraisers, costs of collection by outside collection agencies, auctioneer fees and expenses, and costs of security guards or insurance premiums paid to maintain the Collateral, whether or not Borrower or any other Debtor is obligated to reimburse Administrative Agent or Lenders for such expenses pursuant to this Agreement or otherwise. Administrative Agent is authorized and directed to deduct and retain sufficient amounts from the Collections of Borrower or any other Debtor received by Administrative Agent to reimburse Administrative Agent for such out-of-pocket costs and expenses and any amounts owing to Administrative Agent pursuant to the Administrative Agent Fee Letter prior to the distribution of any amounts to Lenders. In the event Administrative Agent is not reimbursed for such costs and expenses and any amounts owing to Administrative Agent pursuant to the Administrative Agent Fee Letter from the Collections of Borrower or any other Debtor received by Administrative Agent, each Lender hereby agrees that it is and shall be obligated to pay to or reimburse Administrative Agent for the amount of such Lender's *Pro Rata* Share thereof. Whether or not the transactions contemplated hereby are consummated, the Lenders shall indemnify upon demand the Agent-Related Persons (to the extent not reimbursed by or on behalf of Borrower or any other Debtor and without

limiting the obligation of Borrower or any other Debtor to do so), according to their *Pro Rata* Shares, from and against any and all Indemnified Liabilities; provided, however, that no Lender shall be liable for the payment to any Agent-Related Person of any portion of such Indemnified Liabilities resulting solely from such Person's gross negligence or willful misconduct nor shall any Lender be liable for the obligations of any Defaulting Lender in failing to make a Term Loan or other extension of credit hereunder. Without limitation of the foregoing, each Lender shall reimburse Administrative Agent upon demand for such Lender's *Pro Rata* Share of any costs or out of pocket expenses (including attorneys, accountants, advisors, and consultants fees and expenses) incurred by Administrative Agent in connection with the preparation, execution, delivery, administration, modification, amendment, or enforcement (whether through negotiations, legal proceedings or otherwise) of, or legal advice in respect of rights or responsibilities under, this Agreement, any other Loan Document, or any document contemplated by or referred to herein, to the extent that Administrative Agent is not reimbursed for such expenses by or on behalf of Borrower or any other Debtor. The undertaking in this Section shall survive the payment of all Obligations hereunder and the resignation or replacement of Administrative Agent.

Administrative Agent in Individual Capacity.

Wells Fargo and its Affiliates may make loans to, issue letters of credit for the account of, accept deposits from, acquire equity interests in, and generally engage in any kind of banking, trust, financial advisory, underwriting, or other business with Borrower, Guarantor and their respective Subsidiaries and Affiliates and any other Person party to any Loan Documents as though Wells Fargo were not Administrative Agent hereunder, and, in each case, without notice to or consent of the other members of the Lender Group. The other members of the Lender Group acknowledge that, pursuant to such activities, Wells Fargo or its Affiliates may receive information regarding Borrower, Guarantor or their respective Affiliates and any other Person party to any Loan Documents that is subject to confidentiality obligations in favor of Borrower or such other Person and that prohibit the disclosure of such information to the Lenders, and the Lenders acknowledge that, in such circumstances (and in the absence of a waiver of such confidentiality obligations, which waiver Administrative Agent will use its commercially reasonable efforts to obtain), Administrative Agent shall not be under any obligation to provide such information to them. The terms "Lender" and "Lenders" include Wells Fargo in its individual capacity.

Successor Administrative Agent.

Administrative Agent may resign as Administrative Agent upon thirty (30) days notice to the Lenders. If Administrative Agent resigns under this Agreement, the Required Lenders shall appoint a successor Administrative Agent for the Lenders. If no successor Administrative Agent is appointed prior to the effective date of the resignation of Administrative Agent, Administrative Agent may appoint, after consulting with the Lenders, a successor Administrative Agent. If Administrative Agent has materially breached or failed to perform any material provision of this Agreement or of applicable law, the Required Lenders may agree in writing to remove and replace Administrative Agent with a successor Administrative Agent from among the Lenders. In any such event, upon the acceptance of its appointment as successor

Administrative Agent hereunder, such successor Administrative Agent shall succeed to all the rights, powers, and duties of the retiring Administrative Agent and the term "Administrative Agent" shall mean such successor Administrative Agent and the retiring or removed Administrative Agent's appointment, powers, and duties as Administrative Agent shall be terminated. After any retiring Administrative Agent's resignation or removal hereunder as Administrative Agent, the provisions of this ARTICLE XI shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Administrative Agent under this Agreement. If no successor Administrative Agent has accepted appointment as Administrative Agent by the date which is thirty (30) days following a retiring Administrative Agent's notice of resignation (or a Administrative Agent's removal), the retiring Administrative Agent's resignation (or Administrative Agent's removal) shall nevertheless thereupon become effective and the Lenders shall perform all of the duties of Administrative Agent hereunder until such time, if any, as the Lenders appoint a successor Administrative Agent as provided for above.

Lender in Individual Capacity.

Any Lender and its respective Affiliates may make loans to, issue letters of credit for the account of, accept deposits from, acquire equity interests in and generally engage in any kind of banking, trust, financial advisory, underwriting or other business with Borrower, Guarantor and their respective Subsidiaries and Affiliates and any other Person party to any Loan Documents as though such Lender were not a Lender hereunder without notice to or consent of the other members of the Lender Group. The other members of the Lender Group acknowledge that, pursuant to such activities, such Lender and its respective Affiliates may receive information regarding Borrower, Guarantor or their respective Affiliates and any other Person party to any Loan Documents that is subject to confidentiality obligations in favor of Borrower, Guarantor or such other Person and that prohibit the disclosure of such information to the Lenders, and the Lenders acknowledge that, in such circumstances (and in the absence of a waiver of such confidentiality obligations, which waiver such Lender will use its commercially reasonable efforts to obtain), such Lender shall not be under any obligation to provide such information to them.

Collateral Matters.

The Lenders hereby irrevocably authorize Administrative Agent, at its option and in its sole discretion, to release any Lien on any Collateral (i) upon the termination of the Term Loan Commitments and payment and satisfaction in full by Borrower of all Obligations, (ii) constituting property being sold or disposed of if a release is required or desirable in connection therewith and if Borrower certifies to Administrative Agent that the sale or disposition is permitted under Section 7.2 of this Agreement or the other Loan Documents (and Administrative Agent may rely conclusively on any such certificate, without further inquiry), (iii) constituting property in which none of Borrower or any other Debtor owned any interest at the time Administrative Agent's Lien was granted nor at any time thereafter, or (iv) constituting property leased to a Borrower or its Subsidiaries under a lease that has expired or is terminated in a transaction permitted under this Agreement. Except as provided above, Administrative Agent will not execute and deliver a release of any Lien on any Collateral without the prior written authorization of (A) if the release is of all or substantially all of the Collateral, all of the Lenders,

or (B) otherwise, the Required Lenders. Upon request by Administrative Agent or Borrower at any time, the Lenders will confirm in writing Administrative Agent's authority to release any such Liens on particular types or items of Collateral pursuant to this Section 11.11; provided, however, that (1) no Agent shall be required to execute any document necessary to evidence such release on terms that, in Administrative Agent's opinion, would expose Administrative Agent to liability or create any obligation or entail any consequence other than the release of such Lien without recourse, representation, or warranty, and (2) such release shall not in any manner discharge, affect, or impair the Obligations or any Liens (other than those expressly being released) upon (or obligations of Borrower or any other Debtor in respect of) all interests retained by Borrower or any other Debtor as applicable, including, the proceeds of any sale, all of which shall continue to constitute part of the Collateral.

Administrative Agent shall not have any obligation whatsoever to any of the Lenders to assure that the Collateral exists or is owned by Borrower or any other Debtor or is cared for, protected, or insured or has been encumbered, or that Administrative Agent's Liens have been properly or sufficiently or lawfully created, perfected, protected, or enforced or are entitled to any particular priority, or to exercise at all or in any particular manner or under any duty of care, disclosure or fidelity, or to continue exercising, any of the rights, authorities and powers granted or available to Administrative Agent pursuant to any of the Loan Documents, it being understood and agreed that in respect of the Collateral, or any act, omission, or event related thereto, subject to the terms and conditions contained herein, Administrative Agent may act in any manner it may deem appropriate, in its sole discretion given Administrative Agent's own interest in the Collateral in its capacity as Administrative Agent and that Administrative Agent shall have no other duty or liability whatsoever to any Lender as to any of the foregoing, except as otherwise provided herein.

Restrictions on Actions by Lenders; Sharing of Payments.

Each of the Lenders agrees that it shall not, without the express written consent of Administrative Agent, and that it shall, to the extent it is lawfully entitled to do so, upon the written request of Administrative Agent, set off against the Obligations, any amounts owing by such Lender to Borrower or any other Debtor or any deposit accounts of Borrower or any other Debtor now or hereafter maintained with such Lender. Each of the Lenders further agrees that it shall not, unless specifically requested to do so in writing by Administrative Agent, take or cause to be taken any action, including, the commencement of any legal or equitable proceedings, to foreclose any Lien on, or otherwise enforce any security interest in, any of the Collateral.

If, at any time or times any Lender shall receive (i) by payment, foreclosure, setoff, or otherwise, any proceeds of Collateral or any payments with respect to the Obligations, except for any such proceeds or payments received by such Lender from Administrative Agent pursuant to the terms of this Agreement, or (ii) payments from Administrative Agent in excess of such Lender's ratable portion of all such distributions by Administrative Agent, such Lender promptly shall (1) turn the same over to Administrative Agent, in kind, and with such endorsements as may be required to negotiate the same to Administrative Agent, or in immediately available funds, as applicable, for the account of all of the Lenders and for application to the Obligations in accordance with the applicable provisions of this Agreement, or

(2) purchase, without recourse or warranty, an undivided interest and participation in the Obligations owed to the other Lenders so that such excess payment received shall be applied ratably as among the Lenders in accordance with their *Pro Rata* Shares; provided, however, that to the extent that such excess payment received by the purchasing party is thereafter recovered from it, those purchases of participations shall be rescinded in whole or in part, as applicable, and the applicable portion of the purchase price paid therefor shall be returned to such purchasing party, but without interest except to the extent that such purchasing party is required to pay interest in connection with the recovery of the excess payment.

Payments by Administrative Agent to the Lenders.

All payments to be made by any Administrative Agent to the Lenders shall be made by bank wire transfer of immediately available funds pursuant to such wire transfer instructions as each party may designate for itself by written notice to such Administrative Agent. Concurrently with each such payment, Administrative Agent shall identify whether such payment (or any portion thereof) represents principal, premium, fees, or interest of the Obligations.

Concerning the Collateral and Related Loan Documents.

Each member of the Lender Group authorizes and directs Administrative Agent to enter into this Agreement and the other Loan Documents to which it is a party. Each member of the Lender Group agrees that any action taken by each of Administrative Agent in accordance with the terms of this Agreement or the other Loan Documents relating to the Collateral and the exercise by Administrative Agent of its powers set forth therein or herein, together with such other powers that are reasonably incidental thereto, shall be binding upon all of the Lenders.

Field Audits and Examination Reports; Confidentiality; Disclaimers by Lenders; Other Reports and Information.

By becoming a party to this Agreement, each Lender:

is deemed to have requested that Administrative Agent furnish such Lender, promptly after it becomes available, a copy of each field audit or examination report (each a "**Report**" and collectively, "**Reports**") prepared by or at the request of Administrative Agent, and Administrative Agent shall so furnish each Lender with such Reports,

expressly agrees and acknowledges that Administrative Agent does not (i) make any representation or warranty as to the accuracy of any Report, and (ii) shall not be liable for any information contained in any Report,

expressly agrees and acknowledges that the Reports are not comprehensive audits or examinations, that Administrative Agent or other party performing any audit or examination will inspect only specific information regarding Borrower and the other Debtors and will rely significantly upon the books and records of Borrower and the other Debtors, as well as on representations of the personnel or Borrower and Guarantor,

agrees to keep all Reports and other material, non-public information regarding Borrower and the other Debtors and their operations, assets, and existing and contemplated business plans in a confidential manner in accordance with Section 12.10, and

without limiting the generality of any other indemnification provision contained in this Agreement, agrees: (i) to hold Administrative Agent and any such other Lender preparing a Report harmless from any action the indemnifying Lender may take or fail to take or any conclusion the indemnifying Lender may reach or draw from any Report in connection with any loans or other credit accommodations that the indemnifying Lender has made or may make to Borrower, or the indemnifying Lender's participation in, or the indemnifying Lender's purchase of, a loan or loans of Borrower; and (ii) to pay and protect, and indemnify, defend and hold Administrative Agent, and any such other Lender preparing a Report harmless from and against, the claims, actions, proceedings, damages, costs, expenses, and other amounts (including, attorneys fees and costs) incurred by Administrative Agent and any such other Lender preparing a Report as the direct or indirect result of any third parties who might obtain all or part of any Report through the indemnifying Lender.

In addition to the foregoing in this Section 11.15: (x) any Lender may from time to time request of Administrative Agent in writing that Administrative Agent provide to such Lender a copy of any report or document provided by Borrower to Administrative Agent that has not been contemporaneously provided by Borrower to such Lender, and, upon receipt of such request, Administrative Agent promptly shall provide a copy of same to such Lender, (y) to the extent that Administrative Agent is entitled, under any provision of the Loan Documents, to request additional reports or information from Borrower, any Lender may, from time to time, reasonably request Administrative Agent to exercise such right as specified in such Lender's notice to Administrative Agent, whereupon Administrative Agent promptly shall request of Borrower the additional reports or information reasonably specified by such Lender, and, upon receipt thereof from Borrower, Administrative Agent promptly shall provide a copy of same to such Lender, and (z) any time that Administrative Agent renders to Borrower a statement regarding Administrative Agent's Account, Administrative Agent shall send a copy of such statement to each Lender.

Several Obligations; No Liability.

Notwithstanding that certain of the Loan Documents now or hereafter may have been or will be executed only by or in favor of Administrative Agent in its capacity as such, and not by or in favor of the Lenders, any and all obligations on the part of Administrative Agent (if any) to make any credit available hereunder shall constitute the several (and not joint) obligations of the respective Lenders on a ratable basis, according to their respective Term Loan Commitments, to make an amount of such credit not to exceed, in principal amount, at any one time outstanding, the amount of their respective Term Loan Commitments. Nothing contained herein shall confer upon any Lender any interest in, or subject any Lender to any liability for, or in respect of, the business, assets, profits, losses, or liabilities of any other Lender. Each Lender shall be solely responsible for notifying its Participants of any matters relating to the Loan Documents to the extent any such notice may be required, and no Lender shall have any obligation, duty, or liability to any Participant of any other Lender. Except as provided in

Section 12.10, no member of the Lender Group shall have any liability for the acts of any other member of the Lender Group. No Lender shall be responsible to any Borrower or any other Person for any failure by any other Lender to fulfill its obligations to make credit available hereunder, nor to advance for it or on its behalf in connection with its Term Loan Commitment, nor to take any other action on its behalf hereunder or in connection with the financing contemplated herein.

Collateral.

Simultaneously with the execution of this Agreement, Administrative Agent is hereby duly constituted and appointed as Administrative Agent to hold the Liens and security interests in and to the Collateral granted by the Loan Documents on behalf of the Lender Group. Upon the written direction of the Required Lenders pursuant to the Loan Documents, Administrative Agent shall enter into any other Additional Documents that the Required Lenders reasonably deem, or Administrative Agent reasonably deems, necessary or advisable to carry out the purposes of this Agreement and the other Loan Documents.

After-Acquired Collateral.

In the event that Borrower or any other Debtor obtains any After-Acquired Collateral, Administrative Agent shall, upon the presentation of the appropriate Security Document(s) or other documentation to Administrative Agent by Borrower or such other Debtor, enter into such Security Document(s) or other documentation, as reasonably requested by the Required Lenders in writing, as applicable pursuant to the Loan Documents, to take a valid security interest in, or pledge of, all such After-Acquired Collateral in favor of Administrative Agent pursuant to the Loan Documents for the benefit of the Lender Group, and Administrative Agent shall cooperate with Borrower, the other Debtors, the Required Lenders and Administrative Agent to accomplish the purposes of this paragraph.

Authorization of Other Actions to be Taken by Administrative Agent Under the Security Documents

Administrative Agent shall, upon receipt of written instructions from the Required Lenders (on their behalf), as applicable pursuant to the Loan Documents, take all actions as instructed in respect of the institution of sale or foreclosure proceedings, in order to (a) exercise any of the rights and remedies under, and enforce any of the terms of, the Security Documents, and (b) collect and receive any and all amounts payable in respect of the Obligations. Administrative Agent shall have the power to institute and to maintain such suits and proceedings in its own name as Administrative Agent or in the names of the Lenders or the other members of the Lender Group as the Required Lenders may instruct to prevent any impairment of the Collateral by any acts that may be unlawful or in violation of the Loan Documents or this Agreement, and such suits and proceedings in its own name as Administrative Agent or in the names of the Lenders or the other members of the Lender Group as the Required Lenders may instruct to preserve or protect the interests of the Lender Group in the Collateral (including power to institute and maintain suits or proceedings to restrain the enforcement of or compliance with any legislative or other governmental enactment, rule or order that may be unconstitutional

or otherwise invalid if the enforcement of, or compliance with, such enactment, rule or order would impair the security interest hereunder or be prejudicial to the interests of the Lender Group).

Successor Agent by Merger, Etc.

Any Person into which Administrative Agent may be merged or converted or with which it may be consolidated, or any Person resulting from any merger, conversion or consolidation to which Administrative Agent shall be a party, or any Person succeeding to all or substantially all of the corporate trust business of the and the investment advisory business of Administrative Agent, shall be the successor of Administrative Agent hereunder without the execution or filing of any paper or any further act on the part of any of the parties hereto.

74.

MISCELLANEOUS

Complete Agreement; Modification of Agreement.

The Loan Documents (a) constitute the complete agreement among the parties with respect to the subject matter thereof, (b) shall not be contradicted or qualified by any other agreement, oral or written, before the date hereof, and (c) may not be modified, altered or amended except as set forth in <u>Section 12.2</u>. Any letter of interest, proposal letter, commitment letter, confidentiality agreement or fee letter between or among any Debtor, Administrative Agent, any Lender or any of their respective Affiliates, predating this Agreement and relating to this financing shall be superseded by this Agreement.

Amendments and Waivers.

Except for actions expressly permitted to be taken by Administrative Agent, no amendment, modification, termination or waiver of any provision of this Agreement or any other Loan Document, or any consent to any departure by Borrower, Guarantor or any other Debtor therefrom, shall in any event be effective unless the same shall be in writing and signed by Borrower, Guarantor or such other Debtor as applicable, Administrative Agent and each of the Required Lenders (or by Administrative Agent at the written request of the Required Lenders). Except as set forth in <u>Section 12.2(b)</u> below, all such amendments, modifications, terminations or waivers requiring the consent of any Lenders shall require the written consent of the Required Lenders (except for those covenants set forth in ARTICLE VII which specifically require the consent of Supermajority Lenders).

No amendment, modification, termination or waiver shall, unless in writing and signed by all of the Lenders adversely affected thereby and Borrower, do any of the following:

increase or extend the Term Loan Commitment or Term Loan of any Lender,

postpone or delay any date fixed by this Agreement or any other Loan Document for any payment of principal, interest, fees, or other amounts due hereunder or under any other Loan Document,

reduce the principal of, or the rate of interest on, any loan or other extension of credit hereunder, or reduce any fees or other amounts payable hereunder or under any other Loan Document,

change the *Pro Rata* Share that is required to take any action hereunder,

amend, waive or modify this <u>Section 12.2</u> or any provision of the Agreement providing for consent or other action by all Lenders,

other than as permitted by <u>Section 11.11</u>, release Administrative Agent's Lien in and to any of the Collateral,

change the definition of "Required Lenders" or "*Pro Rata* Share",

contractually subordinate any of Administrative Agent's Liens,

other than in connection with a merger, liquidation, dissolution or sale of such Person expressly permitted by the terms hereof, release Borrower or any other Debtor from any obligation for the payment of money, or

amend any of the provisions of <u>Section 11</u>.

No amendment, modification, termination or waiver of the definitions of "Initial Maximum Amount", "Final Maximum Amount" and "Change of Control", in each case, shall be effective, unless in writing and signed by Supermajority Lenders.

Furthermore, no amendment, modification, termination or waiver affecting the rights or duties of Administrative Agent under this Agreement or any other Loan Document shall be effective unless in writing and signed by Administrative Agent, in addition to the Lenders required hereinabove to take such action. The foregoing notwithstanding, any amendment, modification, waiver, consent, termination, or release of, or with respect to, any provision of this Agreement or any other Loan Document that relates only to the relationship of the Lender Group among themselves, and that does not affect the rights or obligations of Borrower or any other Debtor, shall not require consent by or the agreement of Borrower or any other Debtor.

Each amendment, modification, termination or waiver shall be effective only in the specific instance and for the specific purpose for which it was given. No amendment, modification, termination or waiver shall be required for Administrative Agent to take additional Collateral pursuant to any Loan Document or to release any Collateral in accordance with the terms of, and as expressly permitted by, the Loan Documents. No notice to or demand on Borrower or any other Debtor in any case shall entitle Borrower or any other Debtor to any other or further notice or demand in similar or other circumstances. Any amendment, modification,

termination, waiver or consent effected in accordance with this <u>Section 12.2</u> shall be binding upon each of the parties hereto.

Successors and Assigns.

This Agreement and the other Loan Documents shall be binding on and shall inure to the benefit of each Debtor, each Administrative Agent and each Lender and their respective successors and assigns (including, in the case of a Debtor, a debtor-in-possession on behalf of such Debtor), except as otherwise provided herein or therein. Neither Borrower nor any other Debtor may assign, transfer, hypothecate or otherwise convey its rights, benefits, obligations or duties hereunder or under any of the other Loan Documents without the prior express written consent of Administrative Agent and the Lenders. Any such purported assignment, transfer, hypothecation or other conveyance by such Debtor without the prior express written consent of Administrative Agent and the Lenders shall be null and void *ab initio*. A Lender may assign this Agreement and the other Loan Documents and its rights and duties hereunder and thereunder pursuant to <u>Section 10.1</u> hereof and, except as expressly required pursuant to <u>Section 10.1</u> hereof, no consent or approval by any Borrower is required in connection with any such assignment. The terms and provisions of this Agreement are for the purpose of defining the relative rights and obligations of the parties hereto with respect to the transactions contemplated hereby and no Person shall be a third party beneficiary of any kind of any of the terms and provisions of this Agreement or any of the other Loan Documents.

Taxes and Expenses.

If Borrower fails to pay any monies (whether taxes, assessments, insurance premiums, or, in the case of leased properties or assets, rents or other amounts payable under such leases) due to third Persons, or fails to make any deposits or furnish any required proof of payment or deposit, all as required under the terms of this Agreement, then, Administrative Agent, in its sole discretion and without prior notice to Borrower, may do any or all of the following: (a) make payment of the same or any part thereof or (b) in the case of the failure to comply with <u>Section 5.11</u> hereof, obtain and maintain insurance policies of the type described in <u>Section 5.11</u> and take any action with respect to such policies as Administrative Agent deems prudent. Any such amounts paid by Administrative Agent shall constitute Obligations and any such payments shall not constitute an agreement by the Lender Group to make similar payments in the future or a waiver by the Lender Group of any Event of Default under this Agreement. Administrative Agent need not inquire as to, or contest the validity of, any such expense, tax, or Lien and the receipt of the usual official notice for the payment thereof shall be conclusive evidence that the same was validly due and owing.

Fees and Expenses.

Borrower shall reimburse Administrative Agent and the Lenders for all reasonable internal and external audit, legal, appraisal, syndication, computer, travel, messenger, courier, insurance, evaluation, filing, document duplication and reproduction and investigation expenses and for all other reasonable out-of-pocket costs and expenses of every type and nature, including, without limitation, fees, out-of-pocket costs and expenses of the Lenders' Professionals and the

reasonable fees, expenses and disbursements of Administrative Agent's counsel, local legal counsel, auditors, accountants, appraisers, printers, insurance and environmental advisers, and other consultants and agents (all such costs and expenses, "**Lender Group Expenses**"), and shall provide advances against such Lender Group Expenses from time to time as Administrative Agent and the Lenders shall reasonably request, incurred thereby in connection with: (i) Administrative Agent's audit and investigation of each Debtor in connection with the preparation, negotiation, and execution of the Loan Documents and Administrative Agent's periodic audits of the Debtors; (ii) the preparation, negotiation, execution and interpretation this Agreement, the other Loan Documents and any proposal letter or commitment letter issued in connection therewith and the making of the Term Loans hereunder; (iii) any amendment, modification or waiver of, consent with respect to, or termination of, any of the Loan Documents or administration of the Term Loans made pursuant hereto or its rights hereunder or thereunder; (iv) the creation, perfection or protection of the Liens under the Loan Documents (including, without limitation, any reasonable fees and expenses for local counsel in various jurisdictions); (v) costs and expenses incurred by Administrative Agent in the disbursement of funds to Borrower or other members of the Lender Group (by wire transfer or otherwise); (vi) the ongoing administration of this Agreement and of the Term Loans, including consultation with attorneys in connection therewith and with respect to Administrative Agent's rights and responsibilities hereunder and under the other Loan Documents; (vii) the protection, collection or enforcement of any of the Obligations or the enforcement of any of the Loan Documents; (viii) the commencement, defense or intervention in any court proceeding relating in any way to the Obligations, the Collateral, any Debtor, this Agreement or any of the other Loan Documents; (ix) the response to, and preparation for, any subpoena or request for document production with which Administrative Agent is served or deposition or other proceeding in which Administrative Agent is called to testify, in each case, relating in any way to the Obligations, the Collateral, any Debtor, this Agreement or any of the other Loan Documents; (x) any litigation, contest, dispute, suit, proceeding or action (whether instituted by Administrative Agent, any Lender, Borrower, any Debtor or any other Person and whether as a party witness or otherwise) in any way relating to the Collateral, any of the Loan Documents or any other agreement to be executed or delivered in connection herewith or therewith, including any litigation, contest, dispute, suit, case, proceeding or action, and any appeal or review thereof, in connection with a case commenced by or against Borrower, any Debtor or any other Person that may be obligated to Administrative Agent or any Lender by virtue of the Loan Documents, including any such litigation, contest, dispute, suit, proceeding or action arising in connection with any work-out or restructuring of the Obligations during the pendency of one or more Events of Default; (xi) any attempt to enforce (A) any Loan Document or Obligation or any security therefor or (B) any other right or remedy of Administrative Agent or any Lender against Borrower, any Debtor or any other Person that may be obligated to Administrative Agent or any Lender by virtue of any of the Loan Documents, including any such attempt to enforce any such remedies in the course of any work-out or restructuring of the Loan during the pendency of one or more Events of Default; (xii) any refinancing or restructuring of the credit arrangements provided hereunder in the nature of a "work-out" or in any insolvency or bankruptcy proceeding during the pendency of one or more Events of Default; and (xiii) reasonable efforts to (A) monitor Borrower's uses of the proceeds of the Term Loans, (B) observe or assess any Debtor or their respective businesses, and (C) verify,

protect, evaluate, assess, appraise, collect, sell, liquidate or otherwise dispose of any of the Collateral.

Without limiting the generality of the foregoing, such expenses, costs, charges and fees may include: reasonable fees, costs and expenses of accountants, environmental advisors, appraisers, investment bankers, management and other consultants and paralegals; court costs and expenses; reasonable photocopying and duplication expenses; court reporter fees, costs and expenses; long distance telephone charges; air express charges; telegram or telecopy charges; reasonable secretarial overtime charges; and reasonable expenses for travel, lodging and food paid or incurred in connection with the performance of such legal or other advisory services.

The obligations of Borrower contained in this <u>Section 12.5</u> shall survive payment or satisfaction in full of all other Obligations.

No Waiver.

Any failure or delay by Administrative Agent or any Lender, at any time or times, to require strict performance by Borrower or Guarantor of any provision of this Agreement or any other Loan Document shall not waive, affect or diminish any right of Administrative Agent or any Lender thereafter to demand strict compliance and performance herewith or therewith. Any suspension or waiver of an Event of Default shall not suspend, waive or affect any other Event of Default whether the same is prior or subsequent thereto and whether the same or of a different type. None of the undertakings, agreements, warranties, covenants and representations of Borrower and Guarantor contained in this Agreement or any of the other Loan Documents and no Default or Event of Default by Borrower or Guarantor shall be deemed to have been suspended or waived by Administrative Agent or any Lender, unless such suspension or waiver is by a written instrument signed by an officer or other authorized employee of Administrative Agent, Administrative Agent and the applicable required Lenders, and directed to Borrower specifying such suspension or waiver.

Remedies.

Each Agent's and each Lender's rights and remedies under this Agreement, the other Loan Documents, and all other agreements shall be cumulative and nonexclusive of any other rights and remedies which Administrative Agent or any Lender may have under any other agreement, including without limitation the other Loan Documents, by operation of law or otherwise. The Lender Group shall have all other rights and remedies not inconsistent herewith as provided under the Code, by law, or in equity. No exercise by the Lender Group of one right or remedy shall be deemed an election.

Severability.

Wherever possible, each provision of this Agreement and the other Loan Documents shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement or any other Loan Document shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such

prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement or such other Loan Document.

Conflict of Terms.

Except as otherwise provided in this Agreement or any of the other Loan Documents by specific reference to the applicable provisions of this Agreement, if any provision contained in this Agreement is in conflict with, or inconsistent with, any provision in any of the other Loan Documents, the provision contained in this Agreement shall govern and control.

Confidentiality.

Each Agent and Lender individually (and not jointly or jointly and severally) agrees that material, non-public information regarding Borrower, Guarantor and their respective Subsidiaries, their operations, assets, and existing and contemplated business plans shall be treated by Administrative Agent and the Lenders in a confidential manner, and shall not be disclosed by Administrative Agent and the Lenders to Persons who are not parties to this Agreement, except: (a) to attorneys for and other advisors, accountants, auditors, and consultants to any member of the Lender Group, (b) to Subsidiaries and Affiliates of any member of the Lender Group, provided that any such Subsidiary or Affiliate shall have agreed to receive such information hereunder subject to the terms of this Section 12.10, (c) as may be required by statute, decision, or judicial or administrative order, rule, or regulation, (d) as may be agreed to in advance by Borrower, Guarantor or their respective Subsidiaries or as requested or required by any Governmental Authority pursuant to any subpoena or other legal process, (e) as to any such information that is or becomes generally available to the public (other than as a result of prohibited disclosure by Administrative Agent or the Lenders), (f) in connection with any assignment, prospective assignment, sale, prospective sale, participation or prospective participations, or pledge or prospective pledge of any Lender's interest under this Agreement, provided that any such assignee, prospective assignee, purchaser, prospective purchaser, participant, prospective participant, pledgee, or prospective pledgee shall have agreed in writing to receive such information hereunder subject to the terms of this Section 12.10, and (g) in connection with any litigation or other adversary proceeding involving parties hereto which such litigation or adversary proceeding involves claims related to the rights or duties of such parties under this Agreement or the other Loan Documents. The provisions of this Section 12.10 shall survive for two (2) years after the payment in full of the Obligations.

GOVERNING LAW, CONSENT TO JURISDICTION AND SERVICE OF PROCESS; WAIVER OF JURY TRIAL.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN ANY OF THE LOAN DOCUMENTS (AND IN ANY SUCH CASE, STRICTLY LIMITED TO THE EXTENT PROVIDED), IN ALL RESPECTS, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THE LOAN DOCUMENTS AND THE OBLIGATIONS SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAW OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND INTENDED TO BE PERFORMED IN THAT STATE.

EACH OF THE PARTIES HERETO HEREBY CONSENTS AND AGREES THAT THE FEDERAL COURTS LOCATED IN DELAWARE, INCLUDING THE BANKRUPTCY COURT, AND ANY COURT HAVING JURISDICTION OVER APPEALS OF MATTERS HEARD IN SUCH COURTS, SHALL HAVE NON-EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN OR AMONG ANY OF THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS OR TO ANY MATTER ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS, PROVIDED, HOWEVER THAT NOTHING IN THIS AGREEMENT SHALL BE DEEMED OR OPERATE TO PRECLUDE ANY AGENT OR ANY LENDER FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE OBLIGATIONS, OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER IN FAVOR OF ANY AGENT OR ANY LENDER. EACH DEBTOR EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH DEBTOR AND EACH MEMBER OF THE LENDER GROUP HEREBY WAIVES, TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, ANY OBJECTION WHICH SUCH PERSON MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR *FORUM NON CONVENIENS* AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT.

EACH DEBTOR HEREBY IRREVOCABLY DESIGNATES AND APPOINTS CT CORPORATION SYSTEM AT 111 EIGHTH AVENUE, NEW YORK, NEW YORK 10011 (OR SUCH OTHER PERSON DESIGNATED BY SUCH DEBTOR AND APPROVED BY ADMINISTRATIVE AGENT), AS ITS PROCESS AGENT (THE "**PROCESS AGENT**") FOR SERVICE OF ALL SUMMONS, COMPLAINTS AND OTHER PROCESS IN ANY SUCH ACTION OR SUIT IN ANY SUCH COURT, SUCH SERVICE BEING HEREBY ACKNOWLEDGED TO BE EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT. EACH DEBTOR HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS, COMPLAINT AND OTHER PROCESS ISSUED IN ANY SUCH ACTION OR SUIT AND IRREVOCABLY CONSENTS AND AGREES THAT SERVICE OF SUCH SUMMONS, COMPLAINTS AND OTHER PROCESS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO THE PROCESS AGENT AT THE ADDRESS SET FORTH IN THIS SECTION 12.11 AND THAT SERVICE SO MADE SHALL BE DEEMED COMPLETED UPON THE EARLIER OF THE PROCESS AGENT'S ACTUAL RECEIPT THEREOF OR FIVE (5) DAYS AFTER DEPOSIT IN THE UNITED STATES MAILS, PROPER POSTAGE PREPAID.

EACH DEBTOR AND EACH MEMBER OF THE LENDER GROUP HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF ANY OF THE LOAN DOCUMENTS OR ANY OF THE TRANSACTIONS CONTEMPLATED THEREIN, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW OR STATUTORY CLAIMS. EACH DEBTOR AND EACH MEMBER OF THE LENDER GROUP REPRESENT THAT EACH HAS REVIEWED THIS WAIVER AND

EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. IN THE EVENT OF LITIGATION, A COPY OF THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

Notices.

Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given to or served upon any of the parties by any other parties, or whenever any of the parties desires to give or serve upon any other parties any communication with respect to this Agreement, each such notice, demand, request, consent, approval, declaration or other communication shall be in writing and shall be deemed to have been validly served, given or delivered (a) upon the earlier of actual receipt and three (3) Business Days after deposit in the United States Mail, registered or certified mail, return receipt requested, with proper postage prepaid, (b) upon transmission, when sent by telecopy or other similar facsimile transmission (with such telecopy or facsimile promptly confirmed by delivery of a copy by personal delivery or United States Mail as otherwise provided in this Section 12.12), (c) one (1) Business Day after deposit with a reputable overnight courier with all charges prepaid, (d) upon confirmation of receipt, when sent by electronic mail, or (e) when delivered, if hand-delivered by messenger, all of which communications shall be addressed to the party to be notified and sent to the address or facsimile number indicated below or to such other address (or facsimile number) as may be substituted by notice given as herein provided. The giving of any notice required hereunder may be waived in writing by the party entitled to receive such notice. Each Debtor acknowledges and agrees that notices sent by any member of the Lender Group in connection with the exercise of enforcement rights against Collateral under the provisions of the Code shall be deemed sent when deposited in the mail or personally delivered, or, where permitted by law, transmitted by telefacsimile or any other method set forth above.

Addresses for Notices:

to any Debtor:

ProtoStar I Ltd.
Canons Court
22 Victoria Street
PO Box HM 1179
Hamilton HM
Bermuda

with a copy to

ProtoStar Satellite Systems, Inc.
100 California Street, Suite 700
San Francisco, California 94111
Telephone:  (415) 814-8100
Telecopy:   (415) 391-8576
Attention:   Cynthia Pelini

with a copy (the delivery of which shall not constitute notice to the
Debtors) to:

Milbank, Tweed, Hadley & McCloy LLP
1850 K Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500
Telecopy:   (202) 835-7586
Attention:   Glenn Gerstell

to Administrative Agent and the Lenders:

Wells Fargo Bank, N.A
45 Broadway, 14th Floor
New York, NY 10006
Telephone: (212) 515-1570
Telecopy:   (866) 297-2015
Attention: Julius R. Zamora, Vice President

with a copy (the delivery of which shall not constitute notice to
Administrative Agent or the Lenders or any of them) to:

Ropes & Gray LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 841-8814
Telecopy:   (646) 728-1663
Attention:   Mark Somerstein

Richards Kibbe & Orbe LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 530-1800
Telecopy: (212) 530-1801
Attention: Michael Friedman

Section Titles.

The Article titles, Section titles and Table of Contents contained in this Agreement are and shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreement between the parties hereto.

Counterparts; Effectiveness.

This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by telefacsimile or other electronic method of transmission approved by Administrative Agent shall be equally as effective as delivery of an original executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement by telefacsimile or such other electronic method of transmission also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement. The foregoing shall apply to each other Loan Document *mutatis mutandis.*

This Agreement shall be binding and deemed effective when executed by Borrower, Guarantor, Administrative Agent, and each Lender whose signature is provided for on the signature pages hereof.

USA PATRIOT Act.

Each Lender that is subject to the requirements of the USA PATRIOT Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "**Act**") hereby notifies Borrower that pursuant to the requirements of the Act, it is required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow such Lender to identify Borrower in accordance with the Act.

Statements Required in Officer's Certificate.

Each Officer's Certificate with respect to compliance with a condition or covenant provided for in this Agreement shall include: (a) a statement that the Person or Persons making such certificate or opinion has read such covenant or condition; (b) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based; (c) a statement that, in the opinion of such Person or Persons, such Person or Persons has made such examination or investigation as is necessary to enable such Person or Persons to express an informed opinion as to whether or not such covenant or condition has been satisfied; and (d) a statement as to whether or not, in the opinion of such Person or Persons, such condition or covenant has been satisfied.

Reinstatement.

If the incurrence or payment of the Obligations by Borrower or any Guarantor or the transfer to the Lender Group of any property should for any reason subsequently be declared to be void or voidable under any state or federal law relating to creditors' rights, including provisions of the Bankruptcy Code relating to fraudulent conveyances, preferences, or other voidable or recoverable payments of money or transfers of property (collectively, a "**Voidable Transfer**"), and if the Lender Group is required to repay or restore, in whole or in part, any such Voidable Transfer, or elects to do so upon the reasonable advice of its counsel, then, as to any such Voidable Transfer, or the amount thereof that the Lender Group is required or elects to repay or restore, and as to all reasonable costs, expenses, and attorneys fees of the Lender Group related thereto, the liability of Borrower and Guarantor automatically shall be revived, reinstated, and restored and shall exist as though such Voidable Transfer had never been made.

Attorney-In-Fact.

Each Debtor hereby irrevocably appoints Administrative Agent as its attorney-in-fact, coupled with an interest, with full authority in the place and stead of such Debtor, and in the name of such Debtor or otherwise, from time to time after the occurrence of and during the continuation of an Event of Default, in Administrative Agent's discretion, to take any action and to execute any instrument which Administrative Agent may reasonably deem necessary or advisable to accomplish the purpose of this Loan Agreement or any other Loan Document, including, without limitation, the following: (i) to ask, demand, collect, sue for, recover, compromise, receive and give acquittance and receipts for monies due and to become due under or in respect of the Collateral; (ii) to receive, endorse, and collect (A) any Collections of any Debtor, (B) any instruments made payable to such Debtor representing any dividend, payment of principal, interest, redemption price, purchase price or other distribution or payment in respect of any Collateral, or (C) any other instruments, documents and chattel paper received in connection with this Agreement or any other Loan Document; (iii) to file any claims, or take any action or institute any proceedings which Administrative Agent shall deem necessary or desirable for the collection of any Collections of any Debtor in the event that such Debtor shall fail to do so, or otherwise to enforce the rights of Administrative Agent and the Lenders with respect to this Agreement and the other Loan Documents; (iv) to execute and/or file any Code financing statements, continuation statements, or other filing, and any amendment thereof, relating to the Collateral; (v) to give notice to any third parties which may be required to perfect Administrative Agent 's Liens on the Collateral; (vi) to register, purchase, sell, assign, transfer, pledge or take any other action with respect to any Collateral in accordance with this Loan Agreement and the other Loan Documents; and (vii) to register, purchase, sell, assign, transfer, pledge, or take any other action with respect to, any Collateral in accordance with this Loan Agreement or, to the extent applicable, any other Loan Document.

Administrative Agent may, from time to time, at its option, perform any act which Borrower or any other Debtor agrees hereunder to perform which Borrower or such other Debtor shall fail to perform, and Administrative Agent may from time to time take any other action which Administrative Agent deems reasonably necessary for the maintenance, preservation or

protection of any of the rights granted to Administrative Agent and the Lenders hereunder, subject to any express limitations set forth in the Loan Documents.

(i) The powers conferred on Administrative Agent and the Lenders hereunder, other than the obligations expressly set forth in this Agreement or imposed by law, shall not impose upon Administrative Agent or the Lenders any duty as to any Collateral, or any responsibility for (A) ascertaining or taking action with respect to any matters relative to any Collateral, whether or not any of Administrative Agent or the Lenders have or are deemed to have knowledge of such matters, (B) taking any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral, (C) the safekeeping of any Collateral, (D) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (E) any diminution in the value thereof, or (F) any act or default of any carrier, warehouseman, bailee, forwarding agency, or other Person, and (ii) all risk of loss, damage, or destruction of the Collateral shall be borne by the Debtors.

Advice of Counsel.

Each of the parties hereto represents to each other party hereto that it has discussed this Agreement and each of the provisions, terms and conditions hereof, including, specifically, the provisions of <u>Section 12.11</u>, with its respective counsel.

No Strict Construction.

The parties hereto have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Agreement.

Bermuda Law Event.

To the extent that it is determined that the making any of the covenants set forth herein or in any of the Loan Documents by any Debtor is not permitted by, is unlawful under, or is in violation of Bermuda law, then such covenant shall be deemed not made by nor applicable to such Debtor; <u>provided</u>, <u>however</u> if such Debtor shall take or fail to take any action which would have breached such covenant had the same been applicable to such Debtor, the action or failure to take such action shall constitute a "<u>Bermuda Law Event</u>".

[*Signature pages to follow*]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first above written.

**Borrower:**

**PROTOSTAR LTD.**

By: _____
         Name:
         Title:

**Guarantor:**

**PROTOSTAR I LTD.**

By: _____
         Name:
         Title:

**Lender:**

[_____]

By: _____
      Name:
      Title:

*DIP Credit Agreement*

<u>**Administrative Agent:**</u>

**WELLS FARGO CORPORATE BANK,
NATIONAL ASSOCIATION**

By: _____
      Name:
      Title: