# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------------x

In re:                                        :        Chapter 11
                                              :
                                              :        Case No. 09-12659 (MFW)
PROTOSTAR LTD., et al.,[1]                    :
                                              :        Jointly Administered
                                              :
                                              :
                        Debtors.              :        **Related to Docket Nos. 17 and 152**
---------------------------------------------------------------x

## FINAL ORDER (I) AUTHORIZING PROTOSTAR LTD. AND PROTOSTAR I LTD.(A) TO OBTAIN POST-PETITION SENIOR SECURED SUPER-PRIORITY FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(c)(2), 364(c), 364(d)(1), 364(e) AND 507 AND (B) TO UTILIZE CASH COLLATERAL OF PRE-PETITION LENDERS AND (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364

Upon the motion (the "Motion"), dated July 29, 2009 (the "Petition Date"), of

ProtoStar Ltd. and its affiliated debtors and debtors in possession (collectively, the

"Debtors"), in the above-captioned chapter 11 cases (the "Cases"), pursuant to sections

105, 361, 362, 363(c)(2), 364(c), 364(d)(1), 364(e) and 507 of title 11 of the United

States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 2002,

4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the

"Bankruptcy Rules") and rules 4001-2(b) and (c), 2002-1(b), 9006-1 and 9013-1 of the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court

for the District of Delaware (as amended, the "Local Rules") seeking, among other

things:

---

[1]     The ProtoStar entities are as follows:  ProtoStar Ltd., ProtoStar I Ltd., ProtoStar II Ltd., ProtoStar Satellite Systems, Inc., ProtoStar Development Ltd. and ProtoStar Asia Pte. Ltd.

DOCS_DE:152343.1

(1)    authorization for ProtoStar Ltd. (the "Borrower") to obtain post-petition debtor-in-possession financing (the "Financing"), and for ProtoStar I Ltd. (the "Guarantor" and, together with the Borrower, the "Credit Parties" and each a "Credit Party") to guarantee the Borrower's obligations in connection with the Financing pursuant to the Guaranty Agreement (as defined in the DIP Credit Agreement (as defined below)), up to an aggregate principal amount, upon entry of this Final Order, of approximately $17,000,000 (the actual amount subject to those conditions set forth in that certain Debtor-In-Possession Credit Agreement (as amended in accordance with the terms thereof and the terms of this Final Order, the "DIP Credit Agreement" and, together with each of the Loan Documents (as defined in the DIP Credit Agreement) and the Interim Order (as defined below), the "DIP Documents")), by and among the Credit Parties, Wells Fargo Bank, National Association, as Administrative Agent (in such capacity, the "Agent") for itself and the lenders thereunder (in such capacity, the "DIP Lenders"). The Credit Parties, upon entry of this Final Order (as defined below), shall use proceeds of the Financing to repay in full all amounts outstanding under that certain Credit Agreement (the "WC Facility") (which as of August 25, 2009 will be $10,640,163 and which amount shall continue to increase by $5,000 per day until such amounts are repaid in full), dated as of March 28, 2007 (as amended by Amendment No. 1 dated as of July 5, 2007, Amendment No. 2 dated as of February 23, 2009 and Amendment No. 3 dated as of May 29, 2009) by and

2

among the Guarantor, as borrower, the Borrower, as guarantor, and Canyon Capital Advisors LLC, as Administrative Agent (in such capacity, the "WC Agent"), the lenders party thereto (in such capacity, the "WC Facility Lenders") and Bank of New York Mellon, as Collateral Agent (in such capacity, the "WC Collateral Agent");

(2)     authorization for the Credit Parties to execute and enter into the DIP Documents and to perform such other and further acts as may be required in connection with the DIP Documents;

(3)     (a) authorization for the Credit Parties to use cash collateral (as defined in the Bankruptcy Code) in which the Pre-Petition Lenders (as defined below) have an interest, and (b) the granting of adequate protection to the Pre-Petition Lenders' Liens (as defined below) for the ratable benefit of (x) the WC Facility Lenders and (y) the Holders of Convertible Senior Secured Notes due 2012 (such Holders and in such capacity, the "Pre-Petition Holders" and together with the WC Facility Lenders the "Pre-Petition Lenders") under that certain Indenture (the "Indenture" and together with the WC Facility, the "Existing Credit Facilities"), dated as of September 28, 2006 (as amended by the Supplemental Indenture dated as of February 23, 2009), between the Guarantor, as Issuer, the Borrower, as guarantor, and the Bank of New York Mellon, as Trustee (the "Indenture Trustee" and together with the WC Agent, the "Pre-Petition Agents") and Collateral Agent (the "Indenture Collateral Agent", and together with the WC

3

Collateral Agent, the "Pre-Petition Collateral Agents") with respect to, *inter alia*, use of cash collateral and all use and diminution in the value of the Pre-Petition Lenders' interest in the Credit Parties' interest in the Pre-Petition Collateral (as defined below);

(4) (a) the granting of superpriority administrative expense claims to the Agent and the DIP Lenders payable from the Borrower's estate, subject only to the Carve-Out (as defined below), the ProtoStar II Superpriority Claim (as defined in the DIP Credit Agreement) and the terms of that certain Limited Subordination and Intercreditor Agreement, dated as of July 28, 2009, entered into among Credit Suisse, Cayman Islands Branch, as PSII DIP Agent and PS II DIP Collateral Agent ( each as defined therein), Credit Suisse Singapore Branch, as PSII First Lien Agent and PSII First Lien Security Agent (each as defined therein) for the PSII First Lien Lenders (as defined therein), the Agent, and the Borrower (the "DIP Intercreditor Agreement"), and the granting of superpriority administrative expense claims to the Agent and the DIP Lenders payable from the Guarantor's estate, subject only to the Carve-Out and (b) the granting of first priority and/or priming liens with respect to the Senior Priority DIP Collateral (as defined below) and the granting of junior priority liens with respect to the Junior Priority DIP Collateral (as defined below) for the benefit of the Agent and the DIP Lenders in accordance with the DIP Documents and this Final Order to secure any

4

and all of the DIP Obligations (as defined below), subject to the terms of the DIP Intercreditor Agreement;

(5)     upon entry of this Final Order, the limitation of the Credit Parties' and their estates' right to surcharge against the DIP Collateral (as defined below) and Pre-Petition Collateral pursuant to section 506(c) of the Bankruptcy Code;

(6)     pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to consider entry of the proposed interim order attached to the Motion (the "Interim Order") (a) authorizing the Borrower, on an interim basis, forthwith to borrow in a single drawing under the DIP Documents up to an aggregate principal or face amount not to exceed $2,000,000, subject to any limitations of credit extensions under the DIP Documents (the "Maximum Interim Borrowing"), (b) granting the DIP Liens and the Superpriority Claim (each as defined below) to the Agent and the DIP Lenders, (c) authorizing the Credit Parties' use of cash collateral of the Pre-Petition Lenders, and (d) granting the adequate protection described herein and therein;

(7)     scheduling of a final hearing (the "Final Hearing") to consider entry of this Final Order authorizing, *inter alia*, (a) the balance of the borrowings under the DIP Documents on a final basis, and (b) the refinancing of the WC Facility, as set forth in the Motion and the DIP Documents; and

(8)     waive any applicable stay (including under Bankruptcy Rule 6004) and provide for immediate effectiveness of this Final Order.

5

Due and appropriate notice of the Motion and the Final Hearing having been provided in accordance with section 102 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), and the relief requested therein having been served by the Debtors on, among others, the twenty largest unsecured creditors of the Debtors on a consolidated basis as certified by the Debtors or their noticing agent, counsel to the Agent, counsel to the ProtoStar II DIP Agent (as defined in the DIP Credit Agreement), counsel to the ProtoStar II Pre-Petition Facility Agent (as defined in the DIP Credit Agreement), counsel to the Pre-Petition Lenders, counsel to the Pre-Petition Agents and the United States Trustee for the District of Delaware (the "U.S. Trustee").

The Interim Hearing having been held by the Court on July 30, 2009 and the Interim Order having been entered by the Court on July 30, 2009 following the Interim Hearing [Dkt. No. 49].

Upon the record made at the Interim Hearing and Final Hearing, the record of the Cases and the Declaration Of Cynthia M. Pelini In Support Of ProtoStar's Chapter 11 Petitions And Various First Day Applications And Motions (the "Pelini Declaration") and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:[2]

1. **Disposition**. The Motion hereby is granted on a final basis on the terms set forth herein. Any objections to the relief sought in the Motion that have not

---

[2] Findings of fact shall also constitute conclusions of law, and conclusions of law shall also constitute findings of fact.

6

previously been resolved or withdrawn hereby are overruled on the merits. This Final Order shall be valid, binding on all parties in interest and fully effective immediately upon entry by the Court.

2. **Jurisdiction and Venue**. This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334. Consideration of the motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. No request has been made for the appointment of a trustee or examiner and no Committee (as defined below) has yet been appointed in the Cases.

3. **Notice**. Notice of the Final Hearing and the relief requested in the Motion has been given by the Debtors and their noticing agent and constitutes due and sufficient notice thereof and complies with section 102 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(b) and (c) and 9014 and Local Rules 4001-2, 2002-1(b), 9006-1 and 9013-1.

4. **Findings Regarding the Financing.**

    (a) Good cause has been shown for the entry of this Final Order.

    (b) The Debtors have an immediate need to obtain the Final Maximum Amount (as defined in the DIP Credit Agreement) and use of Cash Collateral (as defined below) to finance the Debtors' operations, maintain business relationships with vendors, suppliers and customers, pay employees, satisfy other working capital and operational needs and administer and preserve the value of the Debtors' estates as well as to permit

7

the orderly sale of the assets of the Credit Parties (the "Assets"). The Credit Parties'
access to Cash Collateral, incurrence of new indebtedness and other financial
accommodations are vital to the preservation and maintenance of the going concern
values of the Credit Parties and to maximizing the value of the Assets.

(c)     The Debtors are unable to obtain financing on more favorable
terms from sources other than the DIP Lenders under the DIP Documents and are unable
to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy
Code as an administrative expense. The Debtors also are unable to obtain secured credit
under sections 364(c) or 364(d) of the Bankruptcy Code on equal or more favorable terms
than those set forth in the DIP Documents within the time frame required by their needs
to avoid immediate and irreparable harm. A loan facility in the amount and under the
terms provided by the DIP Documents is not available without the Credit Parties granting
to the Agent and the DIP Lenders, subject to the Carve-Out and the ProtoStar II
Financing Liens as provided for herein, the DIP Liens and the Superpriority Claim under
the terms and conditions set forth in the DIP Documents.

(d)     The terms of the Financing and the use of Cash Collateral are fair
and reasonable, reflect the Debtors' exercise of prudent business judgment consistent
with their fiduciary duties and constitute reasonably equivalent value and fair
consideration.

(e)     The Financing has been negotiated in good faith and at arm's
length among the Credit Parties, the Agent and the DIP Lenders. All of the Credit

8

Parties' obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Documents, including, but not limited to, (i) all loans made to the Credit Parties pursuant to the DIP Documents and (ii) all Obligations (as defined in the DIP Credit Agreement) incurred (collectively, the "DIP Obligations"), have been extended by the Agent, the DIP Lenders and their respective advisors and affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code. The Agent and the DIP Lenders shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Interim Order or this Final Order or any provision therein or herein is vacated, reversed or modified, on appeal or otherwise.

(f)     The Pre-Petition Lenders are entitled to rely upon the terms and enforceability of this Interim Order.

(g)     The Credit Parties have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2(b). Absent the relief in this Final Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the Financing, therefore, is in the best interest of the Debtors' estates.

5.     **Authorization of the Financing and the DIP Documents.**

(a)     The Credit Parties hereby are authorized to enter into the DIP Documents. The Borrower hereby is authorized to borrow money pursuant to the DIP Documents in the principal amount of up to the Final Maximum Amount (plus interest,

9

fees and other expenses provided for in the DIP Documents). The Guarantor hereby is authorized to guaranty such borrowings in an aggregate principal or face amount of up to the Final Maximum Amount (plus interest, fees and other expenses provided for in the DIP Documents), subject to any limitations of borrowings under the DIP Documents. The Credit Parties are authorized to use a portion of the proceeds of the DIP Credit Agreement to repay all amounts outstanding under the WC Facility in full. In accordance with the terms of this Final Order and the DIP Documents, the borrowings under the DIP Documents shall be used solely for purposes permitted under the DIP Documents.

(b)     In furtherance of the foregoing and without further approval of the Court, each Credit Party is authorized and directed on a final basis to perform all acts, to make, execute and deliver all instruments and documents (including the execution or recordation of security agreements, mortgages and financing statements), and to pay, whether from the borrowings under the DIP Documents or otherwise, all fees and expense reimbursements (including the fees and expense reimbursements of the Agent and the DIP Lenders, and their attorneys, financial advisors and other professionals as set forth in the DIP Documents), that may be required or necessary for the Credit Parties' performance of the DIP Obligations, including:

(i)     the execution, delivery and performance of the DIP Documents and any exhibits attached thereto; and

(ii)    the performance of all other acts required under or in connection with the DIP Documents.

10

All such unpaid fees and expense reimbursements shall be included and constitute part of the principal amount of the DIP Obligations and be secured by the DIP Liens.

(c)     Upon execution and delivery of the DIP Documents and the entry of this Final Order, the DIP Documents shall constitute valid and binding obligations of the Credit Parties, enforceable against each Credit Party party thereto in accordance with the terms of the DIP Documents. No DIP Obligation, payment, transfer or grant of security under the DIP Documents or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including under section 502(d) of the Bankruptcy Code), or subject to any defense, disallowance, recharacterization, reduction, setoff, recoupment or counterclaim.

6.     **Superpriority Claim.**

(a)     Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute an allowed administrative expense against the Borrower (the "Borrower Superpriority Claim"), with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations (as defined below)), all claims of any kind asserted by the Pre-Petition Lenders arising under the Interim Order or this Final Order, and all other claims against the Borrower, now existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 or 1114 of the Bankruptcy Code, whether or

11

not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, subject only to the payment of the Carve-Out and the terms of the DIP Intercreditor Agreement and the ProtoStar II Superpriority Claim to the extent specifically provided for herein and therein.

(b)     Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute an allowed administrative expense against the Guarantor (the "Guarantor Superpriority Claim" and together with the Borrower Superpriority Claim, the "Superpriority Claim"), with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations), all claims of any kind asserted by the Pre-Petition Lenders arising under the Interim Order or this Final Order, and all other claims against the Guarantor, now existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, subject only to the payment of the Carve-Out.

(c)     The term "Carve-Out" means (i) prior to the delivery of a notice (the "Carve Out Notice") of the occurrence of an Event of Default (as defined in the DIP Credit Agreement), up to the amounts as set forth in the ProtoStar I Budget (as defined in the DIP Credit Agreement) that are necessary to pay (A) all fees required to be paid to the

12

Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code; (B) fees and expenses incurred by the Debtors in respect of compensation for services rendered or reimbursement of expenses allowed by the Court to the Debtors' professionals and (C) fees and expenses incurred by any statutory committee appointed in the Debtors' Cases (each, a "Committee"), in respect of (1) allowances of compensation for services rendered or reimbursement of expenses awarded by the Court to the Committee's professionals and (2) the reimbursement of expenses allowed by the Court incurred by the Committee members in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members), in each case incurred (whether or not paid or allowed by the Court) prior to delivery of the Carve Out Notice; and (ii) for the period after the delivery of a Carve Out Notice, (A) an amount necessary to pay all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and (B) up to an amount not exceeding $125,000, to pay the fees and expenses of the Credit Parties and any Committee in respect of compensation for services rendered or reimbursement of expenses allowed by the Court to the Debtors, any Committee, and their respective professionals incurred, in each case, following the delivery of a Carve Out Notice; provided, however, that the dollar amount in this clause (ii) shall not be reduced by payments made pursuant to clause (i).

(d)     No Term Loan (as defined in the DIP Credit Agreement) or cash collateral (as that term is defined in 11 U.S.C. 363(a)) is to be utilized for the payment of

13

professional fees, disbursements, costs or expenses incurred in connection with asserting or preparing for any claims or causes of action against the Pre-Petition Agents, the Pre-Petition Lenders, Agent or the DIP Lenders, and/or challenging or raising any defenses to the pre-petition obligations under the Existing Credit Facilities, the DIP Obligations or the liens of the Pre-Petition Agents, the Pre-Petition Lenders, Agent or DIP Lenders. Notwithstanding anything herein to the contrary, the Committee, shall be permitted to use $62,500 ($12,500 of which shall only be available to reimburse Bermuda Counsel to the Committee) of the proceeds of the Term Loans to investigate the validity, perfection, priority, extent, or enforceability of the Existing Credit Facilities (whether or not repaid as part of the DIP Credit Agreement) or the liens or security interests securing the Existing Credit Facilities (whether or not repaid as part of the DIP Credit Agreement), but no such amounts shall be used to challenge any such liens or security interests. In the event of a conversion of either or both of the Credit Parties' Cases to cases under chapter 7, any amounts of the Carve-Out that have accrued through the date of any such conversion shall be charged against the assets of the Credit Parties; provided, however, that, in no event shall the Carve-Out include any fees or expenses incurred after the conversion of the Cases to cases under chapter 7 of the Bankruptcy Code (other than as permitted under clauses (c)(i) and (ii) above). Nothing herein shall be construed to impair the ability of any party in interest in the Cases to object to the reasonableness of any of the professional fees, expenses, reimbursement or compensation described above.

14

7. **DIP Liens.** As security for the DIP Obligations, the security interests and liens described in subparagraphs (a) through (d) below hereby are granted, effective as of the Petition Date, to the Agent for its own benefit and for the benefit of the DIP Lenders (all property identified in subparagraphs (a) and (b) below being collectively referred to as the "Senior Priority DIP Collateral"; all property identified in subparagraph (c) below being referred to as the "Junior Priority DIP Collateral" and, together with the Senior Priority DIP Collateral, the "DIP Collateral") (all such liens and security interests granted to the Agent, for its benefit and for the benefit of the DIP Lenders pursuant to the Interim Order and this Final Order and the DIP Documents, the "DIP Liens"). For the avoidance of doubt, upon entry of this Final Order, the Agent and the DIP Lenders shall have a DIP Lien (in the priorities set forth in subparagraphs (a) through (d) below) on the assets that were subject to any lien or security interest that is avoided and preserved for the benefit of the Credit Parties and their estates under section 551 of the Bankruptcy Code. As described in greater detail in paragraph 17 herein, the DIP Liens shall be valid, enforceable, effective and perfected by operation of law on a final basis immediately upon entry of this Final Order by the Court and without the necessity of the execution, recordation or filing by the Credit Parties, the Agent or the DIP Lenders of mortgages, security agreements, pledge agreements, financing statements, control agreements or other agreements.

(a) *First Lien on Cash Balances and Unencumbered Property.* Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing,

15

enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Guarantor (including but not limited to, all leasehold interests of the Guarantor and all intercompany claims of the Guarantor against the Borrower and the Debtors' affiliates and subsidiaries), whether existing on the Petition Date or thereafter acquired and that as of the Petition Date is not subject to valid, perfected and non-avoidable liens, subject only to the Carve-Out as specifically set forth herein.

(b) *Liens Priming the Pre-Petition Lenders' Liens.* Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon (x) (i) 100% of the Capital Stock (as defined in the DIP Credit Agreement) of Guarantor owned by Borrower and any proceeds thereof and (ii) the Designated Account (as defined in the DIP Credit Agreement) and all cash contained therein, in each case, whether now existing or hereafter acquired, that is subject to the existing liens presently securing the Existing Obligations (as defined below) and (y) upon all pre- and post-petition property of the Guarantor and any proceeds thereof, including but not limited to all leasehold interests of the Credit Parties and all intercompany claims of the Guarantor against its affiliates, whether now existing or hereafter acquired, that is subject to the existing liens presently securing the Existing Obligations subject only to the extent of any payment of the Carve-Out as specifically set forth herein.

16

(c)     *Liens Junior to Certain Other Liens with Respect to Property of the Borrower.* Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all pre-petition and post-petition property of the Borrower (other than the property described in clauses (a) or (b) of this paragraph 7, as to which the liens and security interests in favor of the Agent will be as described in such clauses), whether now existing or hereafter acquired, which security interests and liens granted in favor of the Agent shall be junior only to the extent of the Carve-Out as specifically set forth herein and the liens, including any adequate protection liens, granted with respect to the ProtoStar II DIP Facility and ProtoStar II Pre-Petition Facility (each as defined in the DIP Credit Agreement and together, the "ProtoStar II Financing Liens") as set forth in the DIP Intercreditor Agreement.

(d)     *Liens Senior to Certain Other Liens.* The DIP Liens shall not be subject to, made *pari passu* with, or subordinated to (i) any lien or security interest that is avoided and preserved for the benefit of the Borrower and their estates under section 551 of the Bankruptcy Code, (ii) any other lien or security interest pursuant to sections 364(c) or (d) of the Bankruptcy Code or (iii) any other liens arising after the Petition Date, including any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors; provided, however, that the DIP Liens on the Junior Priority DIP Collateral shall be junior to the ProtoStar II Financing Liens (as set forth in the DIP Intercreditor

17

Agreement) and the DIP Liens shall also be subject to the extent of the Carve-Out as specifically set forth herein.

**8.    Protection of DIP Lenders' Rights.**

(a)    Until all DIP Obligations shall have been indefeasibly paid in full in cash (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid) (the occurrence of such actions, collectively, the "DIP Pay-Out"), the Pre-Petition Lenders shall (i) take no action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Existing Credit Facilities (or any document entered into in connection with the Existing Credit Facilities), the Interim Order or this Final Order, otherwise exercise remedies against any DIP Collateral or seek court authorization to exercise remedies against any DIP Collateral or seek to lift the automatic stay to exercise any remedies against any DIP Collateral, (ii) be deemed to have consented to any release of DIP Collateral authorized under the DIP Documents and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral, unless required by applicable state law to continue the perfection of valid and unavoidable liens or security interests in effect as of the Petition Date.

(b)    Upon entry of this Final Order, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Agent and the DIP Lenders to exercise, immediately upon the occurrence of an

18

Event of Default (as defined in the DIP Credit Agreement), all rights and remedies provided for in the DIP Documents subject to the terms of the DIP Intercreditor Agreement; provided, however, that the Agent and the DIP Lenders, as the case may be, shall provide five (5) business days written notice (electronically (including via facsimile) or via overnight mail) to the U.S. Trustee, counsel to the Debtors, counsel to the ProtoStar II DIP Agent, counsel to the Pre-Petition Agents, the Pre-Petition Collateral Agents and counsel to the Committee prior to exercising, any enforcement rights or remedies in respect of the DIP Collateral (other than declaring an Event of Default, accelerating the DIP Obligations or terminating the Term Loan Commitments (as defined in the DIP Credit Agreement) or ceasing the advance of money or extending credit to or for the benefit of the Credit Parties (to the extent they might be deemed remedies in respect of the DIP Collateral)). The Credit Parties and any other parties in interest may seek within such five (5) business day notice period an expedited hearing before this Court solely for the purpose of considering whether, in fact, an Event of Default has not occurred and is continuing. At the expiration of such five (5) business day period, in the absence of the entry of an order by this Court that an Event of Default has not occurred or is not continuing, the Agent and the DIP Lenders, as the case may be, shall be entitled to pursue all of their rights and remedies as set forth in the DIP Credit Agreement and this Final Order. The rights and remedies of the Agent and the DIP Lenders are cumulative and not exclusive of any rights or remedies that the Agent or the DIP Lenders may have. Nothing herein shall preclude the Agent and the DIP Lenders from seeking an order from

19

the Court upon written notice (electronically (including via facsimile) or via overnight mail) to the United States Trustee, counsel to the Debtors, counsel to the ProtoStar II DIP Agent, counsel to the Pre-Petition Agents, Pre-Petition Collateral Agents and counsel to the Committee to exercise any enforcement rights or remedies with respect to the DIP Collateral on less than five (5) business days notice. The Debtors and the Pre-Petition Lenders hereby waive their right to seek relief, including under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair, restrict or delay the exercise of the rights and remedies of the Agent or the DIP Lenders set forth in this Final Order or in the DIP Documents. In no event shall the Agent or the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

(c) If, upon an Event of Default and in compliance with the preceding paragraph, the Agent and the DIP Lenders shall at any time exercise any of their respective rights and remedies hereunder, under the other DIP Documents or under applicable law in order to effect payment or satisfaction of the DIP Obligations or to receive any amounts or remittances due under the DIP Documents, including without limitation, by foreclosing upon and selling all or a portion of the DIP Collateral, the Agent and the DIP Lenders shall have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the DIP Collateral, as the Agent and DIP Lenders shall elect in their sole discretion. No holder of a lien primed by the Interim Order or this Final Order shall be entitled to object on the basis of

20

the existence of any such lien to the exercise by the Agent or the DIP Lenders of their

respective rights and remedies under the DIP Documents or under applicable law to

effect satisfaction of the DIP Obligations. The Agent and DIP Lenders shall be entitled

to apply the payments or proceeds of the DIP Collateral in accordance with the provisions

of this Final Order and the DIP Documents (at all times subject to the Carve-Out in

accordance with the terms hereof).

          (d)     The Superpriority Claim and the DIP Liens granted to the Agent

and the DIP Lenders under the Interim Order and this Final Order shall continue in any

superseding case or cases for the Debtors under any chapter of the Bankruptcy Code, and

such liens and security interests shall maintain their priority as provided in the Interim

Order and this Final Order until the DIP Pay-Out.

          (e)     The Adequate Protection Obligations granted to the Pre-Petition

Lenders under this Final Order, and that were granted pursuant to the Interim Order, shall

continue in any superseding case or cases for the Debtors under any chapter of the

Bankruptcy Code, and such liens and security interests shall maintain their priority as

provided in the Interim Order and this Final Order.

         9.     **DIP Fees.** All fees payable and expenses reimbursable by the Credit

Parties to the Agent (and its respective affiliates), including without limitation, the fees

due the Agent as set forth in the Administrative Agent Fee Letter (as defined in the DIP

Credit Agreement), and the DIP Lenders under the DIP Documents are hereby approved

and shall promptly be paid or incurred by the Credit Parties in accordance with the DIP

21

Documents, and the Credit Parties may pay such fees and expenses from the proceeds of the Financing. The Credit Parties hereby are authorized and directed to pay all such fees and expense reimbursements (together with any applicable sales, use or similar taxes) arising in connection with any matter referred to in the DIP Documents, without the necessity of the Credit Parties, the Agent or the DIP Lenders filing any further application with the Court for approval of payment of such fees and expense reimbursements. For the avoidance of doubt, to the extent provided for under the DIP Documents, the Credit Parties are authorized to pay the fees and disbursements of the attorneys, financial advisors and other professionals of the Agent and the DIP Lenders without the necessity of such attorneys or advisors filing retention applications or fee applications with the Court. All such unpaid fees and expenses of the Agent and DIP Lenders, including, without limitation, all fees referred to in the DIP Documents (including, without limitation, all attorneys' and other professionals' fees and expenses), shall constitute DIP Obligations and shall be secured by the DIP Collateral and afforded all priorities and protections afforded to the DIP Obligations under this Final Order and the DIP Documents.

10.     **Acknowledgements of the Credit Parties.** In connection with the Financing, the Credit Parties acknowledge, represent, stipulate and agree, *inter alia*, that:

(a)     the Debtors have obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be made or given to all federal, state and local governmental agencies,

22

DOCS_DE:152343.1

authorities and instrumentalities in connection with the execution, delivery, performance, validity and enforceability of the DIP Documents to which either Credit Party is a party;

(b)     until the DIP Pay-Out, the Debtors agree that they will not prime or seek to prime the DIP Liens provided to the Agent and the DIP Lenders under the Interim Order and this Final Order or the DIP Documents by offering a subsequent lender or other party a lien securing a claim (other than the ProtoStar II Financing Liens with respect to the Junior Priority DIP Collateral) on the DIP Collateral with a priority that is superior to or *pari passu* with the DIP Liens;

(c)     until the DIP Pay-Out, the Debtors shall not permit to exist any administrative expense claim against any Borrower or any Guarantor (now existing or hereafter arising) of any kind or nature whatsoever, including any administrative expenses specified in or arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 and 1114 of the Bankruptcy Code, that has a priority that is equal to or superior to the priority of the Superpriority Claim or the Section 507(b) Claim (as defined below), other than the Carve-Out and, upon occurrence of the ProtoStar I Sale (as defined below), the PS I Sale Carve-Out (as defined below) and, with respect to the Borrower only, the ProtoStar II Superpriority Claim (subject to the terms of the DIP Intercreditor Agreement).

11.     **Limitation on Charging Expenses Against Collateral**. Except to the extent of the Carve-Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other

23

proceedings under any chapter of the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or Pre-Petition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the Agent or Pre-Petition Collateral Agents. No such consent shall be implied from any other action, inaction, or acquiescence by the Agent, DIP Lenders, Pre-Petition Agents, Pre-Petition Collateral Agents and the Pre-Petition Lenders.

12. **Cash Collateral.** Any proceeds of the Pre-Petition Collateral are cash collateral of the Pre-Petition Lenders within the meaning of section 363(a) of the Bankruptcy Code. All Pre-Petition Collateral constituting "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code and all cash proceeds of Pre-Petition Collateral are referred to herein as "Cash Collateral."

13. **Use of Cash Collateral.** The Credit Parties hereby are authorized to use all Cash Collateral of the Pre-Petition Lenders, *provided* that (i) the Pre-Petition Lenders are granted adequate protection as hereinafter set forth, (ii) the Pre-Petition Lenders are afforded the protection of a party acting in "good faith" pursuant to section 363(m) of the Bankruptcy Code and (iii) this Final Order is entered authorizing the Borrower to repay all Existing WC Obligations (as defined below). The Credit Parties' right to use Cash Collateral shall terminate automatically on the Termination Date without further order or relief from the Court. The term "Termination Date" shall mean: (a) prior to the entry of the Final Order, the earliest to occur of (i) thirty days after the Petition Date, (ii) the acceleration of the DIP Obligations, or (iii) the Interim Order ceasing to be in full force

24

and effect for any reason, and (b) on or subsequent to the entry of the Final Order, the earlier to occur of (i) the acceleration of the DIP Obligations, (ii) the Final Order ceasing to be in full force and effect for any reason or (iii) the Credit Parties failing to make any adequate protection payments pursuant to Paragraph 14.

14. **Adequate Protection.** The Pre-Petition Lenders are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, as set forth below. For the avoidance of doubt, to the extent all or any of the Pre-Petition Liens are found to be invalid or are avoided pursuant to a final order of this Court, which order has not been vacated or stayed (an "Avoided Lien") then the Pre-Petition Holders, the Indenture Trustee and the Indenture Collateral Agent and/or the WC Facility Lenders, the WC Facility Collateral Agent and WC Facility Agent, as applicable, shall not be entitled to the adequate protection set forth below solely with respect to the diminution of value, if any, attributable to that portion of the Pre-Petition Collateral which is no longer secured by the Avoided Lien.

(a) As adequate protection, the Pre-Petition Lenders shall be granted, among other things, the Adequate Protection Liens, the Section 507(b) Claim, the Adequate Protection Interest (each as defined below) and, upon entry of this Final Order, the Credit Parties shall be authorized to repay all Existing WC Obligations in full (collectively, the "Adequate Protection Obligations"), in each case subject to the Carve-Out ; provided, however that (i) (A) there has been no Event of Default under Section

25

9.1(a) of the DIP Credit Agreement and/or (B) following an Event of Default under Section 9.1(b) through (o) of the DIP Credit Agreement neither Credit Party has received a notice from the Agent declaring all or any portion of the DIP Obligations immediately due and payable and, in each of the foregoing clauses (A) or (B), the Agent and the DIP Lenders have not exercised remedies in connection therewith, (ii) the Guarantor's Case has not been converted to a case under chapter 7 prior to consummation of one or more sales (including one or more credit bids) of all or substantially all of the assets of the Guarantor or the equity of the Guarantor (the "ProtoStar I Sale") and (iii) the ProtoStar I Sale has been consummated, then amounts (the "PS I Sale Carve-Out") equal to the sum of (I) all accrued and unpaid administrative expenses provided for in the ProtoStar I Budget through the effective date (the "Effective Date") of any chapter 11 plan of one or more of the Credit Parties (the "Plan"), (II) $150,000 on account of accrued and unpaid priority claims required under the Bankruptcy Code to be paid in cash upon the Effective Date and (III) subject to the terms and conditions of the PS I Incentive Plan (as defined in the DIP Credit Agreement) any accrued and unpaid cash amounts due under the PS I Incentive Plan, in each case, shall be carved out from the proceeds of the ProtoStar I Sale and, in each case, shall be retained by the estate before any further distributions are made as set forth below; provided, further, however, that all amounts reserved from proceeds of the ProtoStar I Sale with respect to the PS I Incentive Plan, shall be held by the estate solely for the benefit of the beneficiaries of the PS I Incentive Plan approved by the Court; provided further that all amounts reserved from proceeds of the ProtoStar I Sale

26

with respect to clauses (I), (II) and (III) above shall be held by the estate in the Designated Account (as defined in the DIP Credit Agreement) solely for the purpose of satisfying such amounts and, prior to the satisfaction thereof, or to the extent such amounts are not required to be paid, such amounts shall constitute the Pre-Petition Lenders' cash collateral; provided, further, however, that, in the event the Pre-Petition Holders credit bid in the ProtoStar I Sale, amounts sufficient to fund the PS I Incentive Plan shall be paid in cash to the estate at closing of the ProtoStar I Sale for distribution in accordance with the PS I Incentive Plan; provided further that, notwithstanding the foregoing proviso, in the event (x) no cash bid for the ProtoStar I Assets (as defined in the DIP Credit Agreement) in excess of $100,000,000 was received from any party and (y) the Pre-Petition Holders successfully credit bid in the ProtoStar I Sale, then amounts due under the PS I Incentive Plan shall be satisfied by payment of the same type of consideration received by the Pre-Petition Holders (whether debt, equity or otherwise) in such amount that the proportion of such consideration received by the PS I Incentive Plan participants equals 2% of the amount of consideration received by the Pre-Petition Holders. If any portion of the consideration received by the Pre-Petition Holders in connection with a credit bid by some or all of the Pre-Petition Holders is in the form of equity interests in a corporation, limited liability company or similar entity ("NewCo"), the PS I Incentive Plan participants and the Pre-Petition Holders shall enter into an agreement, effective as of the issuance of such interests, which provides for (i) preemptive rights to the extent provided to other shareholders of NewCo, (ii) "tag-along"

27

rights; and (iii) registration rights to the extent provided to other shareholders of NewCo subject to reduction or modification as required by the underwriters provided, however, that, the PS I Incentive Plan may only be satisfied, in whole or in part, with equity of NewCo if such interests shall have been distributed first to the DIP Lenders in a proportion no greater than the quotient of (x) the total amount of obligations outstanding under the DIP Credit Agreement as of the closing of the ProtoStar I Sale divided by (y) the total dollar amount of the Pre-Petition Holders' credit bid for the ProtoStar I Assets:

> (i)     *Adequate Protection Liens*. The Pre-Petition Lenders, the Pre-Petition Agents and the Pre-Petition Collateral Agents are granted (effective as of the Petition Date and effective and perfected by operation of law and without the necessity of the execution by the Credit Parties of mortgages, security agreements, pledge agreements, financing statements or other agreements to the full extent as otherwise provided herein respecting the DIP Liens) replacement and additional security interests in and liens (the "Adequate Protection Liens") upon the Senior Priority DIP Collateral as adequate protection for any diminution in the value of their valid and perfected security interests and liens in the Pre-Petition Collateral as of the Petition Date. The Adequate Protection Liens shall not be subject or subordinate to any liens other than (i) the DIP Liens, (ii) the Carve-Out and (iii) upon occurrence of the ProtoStar I Sale, the PS I Sale Carve-Out; provided, however, that in accordance with the Existing

28

Intercreditor Agreement (as defined in the DIP Credit Agreement) the

Adequate Protection Liens granted hereunder in favor of the Pre-Petition

Holders shall be junior to the Adequate Protection Liens granted

hereunder in favor of the WC Facility Lenders. The Debtors agree that

they will not prime or seek to prime the Adequate Protection Liens except

as expressly provided herein.

       (ii)     *Section 507(b) Claim.* The Pre-Petition Lenders, the Pre-

Petition Agents and the Pre-Petition Collateral Agents are granted

effective as of the Petition Date, and pursuant to the Interim Order were

granted, a superpriority claim as provided for in section 507(b) of the

Bankruptcy Code (the "Section 507(b) Claim") in an amount equal to the

aggregate diminution in value of their interest in the Credit Parties'

interest in the Pre-Petition Collateral resulting from the sale, lease or use

by the Credit Parties of Cash Collateral and any other Pre-Petition

Collateral, the priming of the Pre-Petition Lenders' security interests and

liens in the Pre-Petition Collateral by the Agent and the DIP Lenders

pursuant to the DIP Documents and this Final Order, the imposition of the

automatic stay pursuant to section 362 of the Bankruptcy Code, and any

foreclosure or other disposition by the DIP Lenders of the Pre-Petition

Collateral. The priority of the Section 507(b) Claim shall only be junior to

the Superpriority Claim, the Carve-Out, upon occurrence of the ProtoStar I

29

Sale, the PS I Sale Carve-Out and, with respect to the Borrower only, the ProtoStar II Superpriority Claim; provided, however, that in accordance with the Existing Intercreditor Agreement the Section 507(b) Claim granted hereunder in favor of the Pre-Petition Holders shall be junior to the Section 507(b) Claim granted hereunder in favor of the WC Facility Lenders.

(iii) *Additional Adequate Protection*. As additional adequate protection, (A) the Credit Parties, in respect of the Existing Credit Facilities shall promptly pay the reasonable monthly fees and expenses, without the necessity of any further application to the Court for approval or payment, of (x) the Indenture Trustee, the Pre-Petition Collateral Agents and their legal counsel and (y) United States legal counsel, local bankruptcy counsel and Bermuda legal counsel, employed by Pre-Petition Holders and WC Facility Lenders, in each case regardless of whether such amounts accrued prior to or after the Petition Date and (B) for the benefit of the Pre-Petition Holders, (x) the indemnity provided by the Credit Parties to Chanin Capital Partners LLC ("Chanin") under that certain letter agreement (the "Chanin Agreement"), dated as of May 7, 2009, and Credit Parties are authorized to make the payments contemplated thereunder and (y) Chanin shall receive compensation and be paid, in each case, without

30

the necessity of any further application to the Court for approval, in accordance with the Chanin Agreement.

(iv)     *Adequate Protection Interest*. Until the indefeasible payment in full, in cash, of the Existing WC Obligations, interest (the "Adequate Protection Interest") on the Existing WC Obligations shall accrue at the default rate of interest of 18% as provided for in the WC Facility.

(v)     *Reporting*. The Credit Parties shall provide all information to the Pre-Petition Lenders as contemplated by the DIP Credit Agreement.

(vi)     *Asset Sale Proceeds*. Subject to Paragraph 19 of this Final Order, upon closing of the ProtoStar I Sale (as defined in the DIP Credit Agreement) the Net Asset Sale Proceeds (as defined in the DIP Credit Agreement), payable to the Pre-Petition Lenders, the Pre-Petition Agents and the Pre-Petition Collateral Agents shall be distributed as set forth in Section 2.7 of the DIP Credit Agreement.

(vii)     *Repayment of Existing WC Obligations*. Upon entry of this Final Order, the Credit Parties shall be authorized to repay all Existing WC Obligations in full; provided, however, that the repayment of the Existing WC Obligations shall not render moot any claims or causes of action to challenge (by the Investigation Termination Date) the extent, validity, or priority of the Existing WC Obligations or the WC Facility

31

Liens or any other claims or causes of action against the WC Facility

Lenders and the Committee expressly reserves the right to bring (by the

Investigation Termination Date) any and all such claims and causes of

action. If all or any portion of the WC Facility Liens becomes an Avoided

Lien, to the extent that the value of the collateral subject to the remaining

WC Facility Liens that are not Avoided Liens is less than the amount of

the Term Loan used to repay the Existing WC Obligations (the "WC

Undersecurd Amount"), then that portion of the Term Loan equal to the

WC Undersecured Amount, together with all fees and interest related

thereto, shall not be secured by the DIP Liens or constitute Superpriority

Claims or otherwise be entitled to any of the protections afforded the DIP

Financing herein and the validity and the priority of the WC Undersecured

Amount shall be determined by further order of the Court.

15.     **Consent to/Sufficiency of Adequate Protection.** The WC Facility

Lenders and over 66 2/3% of the Pre-Petition Holders have consented to the adequate

protection provided herein.

16.     **Debtors' Stipulations Regarding the Pre-Petition Lenders.** Subject to

Paragraph 19 of this Final Order, in connection with the Financing, the Debtors

acknowledge, represent, stipulate and agree, *inter alia*, that:

(a) as of the Petition Date, the Credit Parties are indebted to WC Facility

Lenders pursuant to the WC Facility in the aggregate principal amount of

32

$10,000,000.00 plus accrued interest (at the default rate) with respect thereto and any fees, costs, expenses and other charges provided under the WC Facility;

(b)     as collateral for the Credit Parties' Obligations (as that term is defined in the WC Facility) arising under or related to the WC Facility (the "Existing WC Obligations"), the Credit Parties indefeasibly granted to the WC Facility Lenders, valid, enforceable and perfected first priority subject to any Permitted Liens (as defined in the WC Facility) security interests in and liens upon (the "WC Facility Liens") (i) all or substantially all of the Guarantor's property, including without limitation, all of the Guarantor's accounts, inventory, equipment, general intangibles, documents, instruments and chattel paper and (ii) the Borrower's capital stock in the Guarantor (collectively, the "WC Facility Collateral");

(c)     the Debtors further acknowledge, agree and stipulate that (w) each of the WC Facility Liens in and to the WC Facility Collateral constitute valid, binding, enforceable, and perfected liens in and to the WC Facility Collateral having the priority set forth in the WC Facility and the documents and instruments entered into in connection therewith (including without limitation, the Existing Intercreditor Agreement (as defined in the DIP Credit Agreement)) and are not subject to avoidance, reduction, disallowance, recharacterization, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (x) the Existing WC

33

Obligations each constitute allowed secured claims against the Credit Parties and each of their respective estates, (y) the aggregate value of the WC Facility Lenders' interest in the WC Facility Collateral exceeds the aggregate amount of the Existing WC Obligations and (z) no claim or cause of action held by the Debtors exists against the WC Facility Lenders, the WC Agent, the WC Collateral Agent and each of their officers, directors, employees, agents, attorneys, professionals, subsidiaries, assigns and/or successors or advisors, whether arising under state or federal law, solely arising under or in connection with the WC Facility (or the transactions contemplated thereunder), the Existing WC Obligations, the WC Facility Liens or any Adequate Protection Obligations, including without limitation, any right to assert any disgorgement or recovery;

(d) as of the Petition Date, the Credit Parties are indebted to the Pre-Petition Holders pursuant to the Indenture in the aggregate principal amount of approximately $182,363,076.68 plus accrued interest (at the default rate) with respect thereto equal to $13,009,829.70 and any fees, costs, expenses and other charges provided under the Indenture;

(e) as collateral for the Credit Parties' Obligations (as that term is defined in the Indenture) arising under or related to the Indenture (the "Existing Indenture Obligations" and together with the Existing WC Obligations, the "Existing Obligations"), the Credit Parties indefeasibly granted for the benefit of the Pre-Petition Holders, valid, enforceable and perfected security interests in and liens

34

upon (the "Pre-Petition Holders' Liens" and together with the WC Facility Liens, the "Pre-Petition Liens") (i) all or substantially all of the Guarantor's property, including without limitation, all of the Guarantor's accounts, inventory, equipment, general intangibles, documents, instruments and chattel paper and (ii) the Borrower's capital stock in the Guarantor (collectively, the "Pre-Petition Holder's Collateral" and together with the WC Facility Lender's Collateral the "Pre-Petition Collateral"); and

(f)     the Debtors further acknowledge, agree and stipulate that (w) each of the Pre-Petition Liens in and to the Pre-Petition Holder's Collateral constitute valid, binding, enforceable, and perfected liens in and to the Pre-Petition Holder's Collateral having the priority set forth in the Indenture and the documents and instruments entered into in connection therewith (including without limitation, the Existing Intercreditor Agreement), and are not subject to avoidance, reduction, disallowance, recharacterization, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (x) the Existing Indenture Obligations each constitute allowed secured claims against the Credit Parties' estates, and (y) no claim or cause of action held by the Debtors exists against the Pre-Petition Holders, the Indenture Trustee, the Indenture Collateral Agent and their officers, directors, employees, agents, attorneys, professionals, subsidiaries, assigns and/or successors or advisors, whether arising under state or federal law, solely arising under or in connection

35

with the Indenture (or the transactions contemplated thereunder), the Existing

Indenture Obligations, the Pre-Petition Holders' Liens or any Adequate Protection

Obligations, including without limitation, any right to assert any disgorgement or

recovery.

17. **Perfection of DIP Liens and Adequate Protection Liens.**

(a)     All DIP Liens granted herein and in the DIP Documents to or for

the benefit of the Agent and the DIP Lenders shall be, and they hereby are, valid,

enforceable and perfected, effective as of the Petition Date, and (notwithstanding any

provisions of any agreement, instrument, document, the Uniform Commercial Code or

any other relevant law or regulation of any jurisdiction) no further notice, filing or other

act shall be required to effect such perfection, and all DIP Liens on any deposit accounts

or securities accounts shall, pursuant to the Interim Order and this Final Order be, and

they hereby are, deemed to confer "control" for purposes of sections 8-106, 9-104 and 9-

106 of the New York Uniform Commercial Code as in effect as of the date hereof in

favor of the Agent and the DIP Lenders. None of the Credit Parties, the Agent, the DIP

Lenders or the Pre-Petition Lenders shall be required to enter into or to obtain share

certificates, share transfer forms, landlord waivers, landlord access agreements,

mortgagee waivers, bailee waivers or warehouseman waivers or to file or record

financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or

similar instruments in any jurisdiction (including trademark, copyright, trade name or

patent assignment filings with the United States Patent and Trademark Office, Copyright

36

Office or any similar agency with respect to intellectual property), or obtain consents from any licensor or similarly situated party in interest, or take any other action to validate and to perfect the security interest in the DIP Liens and Adequate Protection Liens granted pursuant to the Interim Order or this Final Order.

(b)     The Credit Parties, the Agent, the DIP Lenders, the Pre-Petition Lenders, the Pre-Petition Agents and the Pre-Petition Collateral Agents are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action to validate and perfect the liens and security interests granted hereunder including, without limitation, the filing and recording of any security documents or agreements with the Bermuda Registrar of Companies in Bermuda. Whether or not the Agent or the Pre-Petition Collateral Agents shall choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of the Interim Order.

(c)     A certified copy of this Final Order may, in the discretion of any of the Agent, the DIP Lenders, and the Pre-Petition Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby

37

authorized and directed to accept such certified copy of this Final Order for filing and recording. The Agent and the DIP Lenders may deliver a copy of this Final Order to any third parties having possession or control of DIP Collateral, Cash Collateral or Pre-Petition Collateral.

(d)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or other post-petition collateral related thereto, shall be deemed to have no force and effect with respect to the transactions granting DIP Liens or Adequate Protection Liens in such leasehold interest in favor of the Agent, the DIP Lenders, the Pre-Petition Lenders and the Pre-Petition Agents, respectively, in accordance with the terms of the DIP Documents or this Final Order (though the Credit Parties may be required to pay recordation or filing fees). Notwithstanding any provision to the contrary in any lease, contract or other document, the Agent, the DIP Lenders, the Pre-Petition Collateral Agents and the Pre-Petition Lenders shall not be required to enter into any access agreements or similar agreements with any lessor to gain access to real property leased by the Credit Parties for the purpose of accessing and taking control of any DIP Collateral.

**18.     Preservation of Rights Granted Under this Final Order.**

(a)     No claim or lien securing a claim (other than the Carve-Out, upon occurrence of the ProtoStar I Sale, the PS I Sale Carve-Out, the ProtoStar II Financing

38

Liens with respect to the Junior Priority DIP Collateral or the ProtoStar II Superpriority Claim with respect to the Borrower's estate as provided in the DIP Intercreditor Agreement) having a priority superior to or *pari passu* with those granted to the Agent, the DIP Lenders and the Pre-Petition Lenders by the Interim Order or this Final Order shall be granted or allowed until the DIP Pay-Out. The DIP Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest (other than the Carve-Out, upon occurrence of the ProtoStar I Sale, the PS I Sale Carve-Out, the ProtoStar II Financing Liens with respect to the Junior Priority DIP Collateral as provided in the DIP Intercreditor Agreement), whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Until the DIP Pay-Out, the Debtors shall not, among other things, seek, and it shall constitute an Event of Default under the DIP Documents and a termination of the right to use Cash Collateral if any of the Debtors seek, or if there is, (i) entry of any order, without the DIP Lenders' prior consent, reversing, amending, supplementing, staying or vacating the Interim Order or this Final Order, (ii) an order dismissing any of the Cases of the Credit Parties or ProtoStar Satellite Services Inc, (iii) confirmation of a plan that does not provide for payment in full in cash (subject to the Carve-Out, the terms of the DIP Intercreditor Agreement and, with respect to the Existing Indenture Obligations, upon occurrence of the ProtoStar I Sale, the ProtoStar I Sale

39

Carve-Out)) of the Debtors' and Credit Parties' DIP Obligations or the Existing

Obligations (to the extent then outstanding) on the effective date of such plan of

reorganization or liquidation or any order shall be entered which dismisses any of the

Credit Parties' Cases and which order does not provide for payment in full in cash of the

Credit Parties' DIP Obligations or the Existing Obligations (to the extent then

outstanding), or any of the Credit Parties shall seek, support, or fail to contest in good

faith the filing or confirmation of such a plan or the entry of such an order, (iv) any

motion involving the sale of substantially all of the Debtors' assets that does not provide

for the DIP Pay-Out, without the prior written consent of the Agent obtained in

accordance with the terms of the DIP Credit Agreement. If an order dismissing any of

the Cases of the Credit Parties or ProtoStar Satellite Services Inc. under section 1112 of

the Bankruptcy Code or otherwise is at any time entered, such order shall provide that (x)

the Superpriority Claim, the Section 507(b) Claim, priming liens, security interests and

replacement security interests granted to the Agent, the DIP Lenders, the Pre-Petition

Collateral Agents and the Pre-Petition Lenders, as applicable, pursuant to the Interim

Order and this Final Order shall continue in full force and effect and shall maintain their

priorities as provided in this Final Order (subject to the Carve-Out, the DIP Intercreditor

Agreement and, upon occurrence of the ProtoStar I Sale, the PS I Sale Carve-Out) until

the DIP Pay-Out and until all Adequate Protection Obligations shall have been paid and

satisfied in full (and that such Superpriority Claim, Section 507(b) Claim, priming liens,

security interests and replacement security interests shall, notwithstanding such dismissal,

40

remain binding on all parties in interest (subject to the Carve-Out, the DIP Intercreditor Agreement and, upon occurrence of the ProtoStar I Sale, the PS I Sale Carve-Out)) and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests or replacement security interests referred to in (x) above or (v) the ProtoStar II DIP Facility (as defined in the DIP Credit Agreement) is terminated or ceases to be in effect for any reason unrelated to a sale of the ProtoStar II Satellite (as defined in the DIP Credit Agreement) or the Capital Stock of ProtoStar II (each as defined in the DIP Credit Agreement).

(c)     If any or all of the provisions of the Interim or this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Agent, the Pre-Petition Agents and the Pre-Petition Collateral Agents of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any security interest, lien or priority authorized or created hereby or pursuant to the DIP Documents with respect to any DIP Obligations or Adequate Protection Obligations. Notwithstanding any such reversal, stay, modification or vacation, any DIP Obligations and Adequate Protection Obligations incurred by the Debtors to the Agent, the DIP Lenders, the Pre-Petition Collateral Agent or the Pre-Petition Lenders prior to the actual receipt of written notice by the Agent of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the provisions of this Final

41

Order, and the Agent and the DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, including in the event the Interim Order or this Final Order is vacated, reversed, or modified on appeal or otherwise, this Final Order and pursuant to the DIP Documents with respect to all DIP Obligations.

(d)     Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, Adequate Protection Liens, the Superpriority Claim, the Section 507(b) Claim and all other rights and remedies of the Agent, the DIP Lenders, the Pre-Petition Collateral Agents and the Pre-Petition Lenders granted by the provisions of this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by the entry of an order converting any of the Cases of the Credit Parties or ProtoStar Satellite Systems Inc. to a case(s) under chapter 7, dismissing any of the Cases of the Credit Parties or ProtoStar Satellite Systems Inc., terminating the joint administration of the Cases of the Credit Parties or ProtoStar Satellite Systems Inc. or by any other act or omission, nor shall the DIP Liens, the Superpriority Claim or any of the other rights and remedies of the Agent, the DIP Lenders, the Pre-Petition Collateral Agents, the Pre-Petition Agents or the Pre-Petition Lenders granted by the provisions of this Final Order and the DIP Documents be modified, impaired or discharged by the entry of an order confirming a chapter 11 plan in any of the Credit Parties' Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors will waive any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and

42

provisions of this Final Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases are substantively consolidated, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claim, the Adequate Protection Obligations and all other rights and remedies of the Agent, the DIP Lenders, the Pre-Petition Collateral Agents, the Pre-Petition Agents and the Pre-Petition Lenders granted by the provisions of this Final Order and the DIP Documents shall continue in full force and effect until the DIP Pay-Out.

### 19. Limitation on Use of Financing Proceeds and Collateral/Bar Date.

(a)    Notwithstanding anything herein or in any other order by the Court to the contrary, no borrowings, Cash Collateral, DIP Collateral or the Carve-Out may be used (i) to object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, including amounts for the refinancing of the WC Facility, or the liens or claims granted under this Final Order or the DIP Documents, (ii) to assert any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against the Agent, the DIP Lenders, or their respective agents, affiliates, representatives, attorneys or advisors, in respect of the DIP Documents, (iii) to prevent, hinder or otherwise delay the Agent's assertion, enforcement or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Documents or this Final Order, (iv) to seek to modify any of the rights granted to the Agent or the DIP Lenders under this Final Order or under the DIP Documents, in each of

43

the foregoing cases without such parties' prior written consent or (v) to pay any amount on account of any claims or expenses arising prior to or after the Petition Date unless such payments are approved by the Interim Order or this Final Order (to the extent requested in the Motion) or are consistent with the ProtoStar I Budget (as defined in the DIP Credit Agreement) and approved (to the extent necessary) by an order of the Court.

(b)     In addition to and not in limitation of the foregoing, no borrowings, Cash Collateral, DIP Collateral or the Carve-Out may be used by any party in interest (i) to object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of the Existing Obligations, the Pre-Petition Liens or, subject to the proviso below, the Adequate Protection Obligations granted to the Pre-Petition Lenders under the Interim Order and this Final Order, (ii) to assert any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims or causes of action, objections or defenses against the Pre-Petition Lenders, (iii) to prevent, hinder or otherwise delay the Pre-Petition Lenders' assertion or enforcement of any of their rights and remedies granted pursuant to the Interim Order or this Final Order or (iv) to seek to modify any of the rights granted hereunder to the Pre-Petition Lenders, the Pre-Petition Agents and Pre-Petition Collateral Agents in each of the foregoing cases without such parties' prior written consent; *provided however*, that the foregoing limitations in this subparagraph shall not apply to claims for services rendered by the professionals retained by the Committee in an amount not to exceed $62,500 ($12,500 of which shall only be available to pay fees and expenses incurred by Bermuda Counsel to

44

the Committee) in the aggregate in connection with the investigation of the validity, extent, priority, avoidability, or enforceability of the Existing Obligations or the Pre-Petition Liens or, solely to the extent of the refinancing of the Existing WC Obligations (whether or not repaid as part of the DIP Credit Agreement) on and security interests in any of the Pre-Petition Collateral, to the extent such fees and expenses are allowed pursuant to sections 330, 331 and 503(b) of the Bankruptcy Code.

(c)     Notwithstanding anything herein to the contrary, but subject to subparagraph (b) above, including the Debtors' stipulations and releases herein solely as they relate to the Pre-Petition Lenders, the Committee (or any other party in interest with the requisite standing, including a subsequently appointed chapter 7 trustee, but other than the Debtors), shall have until the later of (x) seventy five (75) days from the date of entry of the Interim Order and (y) if a Committee is appointed, sixty (60) days from the appointment of the Committee or any trustee to bring any causes of action against the Pre-Petition Lenders (the "Investigation Termination Date") to file, on behalf of the Debtors' estates, and to serve upon the Pre-Petition Lenders, any claims, causes of action or proceedings arising from or related to the matters subject to the Debtors' stipulation in paragraph 16 of this Order against such parties (a "Challenge"). If, with respect to the Pre-Petition Lenders, (i) a Challenge is not properly commenced pursuant to the applicable Bankruptcy Rules on or before the Investigation Termination Date, and (ii) a final order is not entered granting a Challenge in its entirety, then the Debtors, all Committees and any other party in interest with requisite standing (including without

45

limitation a receiver, administrator, examiner or trustee appointed in any of the Cases or in any jurisdiction) without further action by any party or this Court and the Committee and any other party in interest (including without limitation a receiver, administrator, or trustee appointed in any of the Cases or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge and the Existing Obligations shall be allowed in full without defense, offset, counterclaim or reduction, and the Pre-Petition Liens of the Pre-Petition Collateral Agents, the Pre-Petition Agents and the Pre-Petition Lenders shall be deemed valid, enforceable, perfected, unavoidable and not subject to subordination or recharacterization under applicable nonbankruptcy law or the Bankruptcy Code, in each case without further notice to or order of the Court. Notwithstanding anything to the contrary herein, all rights of creditors against any non-debtor party, including, but not limited to the Pre-Petition Lenders, to pursue any such creditors' direct claims or causes of action are not affected or limited by this Final Order or its provisions.

20. **Final Order Governs.** Except as otherwise specifically provided in this Final Order, in the event of any conflict between the provisions of this Final Order, the Motion and the DIP Documents, the provisions of this Final Order shall govern.

21. **Binding Effect; Successors and Assigns.** The DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including the Agent, the DIP Lenders, the Pre-Petition Lenders, all Committees appointed in the Cases and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter

46

appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the Agent, the DIP Lenders, the Pre-Petition Agents, the Pre-Petition Collateral Agents and the Pre-Petition Lenders and the Debtors and their respective successors and assigns; *provided however*, that the Agent and the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee, chapter 11 trustee, examiner or similar responsible person appointed for the estates of the Debtors. In determining to make any loan under the DIP Documents or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the Agent and the DIP Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute).

22. **Rights Reserved.** Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights, claims, privileges, objections or defenses (whether legal, equitable or otherwise) of the Agent, the DIP Lenders, the Pre-Petition Lenders, the Pre-Petition Agents or Pre-Petition Collateral Agents under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of such parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Cases, conversion of the

47

Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner (including an examiner), (iii) seek new or different adequate protection on any basis or (iv) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans or (b) any other rights, claims or privileges of the Agent, the DIP Lenders, the Pre-Petition Lenders, the Pre-Petition Agents or Pre-Petition Collateral Agents (whether legal, contractual, equitable or otherwise) against any person or entity in any court.

23. **Agreed Budget and Use of Funds.** The Credit Parties represent that the ProtoStar I Budget is achievable and will allow the Credit Parties to operate in the Cases without the accrual of unpaid administrative expenses. The DIP Lenders are relying upon the Credit Parties' compliance with the ProtoStar I Budget in accordance with this Final Order in determining to enter into the DIP Documents and authorize the use of Cash Collateral. The Debtors shall use Cash Collateral and the loans or advances made under, or in connection with, the DIP Documents solely as provided in the DIP Documents (including in accordance with the ProtoStar I Budget, as such ProtoStar I Budget may be extended, varied, supplemented, or otherwise modified in accordance with the provisions of the DIP Documents). No amounts loaned or advanced under the DIP Documents or proceeds of the DIP Collateral shall be used by the Credit Parties except as expressly permitted under the DIP Documents. Notwithstanding anything to the contrary contained herein or under the DIP Documents, (i) that for any line item expense in the ProtoStar I Budget, the Credit Parties shall be deemed to be in compliance thereof to the extent the

48

expenditure or incurrence is not in excess of 10% over (x) the amount of such line item for the relevant week set forth in the ProtoStar I Budget plus (y) the aggregate of all amounts budgeted for such line item for the prior three week period but only to the extent such budgeted amounts have not been paid or used by the Company and (ii) the Credit Parties shall be deemed to be in compliance with the ProtoStar I Budget if the only budgeted line item that it is not otherwise in compliance with is the amount of fees and expenses of the professionals of the Agent, the DIP Lenders, the Pre-Petition Lenders, the Pre-Petition Agents and the Pre-Petition Collateral Agents.

24.     **No Obligation to Lend.** The DIP Lenders shall have no obligation to lend under the DIP Documents unless and until the conditions set forth in Article III of the DIP Credit Agreement have been satisfied or waived in accordance with the DIP Credit Agreement.

25.     **Amendments.** The DIP Documents may be amended, modified, supplemented, or the provisions thereof waived in accordance with their terms, without further order of this Court or notice to any party; provided, however, that if such amendment, modification, supplement, or waiver is material and adverse to the Credit Parties' estates, such amendment, modification, supplement, or waiver, and upon any such timely written objection such amendment, modification, supplement, or waiver shall be effective only pursuant to an order of this Court.

49

26.     **Final Order Effective Immediately.** This Final Order is hereby deemed effective immediately (rather than ten (10) days after entry hereof) *nunc pro tunc* to the Petition Date pursuant to Bankruptcy Rule 6004(h).

27.     **No Third Party Rights.** Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

28.     **Discharge Waiver.** The DIP Obligations shall not be discharged by the entry of an order (a) confirming a chapter 11 plan in any of the Credit Parties' Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive such discharge) or (b) converting these Cases to cases under chapter 7 of the Bankruptcy Code.

29.     **Notice of Final Hearing; Objections to Entry of Final Order.** The Debtors promptly shall mail copies of this Final Order to the parties that received notice of the Interim Hearing, any other party that has filed a request for notices with the Court, and to counsel for any Committee that may be appointed.

30.     **Certain Liens and Claims on Avoidance Actions.** Notwithstanding anything herein to the contrary herein or in the Interim Order, the Superpriority Claims, DIP Liens, Adequate Protection Liens and Section 507(b) Claim as set forth in Paragraphs 6(a) through (b), 7(a) through (c) and 14(a)(ii) hereof, as applicable, shall not attach to or be assertable against any of the estates' claims or causes of action under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or be payable from or

50

have recourse to any proceeds or property recovered from any such claims or causes of action.

Dated: <u>Aug. 24</u>, 2009
        <u>Wilmington, Delaware</u>

_____
UNITED STATES BANKRUPTCY JUDGE

51