# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PROTOSTAR LTD, *et al.*, | Case No. 09-12659 (MFW) |
| Debtors. | Jointly Administered |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PROTOSTAR LTD, et al., | Adv. Pro. No. _____ |
| Plaintiff, | **ADVERSARY COMPLAINT** |
| v. | |
| CREDIT SUISSE, SINGAPORE BRANCH, as Security Agent, CREDIT SUISSE, CAYMAN ISLANDS BRANCH, as Administrative Agent, OCTAVIAN SPECIAL MASTER FUND, LP, LIM ASIA SPECIAL SITUATIONS MASTER FUND LIMITED, ASHMORE EMERGING MARKETS CORPORATE HIGH YIELD FUND LIMITED, ASHMORE GROWING MULTI STRATEGY FUND LIMITED, ASHMORE EMERGING MARKETS DEBT FUND, ASHMORE SICAV IN RESPECT OF ASHMORE SICAV EMERGING MARKETS DEBT FUND, STICHTING BEDRIJFSTAKPENSIOFONDS VOOR DE METALEKTRO, NEW ENTERPRISES ASSOCIATES 9, LIMITED PARTNERSHIP, IP (AIV III) LP, IP III (US AIV) LP, JEFFRIES GROUP, INC., BLUE MOUNTAIN CREDIT ALTERNATIVES MASTER FUND, L.P., SPINNAKER GLOBAL EMERGING MARKETS FUND LTD, SPINNAKER GLOBAL OPPORTUNITY FUND LTD, | |

| |
|---|
| SPINNAKERGLOBAL STRATEGIC FUND LTD, DRAWBRIDGE GLOBAL MACRO MASTER FUND LTD, and ABC COMPANIES 1-10, |
| Defendants. |

Plaintiff, the Official Committee of Unsecured Creditors ("Plaintiff" or the "Committee"), on its own behalf and on behalf of and as the representative of the Debtors' chapter 11 estates (collectively, the "Debtors" or "ProtoStar")[1], by way of this adversary complaint pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure, respectfully alleges as follows:

## SUMMARY OF PROCEEDING

1. By its adversary complaint, the Committee seeks to avoid, recover and otherwise contest the extent and validity of liens granted by ProtoStar Ltd. ("PS Ltd."), ProtoStar II Ltd. ("PS 2"), ProtoStar Satellite Systems, Inc. ("PSS") and ProtoStar Development Ltd. ("PSD") to secure the CS Facility (as hereinafter defined).

2. The primary asset of PS 2 is a geostationary commercial communications satellite (the "PS 2 Satellite") orbiting over and about the Asia-Pacific region and designed to lease capacity to DTH (direct-to-home) and broadband internet service providers. Other PS 2 assets include a contractual right to an orbital slot for the PS 2 Satellite (the "Slotting Right"), and certain ground equipment (the "Ground Equipment" and, together with the PS 2 Satellite, the Slotting Right and substantially all other assets owned by PS 2, the "PS 2 Assets") utilized to support and assist in the operation of the PS 2 Satellite, which Ground Equipment is located in Jakarta, Indonesia and Subic Bay, Philippines (the "Ground Equipment Jurisdictions").

3. The PS 2 Assets and the assets that, upon information and belief, are owned by PS Ltd. (the "PS Ltd. Assets"), PSS (the "PSS Assets") and PSD (the "PSD Assets")

---

[1]    The Debtors in these chapter 11 cases are: ProtoStar Ltd., ProtoStar I Ltd., ProtoStar II Ltd., ProtoStar Satellite Systems, Inc., ProtoStar Development Ltd., and ProtoStar Asia Pte. Ltd.

are purportedly subject to the security interest and/or liens asserted by the CS Facility Lenders (as hereinafter defined).

4.     The CS Facility Lenders purported to take a security interest in the PS Ltd. Assets, PS 2 Assets and PSD Assets and, in an attempt to perfect those security interests, filed, upon information and belief, Uniform Commercial Code ("UCC") financing statements in the District of Columbia and charges with the Registrar of Companies in Bermuda.

5.     However, because (a) PS Ltd., PS 2 and PSD each operate from at least two different locations, (b) the chief executive office of PS Ltd., PS 2 and PSD is, and always has been, located in California, and (c) the CS Facility Lenders did not file any UCC financing statements in California pursuant to the applicable provisions of the Delaware and California U.C.C., the CS Facility Lenders have not properly perfected their security interests in the PS Ltd. Assets, PS 2 Assets and PSD Assets and such security interests are avoidable for the benefit of the estate pursuant to 11 U.S.C. §544(a).

6.     Moreover, as to the Ground Equipment, the PS 2 Satellite, the Slotting Right and any other assets located outside the United States and Bermuda, even if the security interest of the CS Facility Lenders was perfected by filings in Washington, D.C. and Bermuda, which it was not, the effect and priority of such security interest is governed by the law of the jurisdiction in which such PS 2 Assets are located.

7.     Because the CS Facility Lenders failed to take any steps to perfect or establish the priority of their security interests in the Ground Equipment in the Ground Equipment Jurisdictions, or in any other assets located outside the United States and Bermuda in the jurisdictions in which those assets are located, such security interest is avoidable for the benefit of the estate pursuant to 11 U.S.C. §544(a).

8.     Further, because the CS Facility Lenders failed to take any steps to perfect or establish the priority of their security interests in the jurisdiction in which the PS 2 Satellite and Slotting Right are located, or deemed to be located, such security interest is also avoidable for the benefit of the estate pursuant to 11 U.S.C. §544(a).

9.     By this Complaint, the Committee also asserts that the liens granted to the CS Facility Lenders by PS Ltd., PS 2, PSS and PSD are avoidable and recoverable by the bankruptcy estates as fraudulent transfers.

10.    Finally, the Committee objects to all claims filed or asserted by the CS Facility Lenders against PS Ltd., PS 2, PSS and PSD in their respective chapter 11 cases.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 151, 157, and 1334.

12.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under and in connection with a case pending in this District under title II of the United States Code.  This adversary proceeding constitutes a "core" proceeding pursuant to 28 U.S.C. §157(b).

13.    The statutory predicates for the relief requested are Bankruptcy Rule 7001 and sections 105, 502, 506, 544, 548 and 550 of the Bankruptcy Code.

## PARTIES

14.    Plaintiff is the Official Committee of Unsecured Creditors duly appointed by the United States Trustee for this District on August 10, 2009.   Plaintiff brings this proceeding:  (a) pursuant to Plaintiff's motion for an order granting the Committee standing to prosecute this action on behalf of the Debtors' estates as relates to Counts One, Two and Three seeking avoidance of the security interests of the CS Facility Lenders under section 544(a) of the Bankruptcy Code, (b) in the Committee's own right, as relates to Counts Four, Five and Six seeking to avoid certain fraudulent transfers under sections 548 and 544 of the Bankruptcy Code and applicable state law, and objecting to the claims of the CS Facility Lenders under section 502 of the Bankruptcy Code and, (c) to the extent that the Committee becomes the assignee of the rights of some or all of the unsecured creditors, in the right of such assignors.

15.     Upon information and belief, Defendant Credit Suisse, Singapore Branch ("CSS"), is the security and collateral agent for the lenders (the "CS Facility Lenders") that are parties to that certain Facility Agreement, dated March 19, 2008 (the "CS Facility Agreement"), by and among PS Ltd., as borrower, PS 2, PSD and PSS as guarantors, and Credit Suisse International, as Hedging Bank ("CSI"), and has its principal place of business at 1 Raffles Link #05-02 Singapore 039393.

16.     Upon information and belief, Defendant Credit Suisse, Cayman Islands Branch ("CSCI"), is the administrative agent for the CS Facility Lenders, and has its principal place of business at 11 Madison Avenue, New York, New York 10010.

17.     Upon information and belief, Defendant Octavian Special Master Fund, LP is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS, and has its principal place of business at 650 Madison Avenue, New York, New York 10022.

18.     Upon information and belief, Defendant LIM Asia Special Situations Master Fund Limited is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS, and has its principal place of business at 20F Ruttonjee House, 11 Duddell Street, Central, Hong Kong.

19.     Upon information and belief, Defendant Ashmore Emerging Markets Corporate High Yield Fund Limited is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS, and has its principal place of business at 61 Aldwych London WC2B 4AE, United Kingdom.

20.     Upon information and belief, Defendant Ashmore Growing Multi Strategy Fund Limited is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS, and has its principal place of business at 61 Aldwych London WC2B 4AE, United Kingdom.

21.     Upon information and belief, Defendant Ashmore Emerging Markets Debt Fund is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS, and has its principal place of business at 61 Aldwych London WC2B 4AE, United Kingdom.

22.     Upon information and belief, Defendant Ashmore Sicav in Respect of Ashmore Sicav Emerging Markets Debt Fund is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS, and has its principal place of business at 61 Aldwych London WC2B 4AE, United Kingdom.

23.     Upon information and belief, Defendant Stichting Bedrijfstakpensioenfonds Voor De Metalektro is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS, and has its principal place of business at Folkstoneweg 38, 118 LM, Luchthave Schiphol, Netherlands.

24.     Upon information and belief, Defendant New Enterprise Associates 9, Limited Partnership is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS, and has its principal place of business at 2855 Sand Hill Road, Menlo Park, California 94025.

25.     Upon information and belief, Defendant IP (AIV III) LP is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS, and has its principal place of business at 40 West 57th Street, New York, New York 10019.

26.     Upon information and belief, Defendant IP III (US AIV) LP is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS, and has its principal place of business at 40 West 57th Street, New York, New York 10019.

27.     Upon information and belief, Defendant Jeffries Group, Inc. is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS.

28.     Upon information and belief, Defendant Blue Mountain Credit Alternatives Master Fund, L.P. is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS, and has its principal place of business at 330 Madison Avenue, New York, New York 10017.

29.     Upon information and belief, Defendant Spinnaker Global Emerging Markets Fund Ltd, is one of PS 2's alleged secured lenders and a beneficiary of the liens granted

to CSS, and has its principal place of business at 6 Grosvenor Street, London, WIK 4DJ, England, United Kingdom.

30.     Upon information and belief, Defendant Spinnaker Global Opportunity Fund Ltd, is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS, and has its principal place of business at 6 Grosvenor Street, London, WIK 4DJ, England, United Kingdom.

31.     Upon information and belief, Defendant Spinnaker Global Strategic Fund Ltd, is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS, and has its principal place of business at 6 Grosvenor Street, London, WIK 4DJ, England, United Kingdom.

32.     Upon information and belief, Defendant Drawbridge Global Macro Master Fund Ltd is one of PS 2's alleged secured lenders and a beneficiary of the liens granted to CSS, and has its principal place of business at 1345 Avenue of the Americas, New York, New York 10105..

33.     Defendants ABC Companies include, but may not be limited to, all financial institutions not otherwise identified as a Defendant who are parties to the CS Facility.

## FACTS COMMON TO ALL COUNTS

**A.     Introduction**

34.     PS Ltd. was formed under the laws of Bermuda as an exempted company with its chief executive office located in San Francisco, California.

35.     PS 2 was formed under the laws of Bermuda as an exempted company with its chief executive office located in San Francisco, California.

36.     PSS is a corporation formed under the laws of Delaware with its chief executive office located in San Francisco, California.

37.     PSD was formed under the laws of Bermuda as an exempted company with its chief executive office located in San Francisco, California.

38.     The PS 2 Satellite is owned by PS 2 and is in orbit over the Asia-Pacific region.

39.     The Ground Equipment is owned by PS 2 and is located in the Ground Equipment Jurisdictions.

40.     The Slotting Right is owned by PS 2.

**B.     The Chapter 11 Filings And Appointment Of The Committee**

41.     On July 29, 2009 (the "<u>Petition Date</u>"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

42.     No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

43.     On August 10, 2009, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.  A notice identifying the individual members of the Committee was filed on the docket on August 11, 2009 [Docket No. 98].

44.     The Committee selected Lowenstein Sandler PC as its counsel, Greenberg Traurig LLP as its local counsel, and Bank Street Group LLC as its financial advisor.

**C.     Pre-Petition Indebtedness**

45.     ProtoStar Ltd. is party to the CS Facility Agreement (the "<u>CS Facility</u>") among ProtoStar Ltd., as borrower, CSS, as Arranger, Agent, Security Agent, Calculation Agent and Account Bank (in its separate legal roles as Agent, Security Agent and Calculation Agent), the CS Facility Lenders as lenders, and CSI as Hedging Bank.  The CS Facility and all obligations under the CS Facility are allegedly secured by first priority liens against, and a security interest in, all or substantially all of the assets of PS Ltd. (other than the stock of PS I held by PS Ltd.), PS 2, PSD and PSS.

46.     PS 2, PSD and PSS allegedly guaranteed obligations due under the CS Facility pursuant to a Guarantee and Security Agreement, dated March 31, 2008 (the "Guarantee and Security Agreement").  Under the Guarantee and Security Agreement, PS 2, PSD and PSS also purport to grant a security interest in favor of the CS Facility Lenders over all of their "property, assets and rights".

47.     As of the Petition Date, the outstanding principal amount on account of the CS Facility was alleged to be in excess of $242,000,000, plus accrued and unpaid interest thereon and unpaid fees, expenses, charges and other obligations incurred in connection therewith.

**D.     The PS 2 Final DIP Order**

48.     On August 25, 2009, the Bankruptcy Court entered a final debtor in possession financing order (Docket No. 166) (the "PS 2 DIP Final Order"), pursuant to which ProtoStar was authorized to incur debtor in possession financing under that certain Senior Secured Super-Priority Debtor-In-Possession Multiple Draw Term Loan Agreement (as amended), by and among ProtoStar Ltd., as borrower, PS 2, as borrower, the lender parties thereto, CSIC as sole book runner and sole lead arrangers, and each of the guarantor parties thereto, approved by the Bankruptcy Court pursuant to the PS 2 Final DIP Order.

49.     Pursuant to the PS 2 Final DIP Order, the Debtors were authorized to draw funds under the approved DIP facility to pay off the CS Facility, subject to the Committee's reservation of rights to challenge the extent, priority and validity of the CS Facility Lenders' liens.

**E.     The CS Facility Lenders' Liens Are Not Perfected**

50.     With respect to the CS Facility, a UCC-1 financing statement, dated April 2, 2008, showing CSS as the "secured party" was filed in the District of Columbia, purporting to perfect liens against certain assets of PS Ltd.

51.     With respect to the CS Facility, a UCC-1 financing statement, dated April 2, 2008, showing CSS as the "secured party" was filed in the District of Columbia, purporting to perfect liens against certain assets of PS 2.  A corresponding charge was entered with the Registrar of Companies in Bermuda on April 1, 2008

52.     With respect to the CS Facility, a UCC-1 financing statement, dated April 2, 2008, showing CSS as the "secured party" was filed in the District of Columbia, purporting to perfect liens against certain assets of PSD.

53.     The CS Facility Agreement and Guarantee and Security Agreement contain conflicting choice of law provisions.  According to the CS Facility Agreement, the loan documents and obligations are to be governed by, and construed and enforced in accordance with, the laws of England.  The Guarantee and Security Agreement provides that it "shall be governed and construed in accordance with the laws of Bermuda."

54.     The agreements of PS Ltd., PS 2, PSD and the CS Facility Lenders as to choice of law are not binding for purposes of determining applicable law for perfection of security interests.

55.     Under prevailing law, the Bankruptcy Court must apply the choice of law rules of the forum state.  In analyzing choice of law issues, courts in Delaware follow the Restatement (Second) of the Law Conflict of Laws ("Restatement"), which provides that a court "will follow a statutory directive of its own state on choice of law."  Restatement §6(1).

56.     Section 9-301 of the Delaware Code, tit. 6, arts. 1-11 (the "Delaware U.C.C.") is a statutory directive that governs choice of law determinations with respect to the perfection and priority of security interests.

57.     Pursuant to Section 1-301(c)(7) of the Delaware U.C.C., where Sections 9-301 through 9-307 of the Delaware U.C.C. specify the applicable law, those Sections govern and a contrary agreement is effective only to the extent permitted by Sections 9-301 through 9-307.

58.     Pursuant to Section 9-301 of the Delaware U.C.C., the law in which the debtor is "located" governs perfection of non-possessory security interests in collateral.

59.     Pursuant to Section 9-307(b) of the Delaware U.C.C., if the debtor is an organization that has more than one place of business, the debtor will be deemed to be located at its "chief executive office."

60.     PS Ltd., PS 2 and PSD have at all times relevant hereto, had more than one place of business.

61.     PS Ltd., PS 2 and PSD currently maintain, and at all times relevant hereto, maintained, their chief executive offices in San Francisco, California.

62.     Evidence establishing the fact that PS Ltd., PS 2 and PSD maintain, and have always maintained, their chief executive office in San Francisco, California includes, but is not limited to, the following:

(a)     The address in Bermuda used by PS Ltd., PS 2 and PSD is the office of its Bermuda attorneys, Appelby Global.  PS Ltd. PS 2 and PSD nor any of the Debtors, conduct operations from or are physically present in Bermuda.

(b)     The Debtors, including PS Ltd., PS 2 and PSD have an actual physical presence in California, and occupy office space located at 100 California Street, Suite 700, San Francisco, California 94111 (the "<u>California Address</u>").

(c)     Senior executive officers of PS Ltd., PS 2 and PSD maintain their offices in California.  For example, Philip R. Father, President and CEO, lists the California Address, *and no other address*, on his business card.  Similarly, other present and former senior officers, including Charles Sweeney, Executive V.P. and CFO, Cynthia L. Pelini, CFO, Craig Gavin, V.P. of Operations, and Reid Stephenson, VP of Marketing and Government Affairs, each listed the California Address, *and no other address*, on their respective business cards.  Copies of the business cards are attached as Exhibit 1.

(d)     PS 2 regularly holds itself out to third parties (<u>e.g.</u>, customers and vendors) as being located and transacting its business from the California Address. For example, in negotiating the terms of its contracts with PS 2, both International Launch Systems and Integral Systems, Inc. dealt exclusively with individuals who were located in California.

(e)     The Satellite Transponder Procurement Agreement (the "<u>Transponder Agreement</u>") entered into with PT Media Citra Indostar and PT MNC Skyvision provides, in relevant part:

*       *       *

(1)     PROTOSTAR II Ltd., a corporation organized and incorporated under the laws of Bermuda, having its registered office at Canons Court, 22 Victoria Street, P.O. Box HM 1179, Hamilton HM Bermuda <u>and a place of business at 100 California Street, Suite 700, San Francisco, CA 94111 USA</u> (hereinafter referred to as "PROTOSTAR") and (emphasis added).

*       *       *

(f)     The Guarantee by PT Global Mediacom TBK in consideration of PS 2 entering into the Transponder Agreement contains the same address provision cited in (e) above.

(g)     The Satellite Transponder Procurement Option Agreement between PS 2 and PT Media Citra Indostar and PT MNC Skyvision contains the same address provision cited in (e) above.

(h)     The Amendment #1 to the Transponder Agreement contains the same address provision cited in (e) above.

63.     Additional evidence establishing the fact that PS Ltd., PS 2 and PSD maintain, and have always maintained, their chief executive office in San Francisco, California will be obtained through discovery.

64.     Because the location of the chief executive office of PS Ltd., PS 2 and PSD is in California, the California version of the Uniform Commercial Code applies.

65.     Under California law, the CS Facility Lenders were required to file financing statements with the California Secretary of State in order to perfect their claimed security interests.

66.     As a result of the CS Facility Lenders' failure to file UCC financing statements in California relative to the PS Ltd. Assets, PS 2 Assets and PSD Assets, the CS Facility Lenders' alleged security interests are not perfected as to the PS Ltd. Assets, PS 2 Assets and PSD Assets.

## COUNT ONE
### (Avoidance And Preservation Of Security Interests Under Section 544 Of The Bankruptcy Code)

67.     The Committee repeats and reiterates each of the foregoing allegations as if set forth at length herein.

68.     Pursuant to section 544(a)(1) of the Bankruptcy Code, the bankruptcy estate has the rights and powers of, and may avoid any obligation incurred by the estate that is voidable by, a hypothetical judicial lien creditor who has properly levied on the estates' property.

69.     The Committee can avoid all security interests that were not properly perfected under applicable state law.

70.     As a result of the CS Facility Lenders' failure to file UCC financing statements in California, the CS Facility Lenders' alleged security interests are not perfected as to the PS Ltd. Assets, PS 2 Assets and PSD Assets.

71.     Therefore, any alleged security interest in the CS Facility Lenders' favor arising from the CS Facility is void under applicable state law and section 544 of the Bankruptcy Code.

## COUNT TWO
### (Recovery And Preservation Of Avoided Transfers Under Sections
### 550 And 551 Of The Bankruptcy Code)

72.     The Committee repeats and reiterates each of the foregoing allegations as if set forth at length herein.

73.     Pursuant to section 550 of the Bankruptcy Code, a bankruptcy estate may recover any and all transfers avoided under section 544 of the Bankruptcy Code.

74.     Pursuant to section 551 of the Bankruptcy Code, the CS Facility Lenders' avoided security interests are preserved for the benefit of the bankruptcy estates of PS Ltd, PS 2 and PSD.

## COUNT THREE
### (Even If Perfected Under The Applicable Uniform Commercial Code, The CS Facility Lenders' Security Interests Are Not Effective Or Do Not Have Priority Over The Rights Of The Estates As Perfected Lien Creditors)

75.     The Committee repeats and reiterates each of the foregoing allegations as if set forth at length herein.

76.     Pursuant to section 544(a) of the Bankruptcy Code, the bankruptcy estates of PS 2, PSS and PSD are afforded the rights of a lien creditor on all of their respective assets.

77.     In the event it is determined that the CS Facility Lenders properly perfected their security interests in the United States or Bermuda as to the Ground Equipment, which they did not, the effect and priority of such security interests in the Ground Equipment (as compared to the priority of the hypothetical lien afforded to the PS 2 estate and enforced by the Committee hereunder) is governed by the law of the Ground Equipment Jurisdictions.

78.     As the CS Facility Lenders have taken no steps to establish the perfection or priority of their security interests in the Ground Equipment Jurisdictions, the alleged security interests of the CS Facility Lenders do not have priority over the hypothetical lien asserted by the Committee on behalf of the PS 2 estate under section 544(a) of the Bankruptcy Code.

79.     In the event it is determined that the CS Facility Lenders properly perfected their security interests in the United States or Bermuda as to the PS 2 Satellite and Slotting Right, which they did not, the effect and priority of such security interest (as compared to the priority of the hypothetical lien afforded to the PS 2 estate and enforced by the Committee hereunder) is governed by the law of the jurisdiction where the PS 2 Satellite and the Slotting Right are located, or are deemed to be located.

80.     As the CS Facility Lenders have taken no steps to establish the perfection or priority of their security interests in the PS 2 Satellite and the Slotting Right in the jurisdictions in which they are located, or deemed to be located, the security interests of the CS Facility Lenders do not have priority over the hypothetical lien asserted by the Committee on behalf of the PS 2 estate under section 544(a) of the Bankruptcy Code.

81.     To the extent PSS owns any assets outside the United States and Bermuda, the priority of any security interests in those assets (as compared to the priority of the hypothetical lien afforded to the PSS estate and enforced by the Committee hereunder) is governed by the law where such assets are located.

82.     As the CS Facility Lenders have taken no steps to establish the perfection or priority of their security interests in any jurisdiction outside the United States or Bermuda, the alleged security interests of the CS Facility Lenders do not have priority over the hypothetical lien asserted by the Committee on behalf of the PSS estate under section 544(a) of the Bankruptcy Code.

83.     To the extent PSD owns any assets outside the United States and Bermuda, the priority of any security interests in those assets (as compared to the priority of the hypothetical lien afforded to the PSD estate and enforced by the Committee hereunder) is governed by the law where such assets are located.

84.     As the CS Facility Lenders have taken no steps to establish the perfection or priority of their security interests in any jurisdiction outside the United States or Bermuda, the alleged security interests of the CS Facility Lenders do not have priority over the hypothetical

lien asserted by the Committee on behalf of the PSD estate under section 544(a) of the Bankruptcy Code.

## COUNT FOUR
### (Fraudulent Conveyance Under Bankruptcy Code Section 548(a)(1))

85.     The Committee repeats and reiterates each of the foregoing allegations as if set forth at length herein.

86.     As more fully described in this Complaint, within two years of the Petition Date, the Debtors incurred "obligations" and the CS Facility Lenders received "transfers" from PS Ltd., PS 2, PSS and PSD (collectively, "Transfers") as those terms are used within 11 U.S.C. §548(a)(1).

87.     The Transfers to the CS Facility Lenders included (but were not limited to) the security interests obtained by the CS Facility Lenders in connection with the CS Facility Agreement and the Guarantee and Security Agreement.

88.     The Debtors received less than a reasonably equivalent value, within the meaning of 11 U.S.C. §548(a)(1)(B)(i), in exchange for the Transfers.

89.     The Debtors were insolvent, within the meaning of 11 U.S.C. §548(a)(1)(B)(ii)(I), on the date of the Transfers or became insolvent as a result of the Transfers.

90.     At the time of the Transfers, the Debtors were engaged in business or a transaction, within the meaning of 11 U.S.C. §548(a)(1)(B)(ii)(II), for which any property remaining with the Debtors was an unreasonably small capital.

91.     At the time of the Transfers, the Debtors intended to incur, or believed that they would incur, debts that would be beyond their ability to pay as such debts matured, within the meaning of 11 U.S.C. §548(a)(1)(B)(ii)(III).

92.     None of the CS Facility Lenders was a good-faith transferee within the meaning of 11 U.S.C. §548(c).

93.     By reason of the foregoing, the CS Facility Lenders are liable as fraudulent transferees under 11 U.S.C. §550(a), and all of the Transfers should be avoided under 11 U.S.C. §544(b) and recovered under 11 U.S.C. §550(a).

94.     By reason of the foregoing, fraudulent transfers to the CS Facility Lenders occurred within the meaning of 11 U.S.C. §548(a)(1).

## COUNT FIVE
### (Fraudulent Conveyance Under Bankruptcy Code Section 544 And Applicable State Law)

95.     The Committee repeats and reiterates each of the foregoing allegations as if set forth at length herein.

96.     By reason of the foregoing, the Transfers constitute fraudulent transfers to the CS Facility Lenders within the meaning of applicable state laws, including (but not limited to) the Uniform Fraudulent Transfer Act (UFTA).

97.     By reason of the foregoing, the Transfers should be avoided under 11 U.S.C. §544(b) and recovered under 11 U.S.C. §550(a).

## COUNT SIX
### (Objection To The Prepetition Lenders Claims
### Pursuant To Section 502(a))

98.     The Committee repeats and reiterates each of the foregoing allegations as if set forth at length herein.

99.     Pursuant to section 502(a) of the Bankruptcy Code, the Committee objects to and seeks to disallow any and all claims filed or asserted by the CS Facility Lenders in the PS Ltd., PS 2, PSS and PSD chapter 11 cases.

## RESERVATION OF RIGHTS

100.    The Committee believes that additional claims in favor of one or more of the Debtors' estates against the Defendants and/or other parties may exist. Specifically, and without limitation, the Committee believes that a colorable basis exists to equitably subordinate the liens and claims of the Defendants. The Committee is currently undertaking discovery on

these issues, and will amend this Complaint as appropriate. Hence, the Committee reserves any and all rights to bring any and all such claims (and other claims) to the extent authorized by the Court and/or applicable law.

**WHEREFORE**, the Committee demands judgment pursuant to, *inter alia*, sections 506, 544 and 550 of the Bankruptcy Code, in its favor and against the Defendants as follows:

(a) avoiding all security interests asserted by the CS Facility Lenders on the PS Ltd. Assets, PS 2 Assets and PSD Assets;

(b) directing that any unencumbered assets or the proceeds thereof that were conveyed to the Defendants by the Debtors on account of alleged pre-petition secured claims during these chapter 11 cases be disgorged and returned to the PS Ltd., PS 2, PSS and PSD estates;

(c) preserving and transferring under section 551 of the Bankruptcy Code the liens and security interests securing the CS Facility for the benefit of, and ownership by, the PS Ltd., PS 2 and PSD estates;

(d) disallowing under section 502(a) of the Bankruptcy Code all claims filed by the CS Facility Lenders against the PS Ltd., PS 2, PSS and PSD estates;

(e) avoiding any and all of the Transfers to the CS Facility Lenders pursuant to sections 548(a)(1) and 544(b) of the Bankruptcy Code and applicable state law

(f) recovering any and all transfers avoided;

(g) fixing the value of the pre-petition indebtedness;

(h) awarding costs of suit and reasonable attorneys' fees; and

(i)     awarding such other and further relief as the Court deems equitable and proper.

Respectfully submitted,

Dated: December 11, 2009      By: */s/ Jason C. DiBattista*

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq.
Jeffrey D. Prol, Esq.
Jason C. DiBattista, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Counsel to the Official Committee of Unsecured Creditors*

# EXHIBIT "A"



*Powering Asia's DTH future*

**Philip Fether**
President & CEO

50 California Street, Suite 2000
San Francisco, CA 94111 USA
Tel:    (415) 775-1599
Mobile:  (415) 748-0661
Fax:    (415) 677-8779
pfather@protostarsat.com



*Powering Asia's DTH future*

**Paul Froelich**
Chief Financial Officer

100 California Street, Suite 700
San Francisco, CA 94111 USA
Tel:    1 415 814 8115
Mobile:  1 415 298 6816
Fax:    1 415 391 8576
pfroelich@protostarsat.com
www.protostarsat.com



*Powering Asia's DTH future*

**Craig Gavin**
Senior Vice President
Global Operations

100 California Street, Suite 700
San Francisco, CA 94111 USA
Office:     1-415-814-8107
Mobile:     1-240-401-2228
Fax:        1-415-391-8576
cgavin@protostarsat.com
www.protostarsat.com



*Powering Asia's DTH future*

**Cynthia M. Pelini**
Chief Financial Officer

ProtoStar Satellite Systems, Inc.
100 California Street, Suite 700
San Francisco, CA 94111 USA
Office:   1-415-814-8148
Mobile:  1-415-519-1621
Fax:     1-415-391-8576
cpelini@protostarsat.com



*Powering Asia's DTH future*

**Reid Stephenson**
Vice President of Marketing
and Government Affairs

50 California Street, Suite 2000
San Francisco, CA 94111 USA
Tel:    (650) 343-8185
Mobile: (650) 455-3093
Fax:    (415) 677-8778
rstephenson@protostarsat.com
www.protostarsat.com



*Powering Asia's DTH future*

**Charlie Sweeney**
Executive Vice President

100 California Street, Suite 700
San Francisco, CA 94111 USA
Tel:     1-415-814-8105
Mobile:  1-510-301-8478
Fax:     1-415-391-8576
csweeney@protostarsat.com
www.protostarsat.com