## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
                                       :
In re:                                 :      Chapter 11
                                       :
                                       :      Case No. 09-12659 (MFW)
PROTOSTAR LTD., et al.,¹                :
                                       :      (Jointly Administered)
                                       :
                    Debtors.           :
-------------------------------------------------------x
```

## ORDER (A) APPROVING SALE OF CERTAIN ASSETS OF PROTOSTAR II LTD. TO SES SATELLITE LEASING LIMITED FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO 11 U.S.C. § 363(b), (f) AND (m), (B) ASSUMING AND ASSIGNING TO SES SATELLITE LEASING LIMITED CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

Upon the motion, dated August 3, 2009 (the "Sale Motion"),[2] of ProtoStar Ltd and its

affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively,

"ProtoStar"), for entry of an order establishing proposed bidding procedures for (i) the sale of

certain assets of ProtoStar II Ltd. ("PS II") and (ii) the assumption and assignment of certain

executory contracts and unexpired leases of PS II described in the Sale Agreement (as defined

below); and the Court having entered an order, dated August 24, 2009, approving the Bidding

Procedures and other related relief (the "Bidding Procedures Order"); and on October 26, 2009

and December 9, 2009, ProtoStar filed with the Court in accordance with the Bidding Procedures

Order notices of revised dates in connection with the auction and the sale hearing (the

---

[1]   The ProtoStar entities, along with the last four digits of their respective federal tax identification numbers, are as follows: ProtoStar Ltd. (4245), ProtoStar I Ltd. (1042), ProtoStar II Ltd. (1244), ProtoStar Satellite Systems, Inc. (2615), ProtoStar Development Ltd. (none) and ProtoStar Asia Pte. Ltd. (none). The mailing address for ProtoStar is 100 California Street, Suite 700, San Francisco, CA 94111.

[2]   Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Sale Motion or the Sale Agreement, as the case may be.

"Scheduling Notices"); and an auction having been held on December 16, 2009 in accordance with the Bidding Procedures Order and Scheduling Notices (the "Auction"); and ProtoStar having identified the asset purchase agreement (the "Successful Bidder Sale Agreement"), dated as of December 16, 2009 (a copy of which is attached hereto as Exhibit A, except for the exhibits and/or schedules thereto), between PS II and SES Satellite Leasing Limited (the "Successful Bidder") as the Successful Bid at the Auction; and ProtoStar having identified the asset purchase agreement (the "Next Highest Bidder Sale Agreement"), dated as of December 16, 2009 (a copy of which is attached hereto as Exhibit B, except for the exhibits and/or schedules thereto), between PS II and Asia Satellite Telecommunications Company Limited (the "Next Highest Bidder") as the Next Highest Bid at the Auction; and ProtoStar having provided due and sufficient notice of the results of the Auction in accordance with the Bidding Procedures Order; and a hearing on the Sale Motion having been held on December 18, 2009 (the "Sale Hearing"), at which time all interested parties were offered a fair and reasonable opportunity to be heard and object with respect to the Auction, the Sale Motion, the Sale Agreement and the form of this Order; and the Court having reviewed and considered (i) the transcript of the Auction, (ii) the Sale Motion, (iii) the argument and evidence presented during the Sale Hearing and (iv) any objections thereto; and it appearing that the relief requested in the Sale Motion is in the best interests of ProtoStar, its estates, its creditors and other parties in interest; and upon the record of the Auction, the Sale Hearing, and these cases; and after due deliberation thereon and good cause appearing therefor,

## IT IS HEREBY FOUND, CONCLUDED AND DETERMINED THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

2

B.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    This Court has jurisdiction to hear and determine the Sale Motion in accordance with the Bidding Procedures Order pursuant to 28 U.S.C. §§157 and 1334.

D.    Venue of these cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.    Determination of the Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

F.    As used herein, the "Buyer" shall mean the Successful Bidder or, in the event ProtoStar and the Successful Bidder do not close on the transaction pursuant to the Successful Bidder Sale Agreement and ProtoStar, in consultation with the PS II DIP Agent, First Lien Agent and the Official Committee of Unsecured Creditors (the "Committee"), elects to close the transaction contemplated by the Next Highest Bidder Sale Agreement, the Next Highest Bidder.

G.    As used herein, the "Sale Agreement" shall mean the Successful Bidder Sale Agreement or, in the event ProtoStar and the Successful Bidder do not close on the transaction pursuant to the Successful Bidder Sale Agreement and ProtoStar, in consultation with the PS II DIP Agent, First Lien Agent and the Committee, elects to close the transaction contemplated by the Next Highest Bidder Sale Agreement, the Next Highest Bidder Sale Agreement.

H.    As used herein, the "Assumed Agreements" shall mean those certain executory contracts and unexpired leases of PS II, a list of which is attached hereto as Schedule A, as

3

described in the Successful Bidder Sale Agreement or, in the event ProtoStar and the Successful Bidder do not close on the transaction pursuant to the Successful Bidder Sale Agreement and ProtoStar, in consultation with the PS II DIP Agent, First Lien Agent and the Committee, elects to close the transaction contemplated by the Next Highest Bidder Sale Agreement, as described in the Next Highest Bidder Sale Agreement.

I.      On July 29, 2009 (the "Petition Date"), ProtoStar filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, ProtoStar has continued in possession and management of its businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

J.      ProtoStar has demonstrated a sound business purpose for the transactions contemplated by the Sale Agreement (the "Sale") and has complied with the terms of the Bidding Procedures Order and such additional procedures for notices of the Sale Motion, the Sale Hearing, the Sale Agreement, the form of this Order and the assumption and assignment of the Assumed Agreements, including, without limitation, filing the Scheduling Notices, which procedures were fair and reasonable, to provide notice of the Sale Motion, the Sale Hearing, the Sale Agreement, the form of this Order and the assumption and assignment of the Assumed Agreements to all parties in interest.

K.      As evidenced by the affidavits of service filed with the Court, proper, timely, adequate and sufficient notice of the Sale Motion, the Auction, the Sale Hearing, the Sale Agreement, the form of this Order, and the assumption and assignment of the Assumed Agreements has been provided in accordance with the Bidding Procedures Order and all applicable law, including without limitation, sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the local rules of this Court and the

4

procedural due process requirements of the United States Constitution. ProtoStar also gave due and proper notice of the assumption, sale and assignment of each Assumed Agreement in accordance with the Sale Agreement to each non-debtor party under each such Assumed Agreement. Such notice was good, sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, the Auction, the Sale Hearing, the Sale Agreement, this Order, or the assumption and assignment of the Assumed Agreements was or is required.

L.　A reasonable opportunity to object and to be heard regarding the relief requested in the Sale Motion has been afforded to all interested persons and entities, including, without limitation, (i) all entities that claim any interest in or lien upon the Purchased Assets; (ii) all parties to the Assumed Agreements that are assumed, sold and assigned pursuant to this Order; (iii) all governmental taxing authorities that have, or as a result of the sale of the Purchased Assets may have, claims, contingent or otherwise, against ProtoStar; (iv) all parties that filed requests for notices under applicable Bankruptcy Rules or otherwise; (v) all known creditors of ProtoStar; (vi) all taxing authorities in the jurisdictions in which ProtoStar operates; (vii) all governmental, pension and environmental entities known by ProtoStar that may have an interest in the proposed Sale; (viii) the Office of the United States Trustee; (ix) counsel to any official Committee appointed in these cases; (x) counsel to ProtoStar's prepetition secured lenders; (xi) the agents for ProtoStar's prepetition secured credit facilities and their respective counsel; and (xii) all entities known by ProtoStar to have an interest in purchasing the Purchased Assets. Other parties interested in bidding on the Purchased Assets were provided, upon request, sufficient information to make an informed judgment on whether or not to bid for the Purchased Assets.

M.    On December 14, 2009, the Successful Bidder and the Next Highest Bidder each timely submitted a Qualified Bid in accordance with, and subject to the terms of, the Bidding Procedures Order.

N.    At the Auction, ProtoStar, in consultation with the PS II DIP Agent, the First Lien Agent and the Committee selected SES Satellite Leasing Limited as having submitted the highest or otherwise best offer or as the Successful Bidder as provided in the Bidding Procedures Order.

O.    At the Auction, ProtoStar, in consultation with the PS II DIP Agent, the First Lien Agent and the Committee, selected Asia Satellite Telecommunications Company Limited as having submitted the next highest or otherwise best offer after the Successful Bidder or as the Next Highest Bidder as provided in the Bidding Procedures Order.

P.    ProtoStar has demonstrated a sufficient basis for PS II to enter into the Sale Agreement, sell the Purchased Assets and assume and assign the Assumed Agreements under sections 363, 365, 1123 and 1141 of the Bankruptcy Code, and such actions are appropriate exercises of ProtoStar's business judgment and in the best interests of ProtoStar, its estates and creditors.

Q.    The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner in accordance with the procedures set forth in the Bidding Procedures Order, and ProtoStar, ProtoStar's prepetition secured lenders and the Committee reported to the Court their recommendation of the Successful Bidder and the Next Highest Bidder and the amounts of their respective bids for approval by the Court at the Sale Hearing. A transcript of the record of the Auction has been submitted to the Court.

R.    Upon entry of this Order, PS II has the power and authority to execute, deliver and perform the Sale Agreement and all writings related thereto, and nothing contained in the

Bankruptcy Code shall prohibit or limit the ability of the Buyer to enforce the terms of the Sale Agreement against PS II.

S.　　PS II has all of the corporate power and authority necessary to consummate the Sale and has taken all corporate action necessary to authorize and approve the Sale Agreement and the Sale.

T.　　No consents or approvals, other than those expressly provided for in the Sale Agreement, are required for PS II to consummate the Sale.

U.　　The Sale Agreement and the Sale were negotiated, proposed and entered into by PS II and the Buyer in good faith, without collusion, and from arm's length bargaining positions. Neither PS II nor the Buyer have engaged in any conduct that would cause or permit the Sale Agreement or the Sale to be avoided under section 363(n) of the Bankruptcy Code.

V.　　The Buyer is not an insider of ProtoStar, as that term is defined in section 101(31) of the Bankruptcy Code.

W.　　The Buyer is acting as a good faith purchaser, as that term is used in the Bankruptcy Code and is, accordingly, entitled to the protections set forth in section 363(m) of the Bankruptcy Code.

X.　　The consummation of the Sale pursuant to the Sale Agreement neither impermissibly restructures the rights of ProtoStar's creditors nor impermissibly dictates the terms of a chapter 11 plan. Neither the Sale Motion nor the Sale Agreement constitutes a *sub rosa* chapter 11 plan.

Y.　　The transfer of the Purchased Assets to the Buyer will be a legal, valid and effective transfer, authorized pursuant to the Bankruptcy Code and other applicable law and will vest the Buyer with all right, title, and interest in and to the Purchased Assets free and clear of all

interests, liens, claims and encumbrances of any kind or nature whatsoever, known or unknown, contingent or otherwise, which have arisen or accrued, or otherwise exist, as of the Closing Date (as such term is defined in the Sale Agreement), including, without limitation, (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of ProtoStar's or Buyer's interest in the Purchased Assets, or any similar rights, (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing Date, and (iii) those relating to any rights or claims based on any successor or transferee liability.

Z.      The Buyer shall have no liability for any interests, liens, claims and encumbrances of any kind or nature whatsoever, or other obligation of or against PS II and/or ProtoStar, related to the Purchased Assets by reason of the transfer of the Purchased Assets to the Buyer, including, without limitation, any rights or claims based on any successor or transferee liability. The Buyer is not acquiring or assuming any liability, warranty or other obligation of PS II, except as expressly set forth in the Sale Agreement with respect to Assumed Agreements.

AA.     The Buyer would not have entered into the Sale Agreement and would not consummate the Sale, thus adversely affecting ProtoStar, their estate, and their creditors, if the sale of the Purchased Assets and the assignment of the Assumed Agreements were not free and clear of all liens, claims, encumbrances and interests of any kind or nature whatsoever, or if the Buyer would, or in the future could, be liable for any of such liens, claims, encumbrances, or other interests, including rights or claims based on any successor or transferee liability.

BB.     The Bidding Procedures obtained the highest value for the Purchased Assets for ProtoStar and its estates.

8

CC.    ProtoStar has adequately marketed the Purchased Assets for sale, and the consideration to be provided by the Buyer pursuant to the Sale Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets; (iii) will provide a greater recovery for ProtoStar's creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair and reasonable consideration. The Sale Agreement is proper, necessary and serves the best interests of ProtoStar, its estates, creditors and all parties in interest.

DD.    PS II may sell the Purchased Assets free and clear of all interests, liens, claims and encumbrances of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those non-debtor parties who assert interests in the Purchased Assets who did not object, or who withdrew their objections to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those parties who assert interests in the Purchased Assets who did object, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and either are not entitled to adequate protection or are adequately protected by having their asserted interests, if any, attach to the cash proceeds of the sale of the Purchased Assets ultimately attributable to such respective asset against or in which they claim an interest, to the extent, if any, and in the same priority as such interests attached to such asset prior to the Closing Date.

EE.    Each of the Assumed Agreements is an executory contract within the meaning of section 365 of the Bankruptcy Code.

FF.    PS II has demonstrated that it is an exercise of its sound business judgment to assume and assign the Assumed Agreements to the Buyer in connection with the closing of the

Sale Agreement, and the assumption and assignment of the Assumed Agreements is in the best interests of ProtoStar, its estates, and its creditors. The Assumed Agreements being assigned to the Buyer as set forth in the Sale Agreement are an integral part of the Purchased Assets and, accordingly, such assumption and assignment of Assumed Agreements is reasonable and enhances the value of ProtoStar's estates.

GG. Pursuant to and in accordance with the Sale Agreement, PS II and the Buyer, as applicable, have (i) cured, or have provided adequate assurance of cure, of any default existing or occurring prior to the Closing Date under any of the Assumed Agreements, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default under any of the Assumed Agreements, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Buyer has provided adequate assurance of future performance of and under the Assumed Agreements within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

HH. The Sale will occur "under" a plan as such term is used in section 1146(a) of the Bankruptcy Code; and the Sale does not circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code.

II. Approval of the Sale Agreement and assumption and assignment of the Assumed Agreements and closing of the sale of the Purchased Assets at this time are in the best interests of ProtoStar, its creditors, its estates and other parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The relief requested in the Sale Motion is granted as set forth herein.

10

2.     All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits. Any objection and/or reservation of rights made by PT Media Citra Indostar and PT MNC Skyvision (collectively, "Indovision") with respect to the Sale to the Successful Bidder is withdrawn and/or waived by agreement between the Successful Bidder and Indovision.

3.     Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

4.     The Successful Bidder Sale Agreement and all of the terms and conditions thereof, in the form attached hereto as Exhibit A, are approved.

5.     The Next Highest Bidder Sale Agreement and all of the terms and conditions thereof, in the form attached hereto as Exhibit B, are approved.

6.     Pursuant to section 363(b) of the Bankruptcy Code and by the issuance of this Order, PS II is authorized and directed to perform its obligations under and comply with the terms of the Successful Bidder Sale Agreement, and consummate the Sale, pursuant to and in accordance with the terms and conditions of the Successful Bidder Sale Agreement.

7.     In the event ProtoStar and the Successful Bidder do not close on the transaction pursuant to the Successful Bidder Sale Agreement and ProtoStar, in consultation with the PS II DIP Agent, First Lien Agent and the Committee, elects to close the transaction contemplated by the Next Highest Bidder Sale Agreement, PS II is authorized pursuant to section 363(b) of the Bankruptcy Code and by the issuance of this Order, but not required, if it so elects by subsequent signed notice to the Next Highest Bidder (and irrespective of having

previously executed the Next Highest Bidder Sale Agreement), to perform its obligations under and comply with the terms of the Next Highest Bidder Sale Agreement, and consummate the Sale, pursuant to and in accordance with the terms and conditions of the Next Highest Bidder Sale Agreement.

8. The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Sale Agreement or any other Sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

9. This Order and the Sale Agreement shall be binding in all respects upon all creditors and other interested parties of ProtoStar, and upon any person or entity having notice or knowledge of these proceedings. Nothing contained in any chapter 11 plan confirmed in these bankruptcy cases or the confirmation order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the Sale Agreement or this Order, and the Sale Agreement and this Order shall control to the extent of such conflict or derogation.

10. All persons and entities, including, but not limited to, all creditors, debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding interests, liens, claims or encumbrances of any kind or nature whatsoever against or in PS II or any of the Purchased Assets, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated, arising under or out of, in connection with, or in any way relating to, PS II, the Purchased Assets, the operation of PS II's business prior to the Closing, or the transfer of the

12

Purchased Assets to the Buyer are hereby forever barred, estopped, and permanently enjoined from asserting any such interests, liens, claims or encumbrances against the Buyer, its successors or assigns, the Buyer's assets, or the Purchased Assets, and such persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law in equity, constituting a judicial, administrative, arbitral, or other proceeding against the Buyer, its successors and assigns, or the Purchased Assets, seeking to assert, create, impose, perfect, enforce, collect or recover on any such interest, lien, claim or encumbrance, including, without limitation, revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets on account of such interests, liens, claims or encumbrances.

    11.  Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, PS II is authorized to transfer the Purchased Assets to the Buyer, and upon closing of the Sale, the transfer of the Purchased Assets to the Buyer shall constitute legal, valid and effective transfers of the Purchased Assets, shall vest the Buyer with all right, title, and interest of PS II in and to the Purchased Assets and shall be free and clear of all interests, liens, claims and encumbrances of any kind or nature whatsoever (except for the obligations of the Buyer to comply with the terms of the Assumed Agreements from and after the Closing Date), with all such interests, liens, claims and encumbrances of any kind or nature whatsoever to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Purchased Assets, subject to any claims and defenses PS II may possess with respect thereto.

12.     This Order (a) shall be effective as a determination that, on the Closing Date, all interests, liens, claims and encumbrances of any kind or nature whatsoever existing with respect to the Purchased Assets prior to the Closing Date have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any part of the Purchased Assets.

13.     If any person or entity that has filed financing statements, mortgages, mechanics liens, *lis pendens*, or other documents or agreements evidencing interests with respect to the Purchased Assets shall not have delivered to ProtoStar prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all interests which the person or entity has with respect to the Purchased Assets, then the Buyer hereby is authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets; provided, that regardless of whether such persons or entities or the Buyer execute and file any releases, the Buyer hereby is authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all such interests of any kind or nature whatsoever in the Purchased Assets.

14

14.     The Sale has been undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code. Accordingly, the Buyer is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code, including but not limited to the provision that the reversal or modification on appeal of the authorization provided herein to consummate the transactions shall not affect the validity of the transactions to the Buyer, unless such authorization is duly stayed pending such appeal.

15.     The transfer of the Purchased Assets pursuant to the Sale Agreement is a transfer pursuant to section 1146(c) of the Bankruptcy Code, and accordingly shall not be taxed under any law imposing a stamp tax or a sale, transfer, or any other similar tax; provided that the ~~closing on those sale does not occur until after~~ a chapter 11 plan is confirmed by the Court.

16.     The consideration to be given by the Buyer pursuant to the Sale Agreement (a) constitutes, and shall be deemed to constitute, reasonably equivalent value and fair consideration, and (b) is fair and reasonable and may not be avoided under section 363(n) or any other provision of the Bankruptcy Code, or otherwise.

17.     The failure specifically to include any particular provision of the Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreement be authorized and approved in its entirety.

18.     The Sale Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on ProtoStar's estates, and ProtoStar's representatives are hereby authorized to execute such modifications, amendments or supplements.

15

19.     Except as expressly set forth in the Sale Agreement with respect to Assumed Agreements, the Buyer shall have no liability for any interests, liens, claims and encumbrances of any kind or nature whatsoever, or other obligation of or against ProtoStar, related to the Purchased Assets by reason of the transfer of the Purchased Assets to the Buyer, including rights or claims based on any successor or transferee liability, *de facto* merger or continuity of business or product line labiality, environmental liability, labor and employment liability, and products or antitrust liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

20.     Neither the Buyer nor its affiliates, successors or assigns shall be deemed, as a result of any action taken in connection with the purchase of the Purchased Assets, to: (a) be a successor (or other such similarly situated party) to PS II; (b) have, *de facto* or otherwise, merged with or into PS II; or (c) be a continuation or substantial continuation of PS II or any enterprise of PS II.

## Assumption and Assignment of Executory Contracts

21.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing of the Sale, PS II's assumption and assignment of the Assumed Agreements to the Buyer, and the Buyer's assumption thereof on the terms set forth in the Sale Agreement, is approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied.

22.     PS II is authorized and directed, in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (a) assume and assign to the Buyer, effective upon the closing of the Sale, the Assumed Agreements, which assumption and assignment shall be free and clear of

16

all claims and interests of any kind or nature whatsoever, and (b) execute and deliver to the Buyer such documents or other instruments as may be reasonably necessary to assign and transfer the Assumed Agreements to the Buyer.

23.     The Assumed Agreements shall be transferred and assigned to, and following the closing of the Sale remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assumed Agreements that prohibits, restricts, or conditions such assignment or transfer or purports to terminate or alter any term of such Assumed Agreements as a result of an assignment, all of which provisions constitute impermissible antiassignment clauses that, pursuant to the Bankruptcy Code, are void and of no force and effect. Pursuant to section 365(k) of the Bankruptcy Code, PS II shall be relieved from any further liability with respect to the Assumed Agreements after such assignment to and assumption by the Buyer.

24.     Upon the closing of the Sale, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title and interest in each Assumed Agreement, and each non-debtor party to an Assumed Agreement that has not objected to the assumption and assignment of such Assumed Agreement to the Buyer is deemed to have consented to the assumption and assignment by PS II to the Buyer of the Assumed Agreements. As of the closing of the Sale, each Assumed Agreement will be in full force and effect and not subject to termination or cancellation by the non-debtor party thereto based upon any act, omission or failure that my have occurred or arisen prior to the Closing Date.

25.     All defaults, breaches or other obligations of PS II under any Assumed Agreement incurred, arising or accruing prior to the Closing Date (without giving effect to any

acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed and considered cured in full in accordance with the Sale Agreement by the payment by PS II of the cure amount associated with such Assumed Agreement (as to each Assumed Agreement, the "Cure Amount" and collectively, the "Cure Amounts") at the closing of the Sale or as soon thereafter as practicable, and the Buyer shall have no liability or obligation with respect to defaults, breaches or other obligations incurred, arising or accruing prior to the Closing Date, except as otherwise expressly provided herein or in the Sale Agreement. With respect to that certain Amended and Restated Contract for the On Ground Delivery of a Commercial Satellite between Boeing Satellite Systems, Inc. and PS II, dated as of March 19, 2008, as amended by Amendment 3 to such agreement, dated November 7, 2008, and Amendment 4 to such agreement, dated March 16, 2009 (collectively, the "BSS Agreement"), Cure Amounts to be paid by PS II in accordance with the Sale Agreement and this Order shall include, without limitation, all quarterly installments of "Operational Period Calendar Payments" to be paid under the BSS Agreement.

26.     Upon payment of the Cure Amounts under the terms of the Sale Agreement, each non-debtor party to an Assumed Agreement is forever barred, estopped and permanently enjoined from asserting against PS II or the Buyer, or the Purchased Assets, any default or breach existing as of the Closing Date, or, as against the Buyer, any counterclaim, defense, setoff or any other claim which may be asserted against PS II.

27.     Upon assignment of the Assumed Agreements to the Buyer at or subsequent to the closing of the Sale, no default shall exist under any Assumed Agreement and no non-debtor party to any Assumed Agreement shall be permitted to declare a default by or against the Buyer under such Assumed Agreement or otherwise take action against the Buyer as

18

a result of any Debtor's financial condition, bankruptcy or failure to perform any obligation under the Assumed Agreement. Upon entry of this Order and assumption and assignment of the Assumed Agreements, the Buyer shall be deemed in compliance with all terms and provisions of the Assumed Agreements.

## Additional Provisions

28.     To the extent that any person or entity may have a lien, claim, encumbrance or interest in any of the Purchased Assets, such person or entity is authorized and directed, as of the Closing Date, to execute such documents and take all other actions as may be necessary to release and terminate such lien, claim, encumbrance or interest in the Purchased Assets, with such lien, claim, encumbrance or interest to attach to the proceeds of the Sale, and no holder of any lien, claim, encumbrance, or other interest in the Purchased Assets shall interfere with the Closing, or with the Buyer's title to, or use and enjoyment of, the Purchased Assets based on any such lien, claim, encumbrance or interest

29.     Each federal, state and local governmental agency or department is authorized to accept for filing and/or recording any and all documents and instruments necessary and appropriate to consummate the Sale.

30.     All entities which presently are, or on or after the Closing Date may be, in possession of some or all of the Purchased Assets are authorized and directed to provide access to, and surrender possession of, the Purchased Assets to the Buyer or the Buyer's agent or other representative (the "Buyer's Agent") upon demand.

31.     The Buyer or the Buyer's Agent shall provide adequate notice to and cooperate with Mabuhay Satellite Corporation ("Mabuhay") regarding any removal of those Purchased Assets set forth on a schedule to be agreed amongst the Buyer, Mabuhay and

ProtoStar ~~within three (3) business days~~ *by December 28, 2009,* as requested by the Buyer (the "Subic Assets") from Mabuhay's satellite communications facility in Subic Bay Freeport Zone, Philippines (the "Subic Facility"); the Buyer or the Buyer's Agent shall have insurance reasonably acceptable to Mabuhay which covers Mabuhay for any damage incident to the removal of any Subic Assets from the Subic Facility; and the Buyer or the Buyer's Agent shall bear all expenses related to the removal, including (a) indemnifying Mabuhay in relation to the removal of any Subic Assets from the Subic Facility by Buyer or Buyer's Agent, (b) compensating Mabuhay for any reasonable out of pocket expense incurred by Mabuhay in relation to the removal of any Subic Assets from the Subic Facility by Buyer or Buyer's Agent, and (c) restoring the Subic Facility in all material respects to its condition prior to the removal of any Subic Assets by Buyer or Buyer's Agent; provided, however, that the Buyer may leave concrete pads for the antenna in place without having to remove the concrete pads and restore that portion of the site to its original condition. No property (other than the Subic Assets) shall be removed by the Buyer or the Buyer's Agent from the Subic Facility.

32.     ProtoStar shall preserve by keeping copies of (or otherwise retaining or preserving access to as agreed to by the Buyer and, in such case, the Buyer shall preserve) all books and records and all other documentation, data, information, writings or the like (whether written or electronic) being transferred to Buyer under the Sale Agreement until otherwise reasonably agreed in writing by the Philippine Long Distance Telephone Company, Mabuhay and the Committee or otherwise ordered by the Court.

33.     Notwithstanding paragraph 42(iv) of that certain Final Order (I) Authorizing Debtors to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Claims to DIP Lenders, (III) Authorizing Use of Cash Collateral and (IV) Providing Adequate

Protection to Prepetition Lenders, dated August 25, 2009 (the "Final DIP Order"), or anything contained in that certain Senior Secured Super-Priority Debtor-In-Possession Multiple Draw Term Loan Agreement, dated as of August 3, 2009, approved thereby, in the event that (a) ProtoStar and the Successful Bidder close on the transaction pursuant to the Successful Bidder Sale Agreement, or (b) if ProtoStar and the Successful Bidder do not close on the transaction pursuant to the Successful Bidder Sale Agreement and ProtoStar, in consultation with the PS II DIP Agent and the First Lien Agent, closes the transaction contemplated by the Next Highest Bidder Sale Agreement, any proceeds received by ProtoStar at such closing (the "Sale Proceeds") shall be placed in escrow, pending further order of this Court and the Prepetition Liens of the Prepetition Lenders shall attach to the Sale Proceeds in the order of priority, with the same validity, force and effect as set forth in the Final DIP Order, subject to the adversary proceeding styled *Official Committee of Unsecured Creditors of ProtoStar Ltd., et al. v. Credit Suisse, Singapore Branch, et al.*, Adv. Pro. No. 09-10526 (MFW) and such Sale Proceeds shall not be used by the Debtors for any purpose; provided, however, nothing herein shall prevent ProtoStar from repaying, in its discretion, in full (i) the outstanding Postpetition Obligations, as defined in the Final DIP Order and (ii) allowed fees and expenses of any and all estate professionals in accordance with the Budget (as defined in the Final DIP Order).

34.     It is intended that this Order and the Sale Agreement shall be immediately enforceable in respect of the Purchased Assets in any foreign or domestic jurisdiction. The enforceability of this Order shall not be conditioned or delayed based on any proceeding, review, or approval sought, or that may be sought, in any other jurisdiction.

35.     This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of the Sale Agreement, all amendments thereto, any waivers and consents

thereunder, and of each of the agreements executed in connection therewith, if any, in all respects.

36. Notwithstanding anything to the contrary herein, Indovision's objection with respect to the transaction contemplated by the Next Highest Bidder Sale Agreement (the "Indovision Objection"), and all parties' rights with respect thereto, are explicitly reserved and preserved herein. To the extent that the Sale to the Successful Bidder fails to close and the Indovision Objection with respect to the Next Highest Bidder Sale Agreement has not been waived or withdrawn, then, prior to any exercise by ProtoStar, in consultation with the PS II DIP Agent and the First Lien Agent, of its rights hereunder to elect to close the transaction contemplated by the Next Highest Bidder Sale Agreement, ProtoStar shall, upon notice to Indovision and its counsel, seek a hearing with respect to the Indovision Objection; provided, however, that nothing herein shall prejudice ProtoStar's right to seek such a hearing by emergency motion.

37. The provisions of this Order are non-severable and mutually dependent.

38. The terms and provisions of the Sale Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, ProtoStar, its respective affiliates, successors and assigns, its estates, its creditors, and any person or entity having notice or knowledge of this proceeding, as well as the Buyer, and its respective affiliates, successors and assigns, and shall be binding in all respects upon any affected third parties and any subsequent examiners or trustees appointed in ProtoStar's chapter 11 cases or upon a conversion of ProtoStar's chapter 11 cases to chapter 7 under the Bankruptcy Code.

39.     As provided by Bankruptcy Rules 7062 and 9014, this Order shall be effective and enforceable immediately upon signing and shall not be subject to the 10-day stay provisions contained in Bankruptcy Rules 6004(g) and 6006(d).

Dated: _____Dec. 18_____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE